Neil A. Goteiner (State Bar No. 083524)
Dennis M. Cusack (State Bar No. 124988)
Carly O. Alameda (State Bar No. 244424)
Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480
E-mail: ngoteiner@fbm.com, dcusack@fbm.com,
calameda@fbm.com

Attorneys for Plaintiff
COUPONS, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| COUPONS, INC., | Case No. 5:07-CV-03457 HRL |
| Plaintiff, | |
| vs. | Date: December 4, 2007<br>Time: 10:00 a.m. |
| JOHN STOTTLEMIRE, and DOES 1-10, | Courtroom: 2<br>Judge: Honorable Howard R. Lloyd |
| Defendants. | |

**COUPONS'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT STOTTLEMIRE'S MOTION TO DISMISS
OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT**

**OPPOSITION TO REQUEST FOR JUDICIAL NOTICE,
OBJECTIONS TO EVIDENCE AND MOTION TO STRIKE**

**COUPONS'S OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS**

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

MPA IN OPP. TO MOT. TO DISMISS OR
MOTION FOR SUMMARY JUDGMENT
Case No. 5:07-CV-03457 HRL

22675\1379190.2

Dockets.Justia.com

# TABLE OF CONTENTS

Page

I.   PRELIMINARY STATEMENT ...................................................................................... 1

    A.   INTRODUCTION ............................................................................................. 1

    B.   FACTUAL BACKGROUND ............................................................................ 1

    C.   PROCEDURAL POSTURE .............................................................................. 2

II.  THE MOTION TO DISMISS IS WITHOUT MERIT ................................................... 2

    A.   LEGAL STANDARD ...................................................................................... 2

    B.   COUPONS HAS ALLEGED FACTS THAT, IF PROVED, WOULD
        ESTABLISH THAT STOTTLEMIRE HAS VIOLATED 17 U.S.C. § 1201 ...... 3

        1.   Stottlemire Trafficked In Technology In Violation Of § 1201(a)(2) ......... 3

        2.   Stottlemire's Conduct Violated Section 1201(b)(1) ................................. 5

    C.   STOTTLEMIRE IGNORES PLEADED FACTS AND
        MISUNDERSTANDS THE DMCA ................................................................. 8

        1.   Coupons Alleged Copyright Protection ................................................... 8

        2.   Coupons Alleged Lack of Authorization ................................................. 8

        3.   Coupons's Technology Effectively Protects Its Rights .......................... 9

III. THE MOTION FOR SUMMARY JUDGMENT IS PREMATURE AND BASED
     ON THE SAME MISCONCEPTIONS ABOUT THE DMCA .................................. 12

    A.   LEGAL STANDARD ...................................................................................... 12

    B.   THE MOTION SHOULD BE DENIED AS PREMATURE ........................... 12

    C.   THE ELEMENTS TO SUPPORT A CLAIM FOR RELIEF UNDER THE
        DMCA HAVE EITHER BEEN MET IN COUPONS'S FAVOR, OR
        INVOLVE A GENUINE DISPUTE OF MATERIAL FACT ........................... 13

        1.   Ownership of a Valid Copyright ............................................................. 14

        2.   Effective Control by a Technological Measure ...................................... 14

        3.   Unauthorized Circumvention ................................................................. 15

        4.   Designed or Marketed for Circumvention .............................................. 15

    D.   THE MOTION FAILS TO ADDRESS SECTION 1201(b)(1) ........................ 16

    E.   STOTTLEMIRE HAS NOT SUBMITTED ADMISSIBLE EVIDENCE
        TO SUPPORT HIS MOTION ........................................................................ 16

IV.  THE MOTION FOR SANCTIONS MUST BE DENIED .......................................... 18

V.   CONCLUSION .......................................................................................................... 18

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MPA IN OPP. TO MOT. TO DISMISS OR
MOTION FOR SUMMARY JUDGMENT          - i -
Case No. 5:07-CV-03457 HRL

22675\1379190.2

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*321 Studios v. Metropolitan Goldwyn Mayer Studios, Inc.*,
    307 F. Supp. 2d 1085 (N.D. Cal. 2004) ...................................................... 10

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ...................................................................................... 12

*Bell Atlantic Corp. v. Twombly*,
    127 S. Ct. 1955 (2007) ................................................................................ 2, 5

*British Airways Board v. Boeing Co.*,
    585 F.2d 946 (9th Cir. 1978) ......................................................................... 12

*Burlington Northern Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of Fort Peck
Reservation*,
    323 F.3d 767 (9th Cir. 2003) ......................................................................... 13

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ...................................................................................... 12

*Chamberlain Group, Inc. v. Skylink Technologies, Inc.*,
    381 F.3d 1178 (Fed. Cir. 2004) ............................................................. 8, 9, 14

*Filiti v. USAA Casualty Insurance Co.*,
    No. S-06-2694, 2007 WL. 2345012, at *2 (E.D. Cal) ................................... 2

*Gallo v. Prudential Residential Services, Ltd. Partnership*,
    22 F.3d 1219 (2d Cir. 1994) .......................................................................... 12

*Garrett v. City and County of San Francisco*,
    818 F.2d 1515 (9th Cir. 1987) ....................................................................... 13

*Hancock v. Montgomery Ward Long Term Disability Trust*,
    787 F.2d 1302 (9th Cir. 1986) ....................................................................... 13

*Knight v. U.S. Fire Insurance Co.*,
    804 F.2d 9 (2d Cir. 1986) .............................................................................. 12

*Lexmark International, Inc. v. Static Control Components, Inc.*,
    387 F.3d 522 (6th Cir. 2004) .......................................................... 8, 10, 11, 12

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ...................................................................................... 12

*United States v. Diebold*,
    369 U.S. 654 (1962) ...................................................................................... 12

*United States v. Elcom Ltd.*,
    203 F. Supp. 2d 1111 (N.D. Cal. 2002) ................................................ 6, 7, 16

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

MPA IN OPP. TO MOT. TO DISMISS OR
MOTION FOR SUMMARY JUDGMENT      - ii -
Case No. 5:07-CV-03457 HRL

22675\1379190.2

*Universal City Studios, Inc. v. Reimerdes*,
    111 F. Supp. 2d 294 (S.D.N.Y. 2000)......................................................3, 4, 8, 10, 14, 15

*Universal Studios, Inc. v. Corley*,
    273 F.3d 429 (2d Cir. 2001)..................................................................................3, 4, 6

**FEDERAL STATUTES**

17 U.S.C. § 102 .......................................................................................................14

17 U.S.C. § 106 .........................................................................................................7

17 U.S.C. § 1201 .....................................................................................................1, 3

17 U.S.C. § 1201(a)(2) ...........................................................................................3, 6, 9, 13

17 U.S.C. § 1201(a)(2)(A) .......................................................................................4, 10, 13

17 U.S.C. § 1201(a)(2)(B) .........................................................................................4

17 U.S.C. § 1201(a)(2)(C) .........................................................................................13

17 U.S.C. § 1201(a)(3) .........................................................................................3, 15

17 U.S.C. § 1201(b) ..................................................................................................7

17 U.S.C. § 1201(b)(1) .......................................................................................3, 5, 6, 9, 16

17 U.S.C. § 1201(b)(1)(A) .......................................................................................6, 13, 16

17 U.S.C. § 1201(b)(1)(C) .........................................................................................13

17 U.S.C. § 1201(b)(2)(A) .........................................................................................6

17 U.S.C. § 1201(b)(2)(B) .........................................................................................7

Fed. R. Civ. P. 12(b)(6)...........................................................................................2, 9
    56(c) ....................................................................................................12
    56(e) ....................................................................................................12, 17
    56(f) .....................................................................................................13

Fed. R. Evid. 201 .....................................................................................................16
    402 .......................................................................................................17
    802 .......................................................................................................17
    901 .......................................................................................................17

**OTHER AUTHORITY**

Martin and Oshinsky, Internet Law and Practice in California, § 1.8 (CEB 2007)......................14

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

MPA IN OPP. TO MOT. TO DISMISS OR
MOTION FOR SUMMARY JUDGMENT    - iii -        22675\1379190.2
Case No. 5:07-CV-03457 HRL

# I. PRELIMINARY STATEMENT

## A. INTRODUCTION AND SUMMARY OF ARGUMENT

Stottlemire's motions are improper and premature requests to resolve the entire litigation, using only Stottlemire's cherry picked "evidence."[1] Coupons's First Amended Complaint ("FAC") alleges in sufficient detail how Stottlemire unlawfully circumvented Coupons's technology, which imposes print limitations for copyright protected online coupons. Coupons's FAC thus alleges more than enough facts to state a claim for relief under the Digital Millennium Copyright Act (17 U.S.C. § 1201 et seq., "DMCA"). Indeed, Stottlemire effectively concedes that he created his illegal software to sidestep Coupons's print limitation technology. Congress intended the DMCA to address exactly this case. Stottlemire, however, bases his Motion to Dismiss entirely on a misunderstanding of the DMCA and misstatements of fact.

Stottlemire's Motion for Summary Judgment is similarly premature and misdirected. In addition, there has been no discovery and Stottlemire's motion is devoid of admissible evidence. The Motion for Sanctions is also without merit because it is based entirely on the same flawed arguments as the motions to dismiss and for summary judgment.

## B. FACTUAL BACKGROUND

Coupons provides on-line, printable coupons to consumers on behalf of advertisers. The advertiser or Coupons, or both, offer the coupon online. When a consumer chooses a coupon from a website, Coupons's system and technology transmit the coupon to the consumer's printer. Consumers print out the coupons and redeem them at local stores. With the delivery of these coupons to consumers, Coupons delivers to the user's computer security features which prevent the printing of more than the authorized number of coupons (for most coupons, the consumer is allowed two prints). Stottlemire created, offered to the public in chat room forums, and distributed by email or other messaging services, a method of deleting the security features and also a software program that deleted the security features, all to allow users to print more than the

---

[1] Coupons addresses in Section III E, *infra*, Stottlemire's Request for Judicial Notice, which requests judicial notice of eight inadmissible documents such as unauthenticated Internet printouts and Stottlemire's own hearsay statements.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

MPA IN OPP. TO MOT. TO DISMISS OR
MOTION FOR SUMMARY JUDGMENT     - 1 -
Case No. 5:07-CV-03457 HRL

22675\1379190.2

1  authorized number of coupons.  Because Coupons's coupons are works subject to copyright

2  protection, Stottlemire's actions violate the anti-circumvention provisions of the DMCA.

3  **C.  PROCEDURAL POSTURE**

4  Coupons filed its initial complaint on July 2, 2007, and its FAC on August 29, 2007.

5  Stottlemire filed the Motion to Dismiss on September 24, 2007.  Stottlemire filed a motion for

6  sanctions against Coupons and one of Coupons's attorneys, based on Coupons's unwillingness to

7  withdraw this action.  Both motions are set for hearing December 4, 2007.[2]  Neither party has

8  served discovery requests.

9  **II.  THE MOTION TO DISMISS IS WITHOUT MERIT**

10  **A.  LEGAL STANDARD**

11  Coupons's FAC meets Fed. R. Civ. P. 12(b)(6) standards by alleging, "enough facts to

12  state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct.

13  1955, 1974 (2007).  Overly detailed factual allegations are not required.  Accord, *Filiti v. USAA*

14  *Casualty Insurance Co.*, 2007 WL 2345012, *2 (E.D. Cal.).  Like Stottlemire, the *Filiti* defendant

15  argued that *Bell Atlantic* required the plaintiff to plead additional facts to state a claim.  *See id.* at

16  *3.  The *Filiti* Court rejected the defendant's argument that "in order to demonstrate that an auto

17  body repair labor rate of $65 per hour was insufficient to restore her car ... plaintiff would have to

18  allege that no auto body repair shop in her area accepted that hourly rate."  *Id.*  It was sufficient

19  that the *Filiti* plaintiff had merely alleged a plausible theory that "the $65.00 per hour rate was

20  used by USAA as a basis for limiting the amount it would pay for labor, [and] was set arbitrarily,

21  artificially, unlawfully and unfairly."  *Id.*  Applying the *Bell Atlantic* pleading standard, the Court

22  found that "it [wa]s entirely plausible" based on the plaintiff's allegations that $65 per hour was

23  insufficient.  *Id.*  As will be demonstrated, Coupons's allegations are detailed, state a compelling

24  claim for relief under the DMCA, and give Stottlemire clear notice of the basis for liability.

25

26  _____

27  [2] Coupons has also filed a Notice of Substitution of Counsel, intending to substitute the law firm
of Farella Braun + Martel LLP for the law firm of Wilson Sonsini Goodrich & Rosati, and the
issue of an alleged ineffectual substitution of counsel will be addressed at the December 4, 2007

28  hearing.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MPA IN OPP. TO MOT. TO DISMISS OR
MOTION FOR SUMMARY JUDGMENT         - 2 -
Case No. 5:07-CV-03457 HRL                                          22675\1379190.2

## B. COUPONS HAS ALLEGED FACTS THAT, IF PROVED, WOULD ESTABLISH THAT STOTTLEMIRE HAS VIOLATED 17 U.S.C. § 1201

Coupons's FAC pleads the facts necessary to support its claim. Coupons claims violations of 17 U.S.C. § 1201[3] and related state claims.[4] Specifically, Stottlemire's conduct violates the anti-trafficking provisions of the DMCA, sections 1201(a)(2) and 1201(b)(1).

### 1. Stottlemire Trafficked In Technology In Violation Of § 1201(a)(2)

Section 1201(a)(2) provides that:

> No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that –
>
> (A) is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title;
>
> (B) has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected under this title; or
>
> (C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing a technological measure that effectively controls access to a work protected under this title.[5]

Section 1201(a)(2) contains "prohibitions on creating and making available certain technologies … developed or advertised to defeat technological protections against unauthorized access to a work." *Universal City Studios, Inc. v. Reimerdes*, 111 F.Supp.2d 294, 316 (S.D.N.Y. 2000) (internal citation omitted), aff'd *sub nom Universal Studios, Inc. v. Corley*, 273 F.3d 429 (2d Cir 2001). In *Reimerdes*, eight motion picture studios brought suit against a group of

---

[3] Unless otherwise noted, all further code section references are to 17 U.S.C. § 1201.

[4] Stottlemire does not argue that Coupons's state law claims fail to state a claim upon which relief can be granted; he only argues that the state law claims should be dismissed for lack of jurisdiction if the DMCA claim is dismissed. *See* Motion at 21. As there is no basis to dismiss the DMCA claim in Coupons's FAC, the state law claims should remain in force as well.

[5] Subsection 1201(a)(3) provides: "As used in this subsection— [¶] (A) to 'circumvent a technological measure' means to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner; and [¶] (B) a technological measure 'effectively controls access to a work' if the measure, in the ordinary course of its operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work."

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

MPA IN OPP. TO MOT. TO DISMISS OR
MOTION FOR SUMMARY JUDGMENT          - 3 -
Case No. 5:07-CV-03457 HRL

22675\1379190.2

computer hackers under the DMCA. *Id*. at 303. The studios distributed many of their copyrighted motion pictures for home use on DVDs that contained copies of the motion picture in digital form. These motion pictures were protected from copying using an encryption system called CSS that allowed the DVDs to be played only on players with licensed technology. *Id*. The defendants posted on their website a computer program called DeCSS that circumvented the CSS protection system and allowed the DVDs to be played and copied on devices that did not have the licensed technology. *Id*. The court found violations of sections 1201(a)(2)(A) and 1201(a)(2)(B) because: 1) DeCSS was a computer program, and unquestionably a technology within the meaning of the statute (*id*. at 317); 2) DeCSS circumvented a technological access control measure (*id*.); 3) CSS effectively controlled access to a copyrighted work, regardless of "whether or not it is a strong means of protection" because in the ordinary course of its operation the technology worked in the defined ways to control access to the work (*id*. at 317-318); and 4) the programmer who wrote DeCSS and one of the defendants conceded that DeCSS was created for the sole purpose of decrypting CSS, and that was its only function. *Id*. at 319. The district court granted injunctive and declaratory relief in favor of the plaintiff motion picture studios (*id*. at 346), and the Second Circuit affirmed the decision on appeal. See *Universal City Studios, Inc. v. Corley*, 273 F.3d 429 (2nd Cir. 2001).

Here, Coupons's FAC alleges more than a sufficient factual basis to support the DMCA claims. As stated in the FAC:

- Coupons's coupons are works subject to copyright protection under Title 17 of the United States Code; *see* FAC ¶ 11;

- The software underlying the online coupons contains built-in security measures to prevent consumers from printing more than an authorized number of copies of the coupons; *see* FAC ¶¶ 13-15;

- In or around May 2007, Stottlemire created and offered on the Internet coupon forum, "DealIdeal," a method for finding and removing the security features which prevent the unlimited printing of Coupons's coupons (the "Circumvention Method"); *see* FAC ¶ 19;

- On or around May 20, 2007, Stottlemire stated on another Internet coupon forum, The Coupon Queen, that he "recently posted information on another site (dealideal) on how to beat Coupons' limitations that would allow users of that software to print an unlimited number of coupons from the coupons.com website;" *see* FAC ¶ 20;

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

MPA IN OPP. TO MOT. TO DISMISS OR
MOTION FOR SUMMARY JUDGMENT            - 4 -
Case No. 5:07-CV-03457 HRL

22675\1379190.2

- On or around May 20, 2007, Stottlemire created and offered the public on the Coupon Queen Forum and on another website a software program (the "Circumvention Software") that "will remove the limitations placed by the coupons.com software," as Stottlemire stated in the Coupon Queen Forum; *see* FAC ¶ 22;

- Stottlemire later offered a different version of his Circumvention Software that effectively automated the process of printing coupons beyond the authorized numbers; *see* FAC ¶¶ 24-25.

These allegations are far from "conclusory," and more than enough to state a plausible theory of relief. Coupons presents the dates and (Internet) locations of the precise conduct at issue, and even quotes the apparent admissions made by Stottlemire that indicate he designed the Circumvention Method and Software specifically to circumvent Coupons's security features. The FAC comes squarely within *Bell Atlantic*, 127 S. Ct. at 1974.

## 2. Stottlemire's Conduct Violated Section 1201(b)(1)

Section 1201(b)(1) provides that:

> No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that –
>
> (A) is primarily designed or produced for the purpose of circumventing protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof;
>
> (B) has only limited commercially significant purpose or use other than to circumvent protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof; or
>
> (C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof.

The important difference between Sections 1201(a)(2) and 1201(b)(1) is that: "[A]lthough both subsections prohibit trafficking in a circumvention technology, the focus of subsection 1201(a)(2) is circumvention of technologies designed to *prevent access* to a work, and the focus of subsection 1201(b)(1) is on circumvention of technologies designed to *permit access* to a work but *prevent copying* of the work or some other act that infringes a copyright. *Universal City*

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

MPA IN OPP. TO MOT. TO DISMISS OR
MOTION FOR SUMMARY JUDGMENT - 5 -
Case No. 5:07-CV-03457 HRL

22675\1379190.2

*Studios, Inc. v. Corley*, 273 F.3d 429, 441 (2d Cir 2001). Coupons's technology permits access to coupons for the purpose of printing a limited number of copies (usually two). Once the print limitation is reached, the technology prevents access. Stottlemire produced his Circumvention Method and Software primarily to gain access to the digital coupon file after the print limitation is reached, to avoid the restrictions on copying. Stottlemire's conduct therefore violates both sections.

In *United States v. Elcom Ltd.*, 203 F.Supp.2d 1111 (N.D. Cal. 2002), Judge Whyte considered motions to dismiss a criminal indictment brought under the DMCA. In *Elcom*, the defendant developed and sold a software program that allowed a user to remove certain use restrictions of an Adobe Acrobat eBook Reader, including restrictions imposed by the ebook publisher that determined whether a consumer could copy or print the book, or lend it to another computer. *Id*. at 1117-1118. The court determined that the DMCA provisions were not unconstitutionally vague, did not violate the First Amendment, and were within Congressional authority. *Id*. at 1125-1142.

In reaching its conclusion, the *Elcom* court provided a thorough analysis of section 1201(b)(1)(A). The court stated that the section is comprised of three parts: 1) trafficking in any technology, product, service, device, component, or part thereof; 2) that is primarily designed or produced for the purpose of circumventing protection afforded by a technological measure; and 3) a technological measure that effectively protects a right of a copyright owner under the copyright statute. *Elcom*, 203 F.Supp.2d at 1123.

The court explained that the first element is all-encompassing and "includes any tool, no matter its form, that is primarily designed or produced to circumvent technological protection. In the second element, "the phrase 'circumvent protection afforded by a technological measure' is expressly defined in the statute to mean: 'avoiding, bypassing, removing, deactivating, or otherwise impairing a technological measure.' 17 U.S.C. § 1201(b)(2)(A)." *Elcom*, 203 F.Supp.2d at 1123. As for the third element, "the statute provides that 'a technological measure "effectively protects a right of a copyright owner under this title" if the measure, in the ordinary course of its operation, prevents, restricts, or otherwise limits the exercise of a right of a copyright

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

MPA IN OPP. TO MOT. TO DISMISS OR
MOTION FOR SUMMARY JUDGMENT          - 6 -
Case No. 5:07-CV-03457 HRL

22675\1379190.2

owner under this title.'  17 U.S.C. § 1201(b)(2)(B)."  The rights of a copyright owner include the exclusive rights to reproduce the copyrighted work in copies, prepare derivative works, distribute copies of the work, perform the work publicly, or display the work publicly.  17 U.S.C. § 106.

The *Elcom* court summarized:

> Taken in combination, section 1201(b) thus prohibits trafficking in any tool that avoids, bypasses, removes, deactivates, or otherwise impairs any technological measure that prevents, restricts, or otherwise limits the exercise of the right to reproduce the work, prepare derivative works, distribute copies of the work, perform the work publicly or by digital audio transmission, or display the work publicly.  *In short, the statute bans trafficking in any device that bypasses or circumvents a restriction on copying or performing a work.*

*Elcom*, 203 F.Supp. 2d at 1124 (emphasis added).

Here, Coupons alleges that Stottlemire trafficked in software technology.  Coupons specified in the FAC the nature of the technology and where and how Stottlemire trafficked in the Circumvention Method and Software.  Coupons also alleged through Stottlemire's own admissions that he designed the Circumvention Method and Software to circumvent Coupons's print-restriction technology.  Finally, Coupons alleged that its print-restriction technology, in the ordinary course of its operations, limits the exercise of a right of a copyright owner; that is, the technology determines whether a work may be copied and, if so, how many copies may be made.

## C.  STOTTLEMIRE IGNORES PLEADED FACTS AND MISUNDERSTANDS THE DMCA

### 1.  Coupons Alleged Copyright Protection

Stottlemire's argument that the FAC fails to plead that Coupons's coupons are subject to copyright protection ignores the FAC's gravaman and supporting allegations.  Coupons alleges the exact nature of the works (i.e., that the works are coupons) and that they are subject to copyright protection.  The DMCA does not require copyright registration as a statutory prerequisite, although Coupons has received registrations from the U.S. Copyright Office for its coupons.[6]  *See* Declaration of Jeffrey Weitzman ("Weitzman Decl."), ¶ 7.

_____

[6] Registration constitutes prima facie evidence of a copyright's validity.  *Lexmark International, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 534-535 (6th Cir. 2004).

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MPA IN OPP. TO MOT. TO DISMISS OR
MOTION FOR SUMMARY JUDGMENT          - 7 -
Case No. 5:07-CV-03457 HRL

22675\1379190.2

1    Stottlemire's arguments regarding the digital form of Coupons's coupons and the point in

2    time at which the coupons become fixed do not at all undermine the sufficiency of Coupons's

3    allegations.  The DMCA clearly protects copyrighted works even while they are still in a digital

4    form.  In fact, that is the central purpose of the DMCA.  *See Reimerdes*, 111 F. Supp. 2d at 315-

5    316 (DMCA enacted to address access to and copying of works in digital form).  To the extent

6    Stottlemire contests whether the form of these coupons merits copyright protection, he has merely

7    raised a question of fact not relevant to this motion.

8                    **2.     Coupons Alleged Lack of Authorization**

9            Despite Stottlemire's contrary assertions, Coupons clearly alleges that Stottlemire's

10   actions were unauthorized.[7]  Coupons alleges that it utilizes a security feature to limit the number

11   of times a user can print a coupon, and that Stottlemire's Circumvention Method and Software

12   allowed users to beat this security feature and print more than the authorized number of coupons.

13   *See* FAC ¶¶ 12, 13, 15, 16 19, 27.  Stottlemire himself acknowledged in his postings that what he

14   was doing was not authorized, as he claimed he could "beat the limitations" of Coupons's

15   technology.  *See* FAC ¶¶ 20, 22.  Also, Stottlemire admits in his motion that Coupons provides

16   notice on its coupons that the coupons are "void if reproduced" or "void if copied."  Motion at 19.

17   It follows that creating a way to further reproduce the coupons (by overcoming the print

18   restrictions) is unauthorized.  Coupons also makes clear to all users that there are strict print limits

19   in effect, as a message appears on computer screens stating that the print limit has been reached

20   once a user has printed a single coupon the authorized number of times.  Weitzman Decl. ¶ 8.

21   

22   [7] Stottlemire's reliance on language from *Chamberlain Group, Inc. v. Skylink Technologies, Inc.*,
     381 F.3d 1178 (Fed. Cir. 2004) is misplaced.  In *Chamberlain*, the defendant provided a product

23   that activated an owner's garage door opener using a code program that was copyrighted by the
     plaintiff original manufacturer.  *Id*. at 1183-1184.  The plaintiff characterized the access as

24   circumvention of an important security measure (*id*. at 1185); however, the plaintiff did not allege
     that its copyright was infringed.  *Id*. at 1197.  The court concluded no cause of action existed

25   under the DMCA, and noted that it would be difficult to prove that defendant's access was
     unauthorized because consumers have the manufacturer's implicit permission to purchase and use

26   any brand of transmitter to open their garage door, and copyright laws authorize the consumer to
     use the copy of the manufacturer's software embedded in the garage door opener they purchase.

27   *Id*. at 1187, 1193.  The court distinguished those facts, where a product enabled only legitimate
     use of copyrighted software, from those where an accused product enabled illegal copying.  *Id*. at

28   1198.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MPA IN OPP. TO MOT. TO DISMISS OR
MOTION FOR SUMMARY JUDGMENT                 - 8 -                              22675\1379190.2
Case No. 5:07-CV-03457 HRL

Moreover, the element of authorization is contained only in section 1201(a)(2). The language that the circumvention must be "without the authority of the copyright owner" is not present at all in section 1201(b)(1).

**3.    Coupons's Technology Effectively Protects Its Rights**

Stottlemire's attacks on the effectiveness of Coupons's security measures are similarly misguided. It is irrelevant that Coupons itself copies and distributes its own coupons. A copyright owner is free to authorize use or copies of its works as it chooses. As the copyright owner, Coupons has the right to allow, for example, one or two or six, and only that number, of any coupon per printer. Coupons has the right to limit or expand distribution or copying of its coupons beyond the parameters it designates.

Also, Stottlemire's attack on the efficacy of Coupons's security measures has no bearing on a finding that a security measure "effectively controls access" to a copyrighted work, let alone on the determination of a Rule 12(b)(6) motion. The quality of the security measure is legally irrelevant.[8] *See Universal City Studios v. Reimerdes*, *supra*, 111 F.Supp.2d 294, 317-318 (S.D.N.Y. 2000); *321 Studios v. Metro Goldwyn Mayer Studios, Inc.*, 307 F.Supp.2d 1085, 1095 (N.D. Cal. 2004) (citing *Reimerdes* for the proposition that CSS "effectively controls access" to a copyrighted work within the meaning of the statute, whether or not it is a strong means of protection). *Reimerdes* stated that a defendant's contention that a security measure did not meet the requirements of section 1201(a)(2)(A) because it was a "weak cipher" was "indefensible as a matter of law." *Id.* at 317. The court clarified that the statute expressly provides that "a technological measure 'effectively controls access to a work' if the measure, in the ordinary course of its operation, requires the application of information or a process or a treatment, with the authority of the copyright owner, to gain access to a work.'" *Id.* at 317-318. A technological

---

[8] Nonetheless, as pointed out in response to Stottlemire's motion for summary judgment, it requires a high degree of technical savvy to know how to find the relevant files and to perform the necessary operations on the computer to locate them. *See* Weitzman Decl., ¶ 9.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

MPA IN OPP. TO MOT. TO DISMISS OR
MOTION FOR SUMMARY JUDGMENT        - 9 -
Case No. 5:07-CV-03457 HRL                                              22675\1379190.2

1  measure, therefore, "effectively controls access" to a copyrighted work if its function is to control

2  access, *regardless of whether it is successful in doing so*. *Id*. at 318.[9]  The court stated bluntly:

> [D]efendants' construction, if adopted, would limit the application
> of the statute to access control measures that thwart circumvention,
> but withhold protection for those measures that can be
> circumvented.  In other words, defendants would have the Court
> construe the statute to offer protection where none is needed but to
> withhold protection precisely where protection is essential.  The
> Court declines to do so.  *Id*.

7      Stottlemire's reliance on metaphors about locks and doors from *Lexmark International,*

8  *Inc. v. Static Control Components, Inc.*, *supra*, 387 F.3d 522 (6th Cir. 2004), rips those statements

9  out of context and misses the mark.  In *Lexmark*, a printer manufacturer brought an action against

10  the seller of a computer chip used in remanufactured toner cartridges, alleging a violation of its

11  copyright in a toner loading software program and violations of the DMCA.  *Id*. at 529.

12  Specifically, the printer manufacturer sold discount toner cartridges for its printers that only it

13  could refill and that contained a microchip that prevented its printers from functioning with

14  cartridges it did not refill.  *Id*.  The defendant computer chip seller mimicked the manufacturer's

15  computer chip and sold it to companies for use in remanufactured toner cartridges.  *Id*.  The

16  manufacturer brought suit to enjoin the sale of the computer chips, and claimed that the chip

17  violated the DMCA by circumventing a technological measure designed to control access to its

18  toner loading software program.  *Id*.  The court found the manufacturer failed to establish a

19  likelihood of success on its claims and vacated the preliminary injunction granted by the district

20  court.  *Id*. at 551.  The court explained that even where one of the printer programs at issue was

21  protected by the general copyright statute,[10] there were no measures in place to control access to

22  that program.  *Id*. at 546.  Rather, anyone who purchased the printer could read the literal code of

23  the program directly from the printer memory, with or without the help of an authentication

24  sequence.  *Id*.  Because no security device was in place to protect access to the program, there

25  was nothing to be circumvented.  *Id*. at 547.

---

26  [9] It is clear then, that the fact that a user might be able to photocopy a printed coupon, or change
computers to obtain more coupons, is irrelevant to the analysis under the DMCA.

27  [10] The court had previously concluded that another of the programs at issue was not
copyrightable.  *Id*. at 544.

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MPA IN OPP. TO MOT. TO DISMISS OR
MOTION FOR SUMMARY JUDGMENT        - 10 -
Case No. 5:07-CV-03457 HRL

22675\1379190.2

Further, the *Lexmark* court noted that the essential case where the DMCA applies is that in which there is a literal code governing a work as well as a visual or audio manifestation generated by the code's execution. *Id.* at 548. In those cases, for example where encoded data on DVDs translates into motion pictures, "restricting 'use' of the work means restricting consumers from making use of the copyrightable expression in the work." *Id.* In its own case though, the *Lexmark* court noted that the copyrightable expression in the printer program operated only in the literal elements of the program, and using the program did not in turn create any protected expression. *Id.* And, unlike the code underlying DVDs, no encryption or other technological measure prevented access to the printer program. *Id.* Finally, *Lexmark* made clear that its analysis did not turn on the *degree* to which a measure controlled access to a work because "a precondition for DMCA liability is not the creation of an impervious shield to the copyrighted work." Rather its conclusion relied on the fact that for Lexmark, there was simply nothing to circumvent. *Id.* at 549.

Unlike the situation in *Lexmark*, where there was simply no security measure in place to protect the copyrighted printer program, Coupons here has alleged that it has a security measure in place to control access to its copyrighted coupons. FAC ¶¶ 11-12, 14-15. The fact that there are underlying technological measures (*see* FAC ¶ 13) that govern the work and its visual manifestation as printable coupons make it the archetypical DMCA-protected technology.

## III. THE MOTION FOR SUMMARY JUDGMENT IS PREMATURE AND BASED ON THE SAME MISCONCEPTIONS ABOUT THE DMCA

### A. LEGAL STANDARD

In considering summary judgment, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986). Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

MPA IN OPP. TO MOT. TO DISMISS OR
MOTION FOR SUMMARY JUDGMENT          - 11 -                          22675\1379190.2
Case No. 5:07-CV-03457 HRL

1   The Court must resolve all ambiguities and draw all reasonable inferences against Stottlemire, the

2   moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)

3   (citing *United States v. Diebold*, 369 U.S. 654, 655 (1962)). The "burden of establishing that

4   there is no genuine issue of material fact lies initially with the moving party and resolution of all

5   doubts should be in favor of the party opposing the motion." *British Airways Bd. v. Boeing Co.*,

6   585 F.2d 946, 951 (9th Cir. 1978).

7       Only when it is apparent that no rational trier of fact "could find in favor of the

8   nonmoving party because the evidence to support its case is so slight" should a court grant the

9   motion. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

10  **B.      THE MOTION SHOULD BE DENIED AS PREMATURE**

11      Stottlemire argues that Coupons has "failed to establish a prima facie case." However,

12  Coupons has not had an opportunity to prove its case, or even to request or obtain discovery

13  relevant to its case. Moreover, much of Stottlemire's argument focuses on the inner workings of

14  Coupons's security features. This technology is proprietary to Coupons, and to the extent

15  relevant cannot be discussed in a public forum or disclosed to the parties in the case without an

16  appropriate protective order in place. *See* Weitzman Decl., ¶¶ 4-5. For these reasons, the Court

17  should deny Stottlemire's motion for summary judgment pursuant to Fed. R. Civ. P. 56(f), to

18  allow the parties to conduct discovery to resolve the disputed facts, and to enter into an

19  appropriate protective order. *Garrett v. City and County of San Francisco*, 818 F.2d 1515, 1518

20  (9th Cir. 1987) ("When a party opposing a motion for summary judgment cannot present "facts

21  essential to justify his opposition" to the motion, Rule 56(f) permits the party to submit an

22  affidavit stating such reasons.") (citing *Hancock v. Montgomery Ward Long Term Disability

23  Trust*, 787 F.2d 1302, 1306 (9th Cir. 1986)).

24      In addition, the Weitzman Declaration discusses particular evidence that must be

25  discovered. For example, discovery is expected to confirm that the Circumvention Method and

26  Software were primarily designed or produced for the purpose of circumvention, and/or was

27  marketed by Stottlemire for use in circumvention, and therefore satisfies the requirements of

28  1201(a)(2)(A) or (C) and 1201(b)(1)(A) or (C). As no discovery has changed hands (not even

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MPA IN OPP. TO MOT. TO DISMISS OR
MOTION FOR SUMMARY JUDGMENT            - 12 -                    22675\1379190.2
Case No. 5:07-CV-03457 HRL

initial disclosures), it is impractical to list all expected information to be gleaned. *See Burlington Northern Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 774 (9th Cir. 2003) ("[T]he party making a Rule 56(f) motion cannot be expected to frame its motion with great specificity as to the kind of discovery likely to turn up useful information, as the ground for such specificity has not been laid").

**C.    THE ELEMENTS TO SUPPORT A CLAIM FOR RELIEF UNDER THE DMCA HAVE EITHER BEEN MET IN COUPONS'S FAVOR, OR INVOLVE A GENUINE DISPUTE OF MATERIAL FACT**

"A plaintiff alleging a violation of § 1201(a)(2) must prove:  (1) ownership of a valid copyright on a work, (2) effectively controlled by a technological measure, which has been circumvented, (3) that third parties can now access (4) without authorization, in a manner that (5) infringes or facilitates infringing a right protected by the Copyright Act, because of a product that (6) the defendant either (i) designed or produced primarily for circumvention; (ii) made available despite only limited commercial significance other than circumvention; or (iii) marketed for use in circumvention of the controlling technological measure. … A plaintiff capable of proving elements (1) through (5) need prove only one of (6)(i), (ii), or (iii) to shift the burden back to the defendant." *Chamberlain Group, Inc. v. Skylink Technologies, Inc.*, 381 F.3d 1178, 1203 (Fed. Cir. 2004).

**1.    Ownership of a Valid Copyright**

Copyright law protects "original works of authorship" that are fixed in a tangible form of expression from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device; copyright protection begins at the time a work is created.  17 U.S.C. § 102; *see* Martin and Oshinsky, Internet Law and Practice in California, § 1.8 (CEB 2007).  Coupons alleges that its coupons are subject to copyright protection, and that Stottlemire's Circumvention Method and Software were designed to allow unauthorized copying of coupons, which are printed onto paper, and therefore are fixed in a tangible medium of expression.  Coupons's coupons are not merely subject to copyright protection; they have achieved copyright registration. *See* Weitzman Decl. ¶ 7.  Therefore, Coupons can surely make a prima facie case for copyright protection in the works at issue.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MPA IN OPP. TO MOT. TO DISMISS OR
MOTION FOR SUMMARY JUDGMENT                    - 13 -
Case No. 5:07-CV-03457 HRL

22675\1379190.2

1    Stottlemire argues that Coupons's coupons are not fixed because the text and graphics of

2    the coupon are delivered digitally, via a "data stream," to a user's computer, and this data stream

3    is not fixed. *See* Motion at 10. If accepted, Stottlemire's argument would negate the applicability

4    of the DMCA to any medium involving digital delivery of a copyrighted work. Regardless,

5    Stottlemire at most has raised an issue of fact regarding whether the coupons, as they exist, merit

6    copyright protection.

7                    **2.      Effective Control by a Technological Measure**

8            As previously set forth, a technological measure can effectively control access to a

9    copyrighted work, regardless of "whether or not it is a strong means of protection" so long as in

10   the ordinary course of its operation the technology worked in the defined ways to control access

11   to the work. *Reimerdes*, *supra*, 111 F.Supp.2d at 317-318. "If a technological means of access

12   control is circumvented, it is, in common parlance, ineffective." *Id.* at 318. But, if only

13   successful technological means were considered effective, the statute would offer protection only

14   where none is needed. *Id*. Here, Coupons has included a declaration supporting the assertion that

15   Coupons's security features normally prevent an individual from printing an unlimited quantity of

16   a single coupon, and Stottlemire stated he posted information and created a file to remove these

17   limitations. Declaration of Ed (Bud) Miller ("Miller Decl."), ¶¶ 4-5. Mr. Weitzman also points

18   out in his declaration that it requires a high level of technical expertise to understand how to find

19   the relevant security files and to perform the operations needed to locate them. Weitzman Decl.

20   ¶ 9. To the extent the court may need further details regarding the function of Coupons's control

21   measures in the ordinary course of operation, such information can be presented when an

22   appropriate protective order is in place. *See* Weitzman Decl. ¶ 4.

23                    **3.      Unauthorized Circumvention**

24           As defined by statute, to "circumvent a technological measure" includes bypassing,

25   removing, or impairing a technological measure, without the authority of the copyright owner. 17

26   U.S.C. § 1201(a)(3). Here, after a single coupon is printed the authorized number of times, a

27   message appears on the screen stating that the print limit has been reached. Weitzman Decl., ¶ 8.

28   As admitted by Stottlemire, his method and software "beat the limitation imposed by the software

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

MPA IN OPP. TO MOT. TO DISMISS OR
MOTION FOR SUMMARY JUDGMENT          - 14 -                          22675\1379190.2
Case No. 5:07-CV-03457 HRL

provided by coupons.com and would allow users of that software to print an unlimited number of

coupons." Miller Decl., ¶ 4. In this way, Stottlemire's method and software allowed third parties

to access unauthorized numbers of coupons. This infringed Coupons's rights as copyright owner

of the coupons to control access to and regulate copying of the coupons.

### 4. Designed or Marketed for Circumvention

Finally, Coupons has provided evidence to support the conclusion that Stottlemire

designed and offered his method and software for the explicit purpose of circumventing the

limitation imposed by Coupons's software. In fact, Stottlemire admitted this several times,

stating: "I recently posted information on another site (dealideal) on how to beat the limitation

imposed by the software provided by coupons.com and would allow users of that software to

print an unlimited number of coupons…" and "I have created a small exe file that will remove the

limitations placed by the coupons.com software." Miller Decl. ¶ 4; *see also* FAC ¶¶ 24-25

(noting Stottlemire's offer of a different version that automated the process of avoiding print

limitations). To the extent Stottlemire now makes unsupported assertions regarding a different

intent, at most a question of fact exists.

Stottlemire's arguments are factually unsupported either because he does not cite to any

source or because he cites to the Exhibits in his Request for Judicial Notice, all of which are

inadmissible for the reasons discussed in Section III E, *infra*. For all of these reasons,

Stottlemire's motion for summary judgment should be denied.

### D. THE MOTION FAILS TO ADDRESS SECTION 1201(B)(1)

Stottlemire's motion for summary judgment does not even address Coupons's claims

pursuant to section 1201(b)(1). This claim succeeds, or at least raises material issues of fact, as

well. As set forth *supra*, section 1201(b)(1)(A) "is comprised of three parts: 1) trafficking in any

technology, product, service, device, component, or part thereof; 2) that is primarily designed or

produced for the purpose of circumventing protection afforded by a technological measure; and

3) a technological measure that effectively protects a right of a copyright owner under the

copyright statute. *United States v. Elcom Ltd., supra,* 203 F.Supp.2d 1111, 1123 (N.D. Cal.

2002).

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

MPA IN OPP. TO MOT. TO DISMISS OR
MOTION FOR SUMMARY JUDGMENT                    - 15 -
Case No. 5:07-CV-03457 HRL

22675\1379190.2

1   Here, Stottlemire offered a method and software which he stated was meant to "beat the

2   limitation" imposed by Coupons's software and to allow users to print an unlimited number of

3   coupons.  Miller Decl., ¶¶ 3-5.  He therefore allowed users to bypass the technological measure

4   employed by Coupons to protect its right as a copyright owner to reproduce and distribute copies

5   of its copyrighted work (the coupons).  *See Elcom*, 203 F.Supp.2d at 1123-1124.  To the extent

6   Stottlemire asserts different facts regarding his intent in posting his method and software, and

7   Coupons's method for delivering and protecting its coupons, he has merely raised issues of

8   material fact.

9   **E.    STOTTLEMIRE HAS NOT SUBMITTED ADMISSIBLE EVIDENCE TO**
          **SUPPORT HIS MOTION**
10
          Stottlemire's Request for Judicial Notice attaches eight exhibits, only one of which
11
    (Exhibit G) is appropriate for judicial notice under Fed. R. Evid. 201.  Judicial notice is only
12
    appropriate when a fact is "not subject to reasonable dispute in that it is either (1) generally
13
    known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready
14
    determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R.
15
    Evid. 201.  Nearly all of Stottlemire's exhibits are not eligible.  In addition to opposing the
16
    Request for Judicial Notice, Coupons objects to the evidence on the following grounds:
17

18      •   Exhibits A, D-F, and H are unauthenticated printed pages allegedly from websites
            as available on certain dates.  Without testimony establishing the source and
19          authenticity of the documents, they are inadmissible pursuant to Fed. R. Evid. 901.
            The Exhibits are also irrelevant to Stottlemire's Motion, and are therefore
20          inadmissible pursuant to Fed. R. Evid. 402.

21      •   Exhibits B-C are allegedly printed online coupons using various versions of
            Coupons's coupon printing software.  Again, without testimony establishing the
22          source and authenticity of the documents, they are inadmissible pursuant to Fed. R.
            Evid. 901.  The Exhibits are also irrelevant to Stottlemire's arguments, and are
23          therefore inadmissible pursuant to Fed. R. Evid. 402.

24      •   Exhibit H is a printout of Stottlemire's own statements from his own website.  In
            addition to being unauthenticated as discussed above, this exhibit consists entirely
25          of hearsay statements of Stottlemire, and is therefore inadmissible pursuant to Fed.
            R. Evid. 802.

26      •   Exhibit G is a complaint Coupons filed against unrelated third parties in 2003.
            This document, which appears to have been printed from the PACER database, is
27          appropriate for judicial notice, but it is still inadmissible as irrelevant.  *See* Fed. R.
            Evid. 402.

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

MPA IN OPP. TO MOT. TO DISMISS OR
MOTION FOR SUMMARY JUDGMENT          - 16 -                                22675\1379190.2
Case No. 5:07-CV-03457 HRL

1  Because they are inadmissible, Stottlemire cannot rely on any of the Exhibits in his

2  Request for Judicial Notice to support his motion for summary judgment. *See* Fed. R. Civ. P.

3  56(e). As such, to the extent any of Stottlemire's arguments rely on these documents the

4  arguments must be disregarded, and the Request for Judicial Notice should be denied.

5  **IV.    THE MOTION FOR SANCTIONS MUST BE DENIED**

6  Stottlemire's motion for sanctions is based entirely on his assertion that Coupons's FAC

7  contains claims not warranted by existing law and allegations that lack evidentiary support. To

8  support these assertions, Stottlemire repeats the substantive arguments from his motion to dismiss

9  or for summary judgment. As demonstrated in this Opposition, Coupons's claims are justified

10  and supported under the DMCA, and for these reasons the motion for sanctions should be denied.

11  Coupons also joins in the Opposition to the Motion for Sanctions filed separately by Wilson

12  Sonsini.

13  **V.    CONCLUSION**

14  For the reasons stated above, Coupons respectfully requests that the Court deny

15  Stottlemire's motion to dismiss or, in the alternative, for summary judgment in its entirety, and

16  that the Court deny Stottlemire's request for judicial notice in its entirety as well. Consistent with

17  this outcome, Coupons also requests that the court deny Stottlemire's motion for sanctions.

18

19  Dated: November 13, 2007                     FARELLA BRAUN & MARTEL LLP

20

21                                              By:___/s/_____

22                                                    Dennis M. Cusack

23                                              Attorneys for Coupons
                                                COUPONS, INC.

24

25

26

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

MPA IN OPP. TO MOT. TO DISMISS OR
MOTION FOR SUMMARY JUDGMENT          - 17 -                        22675\1379190.2
Case No. 5:07-CV-03457 HRL