Neil A. Goteiner (State Bar No. 083524)
Dennis M. Cusack (State Bar No. 124988)
Carly O. Alameda (State Bar No. 244424)
Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480
E-mail: ngoteiner@fbm.com, dcusack@fbm.com,
calameda@fbm.com

Attorneys for Plaintiff
COUPONS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| COUPONS, INC., | Case No. 5:07-CV-03457 HRL |
|---|---|
| Plaintiff, | **APPENDIX IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |
| vs. | |
| JOHN STOTTLEMIRE, and DOES 1-10, | Date: December 4, 2007<br>Time: 10:00 a.m.<br>Courtroom: 2<br>Judge: Honorable Howard R. Lloyd |
| Defendants. | |

**UNPUBLISHED CASE**

*Filiti v. USAA Casualty Insurance Co.*,
 No. S-06-2694, 2007 WL 2345012, at *2 (E.D. Cal) .................................................. A

**OTHER AUTHORITY**

Martin and Oshinsky, Internet Law and Practice in California, § 1.8 (CEB 2007) ....................... B

Dated: November 13, 2007        FARELLA BRAUN & MARTEL LLP


By: /s/
    Dennis M. Cusack

Attorneys for Coupons
COUPONS, INC.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

APPENDIX IN SUPPORT OF OPPO TO
DEFENDANT'S MOT TO DISMISS
CASE NO. 5:07-CV-03457 HRL

1

22675\1383118.1

Dockets.Justia.com

*Coupons, Inc. v. Stottlemire, et al.*
United States District Court, Northern District, Case Number 07-CV-03457 HRL

# TAB A

Only the Westlaw citation is currently available.

United States District Court,
E.D. California.

**Jane Marie FILITI, Individually and on Behalf of
All Others Similarly Situated,
Plaintiff,
v.
USAA CASUALTY INSURANCE COMPANY,
Foreign Corporation, and Does 1-50,
Defendants.**

Civ. No. S-06-2694 WBS DAD.

Aug. 16, 2007.

Daniel Albert Crawford, Robert J. Drexler, Jr., Quisenberry Law Firm, Los Angeles, CA, for Plaintiff.

James R. McGuire, Morrison and Foerster LLP, San Francisco, CA, for Defendants.

ORDER RE: MOTION FOR RECONSIDERATION

WILLIAM B. SHUBB, United States District Judge.

*1 Defendant moves, pursuant to Local Rule 78-230(k), for reconsideration of this court's order denying defendant's motion to dismiss. Plaintiff opposes the motion.

I. Factual and Procedural History

In her complaint, plaintiff alleges that she purchased an automobile insurance policy from defendant. (Compl.¶ 9.) In October 2004, plaintiff's car was damaged. (Id. ¶ 10.) Plaintiff went to an auto body repair shop of her choice and obtained a written estimate for the cost to repair the damage to her car. (Id. ¶ 11.) The labor rate included in the auto body repair shop's cost estimate was $78.00 per hour. (Id.) Plaintiff made a claim to defendant for the damage to her vehicle, but defendant agreed only to pay a $65.00 per hour labor rate stating that was the prevailing labor rate for auto body repair shops in plaintiff's geographic area. (Id. ¶¶ 10, 12, 13.) Plaintiff paid the difference between the labor rate defendant agreed to pay and the rate charged to her by the auto body repair shop. (Id. ¶ 17.)

The complaint further alleges that defendant breached the provisions of the insurance policy "by denying [plaintiff's] insurance benefits and refusing to pay the reasonable hourly labor rate for repairs, and compelling their insureds to pay, or become indebted for, the difference between that reasonable rate and the rates that [defendant] actually paid." (Id. ¶ 69.) Plaintiff also alleges that defendant "tortiously breached the implied covenant of good faith and fair dealing arising from such automobile insurance contracts by unreasonably denying auto repair benefits ... which were due ..." (Id.) It is further alleged defendant violated California's unfair competition law ("UCL") (California Business and Professions Code section 17200, et seq.) and requested a preliminary and permanent injunction to enjoin defendant from "underpaying insurance benefits." (Id. ¶¶ 45-58.)

On March 26, 2007, defendant moved to dismiss plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(6). At that time, the case was assigned to Judge England. After briefing on the motion was completed, Judge England recused himself, and the case was assigned to this court. On June 20, 2007 the court denied defendant's motion to dismiss. Defendant filed a motion for reconsideration on July 23, 2007.

II. Discussion

Reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." Kona Enters., Inc. v. Estate of Bishop, 229 F.3d 877, 890 (9th Cir.2000). Reconsideration is appropriate only when the "district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." Sch. Dist. No. 1J, Multnomah County v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir.1993); United States v. Westlands Water Dist., 134 F.Supp.2d 1111, 1131 (E.D.Cal.2001) (citing 389 Orange St. Partners v. Arnold, 179 F.3d 656, 665 (9th Cir.1999)).

*2 Under Local Rule 78-230, motions for

© 2007 Thomson/West. No Claim to Orig. US Gov. Works



reconsideration must also set forth, "what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion." E.D. Cal. L.R. 78-230(k). A motion for reconsideration must accomplish two goals to succeed, "[f]irst, a motion for reconsideration must demonstrate why the court should reconsider its prior motion. Second, the motion must set forth facts or law of 'a strongly convincing' nature to induce the court to reverse its prior decision ." Jacob v. U.S., 128 F.Supp.2d 638, 641 (D.Haw.2000) (citing Decker Coal Co. v. Hartman, 706 F.Supp. 745, 750 (D.Mont.1998) (citation omitted).

A. Breach of Contract

Defendant argues that this court's June 20, 2007 order failed to properly apply the Supreme Court's decision in Bell Atl. Corp. v. Twombly, ---U.S. ----, 127 S.Ct. 1955, 167 L.Ed.2d 929 (May 21, 2007). Specifically, defendant points out that in considering plaintiff's claim for breach of contract, this court held that:
> Under the terms of the policy, defendant was obligated to pay the amount necessary to repair the damaged property, which means restoring it to its pre-accident operational safety, function and appearance. The court cannot conclude beyond doubt that under the allegations of the complaint there is no set of facts plaintiff could present to prove defendant breached that obligation.

(Order at 4:3-9) (quoting Van Buskirk v. CNN, Inc., 284 F.3d 977, 980 (9th Cir.2002).) The "no set of facts" language to which this court referred was the traditional legal standard cited in the Ninth Circuit for 12(b)(6) motions to dismiss and is derived from the Supreme Court's decision in Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) ("[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.")

Defendant correctly points out that in Bell Atlantic the Supreme Court abrogated the 12(b)(6) motion to dismiss standard under Conley. The Court held that:
> This "no set of facts" language can be read in isolation as saying that any statement revealing the theory of the claim will suffice unless its factual impossibility may be shown on the face of the pleadings .... On such a focused and literal reading of Conley's "no set of facts," a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of facts" to support recovery.

127 S.Ct. at 1968. The Court determined that Conley's "no set of facts" language "has earned its retirement" and that, "[t]he phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard." Id. at 1969.

Accordingly, Bell Atlantic requires that the complaint contain factual allegations sufficient, "to raise a right to relief above the speculative level." Bell Atl., 127 S.Ct. at 1965-66, 1974. However, "a complaint attacked by a rule 12(b)(6) motion to dismiss does not need detailed factual allegations." Id. at 1964. Rather it must plead, "enough facts to state a claim to relief that is plausible on its face." Id. at 1974. Thus, a 12(b)(6) motion to dismiss should be granted when plaintiffs fail to "nudge [ ] their claims across the line from conceivable to plausible." Id.

*3 Defendant contends that plaintiff's complaint pleads insufficient facts to state a cause of action pursuant to the Bell Atlantic standard. Defendant argues that its contractual obligation was to restore plaintiff's car to its pre-accident condition, and that this duty was satisfied by offering to pay a labor rate of $65 per hour. (Def's Mot. for Recons. at 4.) Defendant claims that, "in order to demonstrate than an auto body repair labor rate of $65 per hour was insufficient to restore her car ... plaintiff would have to allege that no auto body repair shop in her area accepted that hourly rate." (Id. at 5.) Bell Atlantic does not establish such a heightened pleading standard. Rule 8 of the Federal Rules of Civil Procedure still requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."

The complaint alleges that plaintiff purchased an automobile insurance policy from defendant, that her car was subsequently damaged, and that defendant failed to pay the reasonable hourly rate of repair. (Opp. to Mot. for Recons. at 4.) Plaintiff alleges that the $65.00 per hour rate was "used by USAA as a basis for limiting the amount it would pay for labor, [and] was set arbitrarily, artificially,

(C) 2007 Thomson/West. No Claim to Orig. US Gov. Works



unlawfully and unfairly." (Compl.¶ 15.)

Applying the Bell Atlantic pleading standard, it is entirely plausible from the allegations of the complaint that the $65 per hour which defendant was willing to pay was insufficient to restore plaintiff's car to its pre-accident condition. Thus, even though the court erred in applying Conley's no set of facts standard, under Bell Atlantic, plaintiff has pled sufficient facts to state a plausible claim for breach of contract.

B. Breach of Implied Covenant of Good Faith and Fair Dealing

As discussed in the June 20, 2007 order, because the court finds that the complaint does state a claim for breach of contract, defendant's argument with respect to the claim for breach of the implied covenant also fails.

C. UCL

Also discussed in the previous order, plaintiff meets the "lost money or property" prong of the UCL in that she alleges lost insurance benefits due under her policy.

D. Preliminary and Permanent Injunction

In ruling on defendant's motion to dismiss plaintiff's request for a preliminary and permanent injunction, this court held that it could not "conclude beyond doubt" that plaintiff would be unable to establish Article III standing pursuant to requirements of City of Los Angeles v. Lyons, 461 U.S. 95, 101-02, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). (Order 5: 22-28.) Re-examining defendant's motion under the Bell Atlantic standard, it is plausible that plaintiff will meet the requirements of City of Los Angeles. Plaintiff is still insured by defendant and thus would be likely to suffer the same kind of loss if her car was damaged in the future.

IT IS THEREFORE ORDERED that defendant's motion for reconsideration be, and the same hereby is, DENIED.

2007 WL 2345012 (E.D.Cal.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works

Westlaw.

*Coupons, Inc. v. Stottlemire, et al.*
United States District Court, Northern District, Case Number 07-CV-03457 HRL

# TAB B

ation by which the name can be recognized, or a generally known alternative designation of the owner. Example: ©2003 Jane Doe.

The notice must be affixed in such a manner and location as to give reasonable notice of the copyright claim. 17 USC §401(c); 37 CFR §201.20.

## §1.8  G. Copyright Registration

Copyright registration is permissive and is not a condition of basic copyright protection under current law. 17 USC §408(a). Even though registration is not required, it provides the following advantages:

- Registration is a necessary prerequisite for a copyright infringement suit for works of U.S. origin. 17 USC §411(a).

- Registration establishes a public record of the copyright claim.

- If done before or within 5 years after the first publication of a work, registration will constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate of registration. 17 USC §410(c).

- If a work is registered within 3 months after first publication or in any event before an infringement occurs, statutory damages under 17 USC §504(c) and attorney fees may be recovered by the copyright owner. Otherwise, only actual damages would be recoverable by the copyright owner. 17 USC §412.

- Registration may allow the owner of the copyright to record the registration with the U.S. Customs Service for protection against the importation of infringing copies. For further information, see "How to Obtain Copyright, Trademark, and Patent Protection from the U.S. Customs Service," US Customs Service Brochure 563, available from the U.S. Customs Service, P.O. Box 7404, Washington, D.C. 20044, and http://www.customs.gov.

Registration may be made at any time within the life of the copyright. To register a work, the appropriate registration form available from the Copyright Office website, http://www.copyright.gov, should be completed and submitted, along with a nonrefundable filing fee

and a nonreturnable deposit of the work being registered. Computer software programs and databases are considered "literary works" for purposes of copyright registration. The graphic elements of a website, however, will fall into the "visual arts" category. Deposit requirements vary depending on the type of work involved. In general, the deposit requirement consists of two complete copies of the work. 17 USC §407(a)(1). Additional information concerning copyright registration procedures is available at the Copyright Office website and in United States Copyright Office Circular 1, "Copyright Basics," available at http://www.copyright.gov/circs/circ01.pdf.

If the work is an unpublished or published computer program, the deposit requirement consists of one visually perceptible copy in source code of the first 25 and last 25 pages of the program. For a program fewer than 50 pages in length, the deposit is a copy of the entire program. Additional deposit options are available for programs containing trade secrets: A deposit may be a portion of the source code that contains no trade secrets, or one that has had the trade secret portions blocked out. For more information on computer program registration, including deposits for revised programs and provisions for trade secrets, see United States Copyright Office Circular 61, "Copyright Registration for Computer Programs," available at http://www.copyright.gov/circs/circ61.pdf.

A copyright registration is effective on the date the Copyright Office receives all the required components in acceptable form, regardless of how long it then takes to process the application and mail the certificate of registration. 17 USC §410(d).

As a practical matter, companies doing business online do not normally register each of their copyrights as a matter of course. For companies with software programs and websites that are in a state of constant revision and improvement, registration of each upgrade or modification can be expensive and time-consuming. Moreover, it can difficult to identify what parts of a work could be submitted for registration without disclosing any trade secrets. As a result, most technology companies only take steps to register works in connection with certain events—especially litigation, because registration must occur before an infringement suit can be filed. See 17 USC §411. Registration is also often required in connection with financings to enable the lender to take a security interest in the registered copyrights. See §16.27.

For companies requiring their partners or portfolio companies

to register their copyrights, the registration requirement itself is likely only a first step. Thereafter, the company should ensure that subsequent versions and derivative works are also registered, and some oversight may be necessary to ensure that registrations do not unnecessarily disclose any confidential source code or other trade secrets.

### H. Transferring Copyrights

#### §1.9    1. Generally

The Copyright Act defines a "transfer of copyright ownership" as (17 USC §101):

> an assignment, mortgage, exclusive license, or any other conveyance, alienation, or hypothecation of a copyright or of any of the exclusive rights comprised in a copyright, whether or not it is limited in time or place of effect, but not including an nonexclusive license.

Copyrights may be transferred in whole or in part by conveyance, by operation of law, or by bequest or devise. Any of the exclusive rights of a copyright holder specified in 17 USC §106 (see §1.6) may be transferred and held separately. 17 USC §201(d). Unless the transfer is by operation of law, all transfers of copyright ownership must be in writing and signed by the owner of the rights conveyed. 17 USC §204(a). The Copyright Office has a procedural guide for transferring copyrights. See United States Copyright Office Circular 12, available at http://www.copyright.gov/circs/circ12.pdf.

**NOTE►** The transfer rules in 17 USC §204 do not apply to nonexclusive licenses of copyrights. Nonexclusive licenses may be granted orally or even implied from conduct. *Lulirama Ltd, Inc. v. Axcess Broadcast Servs., Inc.* (5th Cir 1997) 128 F3d 872, 878.

Notarial acknowledgements are not required for validity, but constitute prima facie evidence of the execution of the transfer. 17 USC §204(b). The original or a certified copy of the transfer document may be recorded in the U.S. Copyright Office. A cover sheet as prescribed by the Copyright Office is required to be filed along with the transfer document. A copy of the cover sheet is reproduced in §1.11, and is available for downloading at http://www.copyright.gov/forms/formdoc.pdf. Recordation gives constructive notice to third parties of the transfer, provided that the work is registered