John L. Slafsky, State Bar No. 195513
Hollis Beth Hire, State Bar No. 203651
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, California 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 493-6811
jslafsky@wsgr.com
hhire@wsgr.com

For Counsel Hollis Beth Hire and
Wilson Sonsini Goodrich & Rosati

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| COUPONS, INC., | Case No. 5:07-cv-03457 HRL |
| Plaintiff, | |
| v. | |
| JOHN STOTTLEMIRE, and DOES 1-10, | Date: December 4, 2007<br>Time: 10:00 am<br>Courtroom: 2 |
| Defendants. | Judge: Hon. Howard R. Lloyd |

**HOLLIS BETH HIRE AND WILSON SONSINI GOODRICH & ROSATI'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT STOTTLEMIRE'S MOTION FOR SANCTIONS**

OPPOSITION TO STOTTLEMIRE'S MOTION
FOR SANCTIONS – CASE NO. 5:07-CV-03457 HRL

# TABLE OF CONTENTS

| | Page |
|---|---|
| I. PRELIMINARY STATEMENT | 1 |
|     A. INTRODUCTION | 1 |
|     B. FACTUAL BACKGROUND | 2 |
|     C. PROCEDURAL POSTURE | 2 |
| II. LEGAL STANDARD | 3 |
| III. ARGUMENT | 5 |
|     A. The Facts in the FAC Were Alleged After Ample Investigation and Research, and Are Based on Compelling Evidence | 5 |
|     B. Claims in the FAC Are Not Baseless, and Are Warranted Under Existing Law | 6 |
|         1. Stottlemire's Conduct Violates 17 U.S.C. § 1201 on Its Face | 7 |
|         2. Stottlemire's Arguments Are Unavailing | 8 |
|             a) Effectively control access | 9 |
|             b) Circumvention and Authorization | 10 |
|     C. The FAC Was Not Filed for an Improper Purpose | 12 |
|     D. The Court, in Its Discretion, Should Deny Sanctions | 13 |
| IV. CONCLUSION | 13 |

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allen v. Van Hoy*, Civ. No. 92-906-FR, 1993 WL 369311 (D. Or. Sept. 8, 1993) ........................ 13

*Associated Bus. Tel. Sys. Corp. v. Cohn*, No. C-93-1570-DLJ, 1994 WL 589487
 (N.D. Cal. Oct. 4, 1994) ........................................................................................................ 3

*Chamberlain Group, Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178 (Fed. Cir. 2004) .............. 8, 9, 10,
 11, 12

*Cooler & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990) ................................................................ 3

*Dioptics Medical Products, Inc. v. Maui Jim, Inc.*, No. C-05-01885 MJJEDL,
 2006 WL 463527 (N.D. Cal. Feb. 24, 2006) ........................................................................ 4

*Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 1531 (9th Cir.
 1986) ..................................................................................................................................... 3

*Gaiardo v. Ethyl Corp.*, 835 F.3d 479 (3d Cir. 1987) .................................................................... 3

*Golden Eagle Distributing Corp. v. Burroughs Corp.*, 801 F.2d 1531 (9th
 Cir.1986) ............................................................................................................................... 3

*Holgate v. Baldwin*, 425 F.3d 671 (9th Cir. 2005) ................................................................... 4, 12

*Hudson v. Moore Bus. Forms Inc.*, 827 F.2d 450 (9th Cir. 1987) ................................................. 3

*Lexmark International, Inc. v. Static Control Components, Inc.*, 387 F.3d 522 (6th
 Cir. 2004) ..................................................................................................................... 8, 9, 10

*Oliveri v. Thompson*, 803 F2d 1265 (2nd Cir. 1986) .................................................................... 6

*RealNetworks, Inc. v Steambox, Inc.*, No. 2:99CV02070, 2000 WL 127311 (W.D.
 Wash Jan. 18, 2000) ........................................................................................................... 10

*Riverhead Savings Bank v. Nat'l Mortgage Equity Corp.*, 893 F.2d 1109 (9th Cir.
 1990) ..................................................................................................................................... 3

*Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294 (SDNY 2000) .......................... 10

**STATUTES**

17 U.S.C. § 1201 .......................................................................................... 2, 6, 7, 8, 9, 11, 12

17 U.S.C. § 1202 ....................................................................................................................... 13

**RULES**

Fed. R. Civ. P. 11 ...................................................................................................................... 4, 9

Fed. R. Evid. 201 ........................................................................................................................ 11

| | |
|---|---|
| 1 | Fed. R. Evid. 402 ...............................................................................................................................11 |
| 2 | Fed. R. Evid. 901 ...............................................................................................................................11 |

3 **MISCELLANEOUS**

4 3 Melville B. Nimmer & David Nimmer, <u>Nimmer on Copyright</u> § 12A.03 (2007).........................8

Hollis Beth Hire and Wilson Sonsini Goodrich & Rosati (collectively, "Counsel") submit this memorandum of points and authorities in opposition to Defendant John Stottlemire's ("Stottlemire's") motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure (the "Motion").[1]

## I. PRELIMINARY STATEMENT

### A. INTRODUCTION

The First Amended Complaint ("FAC") is well-grounded in law and fact and reflects a thorough pre-filing investigation by Counsel. Stottlemire's Motion for sanctions is, at best, a rehashing of his weak and nonsensical arguments for summary judgment. At worst, the Motion is a frivolous attempt to deflect attention from his own wrongdoing. The Court should deny the motion in its entirety.

First, Stottlemire claims that the allegations in the FAC are "false," yet he does not point to any factual allegations that lack evidentiary support. Indeed, all factual allegations in the FAC are supported by ample documentary evidence and, if necessary, witness testimony.

Second, Stottlemire's argument focuses on claims in the FAC that his conduct is in violation of the Digital Millennium Copyright Act ("DMCA"). As explained below in detail, the FAC is well grounded in the existing law regarding the DMCA.

Lastly, Stottlemire argues that the FAC was filed for an improper purpose: "to instill unfounded fear in Defendant." This argument must fail as it is premised on Stottlemire's incorrect assertion that the FAC has no legal merit. Once it is clear that the FAC is a nonfrivolous assertion of Plaintiff's rights, there is no basis to argue that the purpose of the FAC was to instill unfounded fear. Moreover, there is no support for Stottlemire's position that the FAC was filed for any reason other than to seek appropriate remedies for his conduct.

---

[1] A notice of withdrawal and substitution of counsel has been filed in this matter, substituting Farella Braun + Martel LLP as counsel for Plaintiff Coupons, Inc. (Plaintiff"). Therefore, Counsel is filing this separate opposition to Stottlemire's Motion.

For these reasons, Stottlemire's Motion cannot support grounds for Rule 11 sanctions, and, in any event, the Court, in its discretion, should decline to impose them.

### B. FACTUAL BACKGROUND

Plaintiff's allegations in this action, as stated clearly in its FAC, are for violations of the DMCA's anti-circumvention provisions and related state claims. Plaintiff provides online, printable coupons to consumers and to online retailers and businesses, which then provide such coupons to consumers. With the delivery of these coupons to consumers, Plaintiff delivers to the user's computer security features which prevent the printing of more than the authorized number of coupons (for most coupons, the consumer is allowed two prints, but the number sometimes varies). Stottlemire created, offered to the public in chat room forums, and distributed by email or other messaging services a method of deleting the security features and a software program that deleted the security features, all for the purpose of allowing users to print more than the authorized number of coupons. Because Plaintiff's coupons are works subject to copyright protection, Stottlemire's actions violate the anti-circumvention provisions of 17 U.S.C. § 1201.

### C. PROCEDURAL POSTURE

Plaintiff filed its initial complaint on July 2, 2007, and its FAC on August 29, 2007. On September 24, 2007, Stottlemire filed a motion to dismiss the FAC, and, in the alternative, for summary judgment ("MSJ"). Also on September 24, 2007, Stottlemire sent a copy of his proposed Motion for sanctions to Counsel, demanding that the FAC be withdrawn in its entirety. Counsel indicated to Stottlemire that Plaintiff was not interested in withdrawing its FAC, and Stottlemire filed the present Motion for sanctions on October 15, 2007.[2]

The MSJ was originally set for hearing on November 13, 2007, and the present Motion for sanctions was originally set for hearing on November 20, 2007. On October 17, 2007, Plaintiff retained the law firm of Farella Braun + Martel LLP (the "Farella firm") to replace its existing counsel, Wilson Sonsini Goodrich & Rosati (the "WSGR firm"). Plaintiff filed a

---

[2] The Motion erroneously refers to Hollis Beth Hire as lead counsel.

withdrawal and substitution of counsel on October 19, 2007. After discussing a stipulated extension of time to oppose the motions, the Farella firm and Stottlemire were unable to come to an agreement, and the Farella firm requested an extension from this Court on October 22, 2007. Stottlemire opposed the request, ostensibly on the ground that he would have opposed the withdrawal of the WSGR firm from the case.[3] In an order on October 24, 2007, the Court reset the hearing dates for both of Stottlemire's motions to December 4, 2007.

## II. LEGAL STANDARD

Rule 11 sanctions are imposed only in the "exceptional circumstance" where a claim "is patently unmeritorious or frivolous." *Riverhead Savings Bank v. Nat'l Mortgage Equity Corp.*, 893 F.2d 1109, 1115 (9th Cir. 1990) (quoting *Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 1531, 1537 (9th Cir. 1986); *Gaiardo v. Ethyl Corp.*, 835 F.3d 479, 483 (3d Cir. 1987)). *See also Cooler & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) (stating that Rule 11 motions "must be read in light of concerns that it will. . . chill vigorous advocacy"). For these reasons, "The key question in assessing frivolousness is whether a complaint states an arguable claim -- not whether the pleader is correct in his perception of the law." *Hudson v. Moore Bus. Forms Inc.*, 827 F.2d 450, 453 (9th Cir. 1987); *see also Associated Bus. Tel. Sys. Corp. v. Cohn*, No. C-93-1570-DLJ, 1994 WL 589487, *3 (N.D. Cal. Oct. 4, 1994) ("If, judged by an objective standard, a reasonable basis for the position exists in both law and in fact at the time the position is adopted, then sanctions should not be imposed.") (quoting *Golden Eagle Distributing Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1538 (9th Cir.1986)).

---

[3] It is unclear why Stottlemire would have opposed the withdrawal of the WSGR firm from the case. Stottlemire's opposition seems to imply that WSGR's withdrawal would excuse it from responding to the pending sanctions motion. However, it is well settled that the Rule 11 obligations lie with the attorney who signed, and therefore certified, the pleading at issue (as well as that attorney's law firm). Counsel always assumed it would be forced to oppose and appear at a hearing to argue in opposition to this Motion, and Counsel never indicated otherwise. Indeed, in a conversation with Stottlemire, after confirming to Stottlemire that the Farella firm would now be handling the case, Counsel confirmed that she would still be attending the hearing on the motion for sanctions. *See* Declaration of Hollis Beth Hire ("Hire Decl.") ¶ 1.

The relevant sections of Rule 11 require that attorneys, by their signatures on pleadings, certify that "(1) [the pleading] is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;" that "(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;" and that "the allegations and other factual contentions have evidentiary support." Fed. R. Civ. P. 11(b). Violations of the obligations above can result in sanctions against a party and its counsel. *See* Fed. R. Civ. P. 11(c).

When, as here, a complaint is the subject of a Rule 11 motion, the inquiry should focus on: "(1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005) (internal quotations and citation omitted).

In *Dioptics Medical Products, Inc. v. Maui Jim, Inc.*, No. C-05-01885 MJJEDL, 2006 WL 463527, *1 (N.D. Cal. Feb. 24, 2006), the Court denied the defendant's motion for sanctions, because even though "th[e] case [was] not a model of pre-filing inquiry . . . the[e] case [was] not so egregious as to warrant sanctions under Rule 11, because Plaintiff had some good faith basis before filing the complaint." The *Dioptics Medical* court further noted that, as here "[t]he issues that Defendant raises are more appropriately brought as a motion for summary judgment." *Id.*

Stottlemire thus bears the heavy burden to show that the FAC is "objectively unreasonable" and unwarranted by existing law or by a nonfrivolous argument for the law's extension, that its allegations have no evidentiary support, or that the FAC itself was presented for an improper purpose. *See* Fed. R. Civ. P. 11(b). Stottlemire's Motion does not and cannot meet this burden.

## III. ARGUMENT

### A. The Facts in the FAC Were Alleged After Ample Investigation and Research, and Are Based on Compelling Evidence

Counsel's investigation prior to filing the FAC was more than reasonable. Indeed, such investigation revealed compelling documents and witnesses to support Plaintiff's allegations. *See* Hire Decl. ¶¶ 3-6. Counsel reviewed the documents and interviewed the witnesses prior to filing the FAC. *See id.*

One witness, Ed (Bud) Miller, is Executive Director of a coupon industry watchdog organization called The Coupon Information Group. *See* Declaration of Ed Miller ("Miller Decl.") ¶ 1. Mr. Miller observed Stottlemire's statements during Miller's routine monitoring of several online coupon forums. *See* Miller Decl. ¶¶ 2-3. Stottlemire made statements in the Coupon Queen Forum and in email correspondence that indicate the primary design of the software: to circumvent Plaintiff's technology that imposes print limitations on coupons. For example, on the Coupon Queen Forum, a user that Plaintiff believes to be Stottlemire posted that he "recently posted information on another site (dealideal) on how to beat the limitation imposed by the software provided by coupons.com and would allow users of that software to print an unlimited number of coupons from the coupons.com website," and then that he had "created a small exe file [a software program] that will remove the limitations placed by the coupons.com software;" and "If anyone wishes it [the exe file], send me a PM [private message] and I'll gladly send it your way." *See* Miller Decl., ¶ 4, Exh. 2. When Ed Miller wrote to Stottlemire, requesting the software, Stottlemire provided it via email. *See* Miller Decl., ¶¶ 6-7, Exh. 3. Stottlemire also delivered the software to at least one other person. *See* Declaration of Jeffrey Weitzman ("Weitzman Decl.") ¶ 6, Exh. 1.

Plaintiff, who is in the best position to know the details and the efficacy of the print limiting technology, described the security features to Counsel, and Counsel installed the coupon printer software on personal computers to become familiar with the process of accessing and printing coupons, as well as the security features that limit such activities. *See* Hire Decl. ¶ 5. Such inquiries and investigation into the nature of Plaintiff's security features

were more than objectively reasonable. *See, e.g.*, *Oliveri v. Thompson*, 803 F2d 1265, 1277 (2nd Cir. 1986) (holding that an attorney may normally rely on information obtained from the client as to which the client has first-hand knowledge: An attorney is not required "to pass judgment on the credibility of his client on pain of a monetary sanction.").

Discussion and testing of the coupon printing software revealed that the print limitations are far from "easy" to remove, as Stottlemire claims. *See* Weitzman Decl. ¶ 9; Hire Decl. ¶ 6. Counsel's use of the coupon printer on personal computers confirmed the representation from Plaintiff: that an average user who is not seeking a means to circumvent Plaintiff's print limitations would not even notice Plaintiff's security features, let alone go to great lengths to locate them, remove them, then re-install the coupon printer, so the user could re-print the desired coupons. *See* Hire Decl. ¶ 6. Stottlemire's conduct, however, offered all users information about how to locate and remove the security files, and a software program which purported to complete all of these steps for the user. *See* Miller Decl. ¶ 4, Exh. 2. Though Stottlemire is now attempting to claim that he is a crusader for hard drive cleanliness, merely helping users to rid their hard drives of vestigial files, Stottlemire's own statements belie his true intent: to "allow users of that software to print an unlimited number of coupons from the coupons.com website." *See id.*

Based on this evidence, it was not only reasonable for Counsel to allege that Stottlemire violated 17 U.S.C. § 1201, it was likely sufficient to support summary judgment on the claim.

**B. Claims in the FAC Are Not Baseless, and Are Warranted Under Existing Law**

Stottlemire does not seriously dispute the evidentiary support for the facts as stated above – Stottlemire only takes issue with the conclusion that such conduct violates the DMCA. Motion at 6-10.

As explained in detail in Plaintiff's opposition to Stottlemire's MSJ, the allegations in the FAC are sufficient to support a claim under the DMCA's anti-circumvention provisions. For the same reasons, such claims are warranted by the existing law.[4]

### 1. Stottlemire's Conduct Violates 17 U.S.C. § 1201 on Its Face

Plaintiff claims violations of 17 U.S.C. § 1201 and related state claims.[5] Specifically, Stottlemire's conduct is in violation of two subsections of § 1201[6]:

---

[4] Two law school professors have already weighed in on the question of whether Plaintiff's DMCA claims are reasonable. Stottlemire has sought publicity on the subject of this lawsuit in various public forums, including an article in the Wired online magazine. *See* Hire Decl. ¶ 7, Exh. 1. After explaining Plaintiff's claims, based on a fairly complete account of the facts stated above, the article cites the opinions of two "legal experts," both of whom believe that Plaintiff likely has a case under the DMCA:

> "I think it's a pretty broad statute," says Carl Tobias, a professor at the University of Richmond School of Law. "It may cover this. I think it does give companies a lot of leverage and a lot of power." Jim Gibson, a University of Virginia School of Law visiting scholar who teaches copyright law, suggests Stottlemire might be swimming in legally murky waters at best. "He might be in trouble for providing technology that is designed for essentially hacking around copyright protection," Gibson says.

[5] Stottlemire does not argue that Plaintiff's state law claims are unwarranted or baseless; he only argues that the DMCA claims in Plaintiff's FAC are "false" and "misleading." *See* Motion at 6, 11, 13-14.

[6] The full text of 17 U.S.C. §§ 1201(a)(2) and 1201(b)(1) reads:

1201(a)(2): No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that –

(A) is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title.

(B) has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected under this title; or

(C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing a technological measure that effectively controls access to a work protected under this title.

1201(b)(1): No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that -

- 1201(a)(2) provides a "ban on trafficking," to prohibit manufacturing or otherwise trafficking in any product that is primarily designed for the purpose of circumventing a technological measure that effectively controls access to a copyrighted work. *See* 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 12A.03 (2007) (abbreviating this section as a "ban on trafficking.").
- 1202(b)(1) lists "additional violations," which prohibit manufacturing or otherwise trafficking in any product that is primarily designed for the purpose of circumventing a technological measure that effectively protects a right of a copyright owner in a work. *See id*.

### 2. Stottlemire's Arguments Are Unavailing

Stottlemire's substantive arguments in this Motion for sanctions are based on Plaintiff's alleged inability to support a claim for the ban on trafficking violation of 17 U.S.C. § 1201(a)(2) under *Lexmark International, Inc. v. Static Control Components, Inc.*, 387 F.3d 522 (6th Cir. 2004) and *Chamberlain Group, Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1203 (Fed. Cir. 2004). Specifically, Stottlemire argues that the allegations in the FAC are "false" and "misleading" because Plaintiff's works are not (1) effectively controlled by a technological measure, (2) which has been circumvented, such that that third parties can now access the work without authorization, as required by *Lexmark* and *Chamberlain*. Motion at 6-10.

First, it should be noted that *Chamberlain* (a Federal Circuit case applying Seventh Circuit law) and *Lexmark* (a Sixth Circuit case) are not controlling authority for this District

---

(A) is primarily designed or produced for the purpose of circumventing protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof;

(B) has only limited commercially significant purpose or use other than to circumvent protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof; or

(C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof.

1  Court.  Given that Stottlemire bases his entire argument on cases that are not controlling

2  precedent, it is even more of a stretch to conclude that Plaintiff's and Counsel's claims in the

3  FAC were "baseless" and "unwarranted under existing law" and are unwarranted under any

4  "nonfrivolous argument for the extension, modification, or reversal of existing law."  *See* Fed.

5  R. Civ. P. 11(b).

6       Second, even if the Court applies *Chamberlain* and *Lexmark*, neither case addresses the

7  required showing for a prima facie case under the additional violations of 17 U.S.C.

8  § 1201(b)(1).  Both cases only address the required showing for violations of 17 U.S.C.

9  § 1201(a)(2).  Therefore, even if the Court were to find that a claim under 17 U.S.C. §

10  1201(a)(2) was "unwarranted," (which it should not, given that Plaintiff's claims are well-

11  grounded in the existing law), sanctions should still be denied because Stottlemire does not

12  present any arguments relating to a deficiency in the FAC to support a claim for violations of

13  17 U.S.C. § 1201(b)(1).

14       Though Stottlemire's Motion could be denied based on either of the issues above, even

15  if his arguments are considered in turn, it is still clear that Stottlemire's Motion for sanctions

16  must be denied, as the facts alleged in the FAC are more than sufficient to establish a

17  nonfrivolous claim under §§ 1201(a)(2) and 1201(b)(1).

18                 **a)**    **Effectively control access**

19       Stottlemire argues that Plaintiff's technology does not effectively control access to its

20  online coupons, and therefore the allegations in the FAC are "false" and "misleading."  *See*

21  Motion at 6.  Stottlemire's argument is based on a misunderstanding (or misrepresentation) of

22  both the holding of *Lexmark*, and the essential functions of Plaintiff's technology.  Plaintiff has

23  not had any opportunity to present evidence of the details of its technological measures, and

24  cannot do so without an appropriate protective order in place.  Weitzman Decl. ¶ 4.  However,

25  without delving into the details of Plaintiff's technology, it is still clear that Stottlemire's

26  argument is untenable.

27       Stottlemire argues that Plaintiff's technology does not effectively control access because

28  the unique identifiers that Plaintiff assigns to a user's computer can be removed "easily."  *See*

Motion at 7.  However, the DMCA does not require that the technological measures be impenetrable; if it did, the anti-circumvention provisions would serve no purpose: "a precondition for DMCA liability is not the creation of an impervious shield to the copyrighted work.  Otherwise, the DMCA would apply only when it is not needed." *Lexmark*, 387 F.3d at 549 (citations omitted).  *See also Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 317-18 (SDNY 2000) (rejecting defendant's argument that plaintiff's technological measure does not "effectively control access" because it is only a "weak cipher").  Moreover, Stottlemire presents no evidence of such alleged ease of removal.  In fact, the vast majority of users do not seek out the unique identifiers, and the same vast majority of users would not be able to identify the unique identifiers (without the assistance of Stottlemire or another highly technologically savvy individual who took pains to do so).  *See* Weitzman Decl. ¶ 9.

Stottlemire also appears to argue that a measure is ineffective if everyone is in possession of some part of the raw materials required to disable the technological measure (i.e., the delete key).  Motion at 7.  Surely everyone is in possession of some tools required to disable all technological controls – some circumvention devices would require screwdrivers, yet the prevalence of screwdrivers does not render them meaningless.  Likewise, other circumvention devices require code written with the keys on a keyboard, yet common possession of computer keyboards does not negate their effectiveness, either.  *See RealNetworks, Inc. v Steambox, Inc.*, No. 2:99CV02070, 2000 WL 127311, *9 (W.D. Wash Jan. 18, 2000) (holding that a protection device is effective if, when used in the "ordinary course of operation," it limits access to a copyrighted work).

### b) Circumvention and Authorization

Stottlemire argues that the claims in the FAC are not warranted by the existing law because Plaintiff did not "withhold authorization" from Stottlemire.  *See* Motion at 8-10. This argument is premised on a misunderstanding of the DMCA.  To support his position, Stottlemire quotes an ambiguous sentence in *Chamberlain*: "The plain language of the statute [§ 1201(a)(3)] therefore requires a plaintiff alleging circumvention (or trafficking) to prove that the defendant's

access was unauthorized." Motion at 8; MSJ at 7 (quoting 381 F.3d at 1193). Therefore, Stottlemire claims, Plaintiff has made a frivolous claim under the DMCA.

However, *Chamberlain* itself clarifies this point later in the opinion: "A plaintiff alleging a violation of 1201(a)(2) must prove [in part]: . . . a valid copyright on a work . . . that *third parties* can now access . . . without authorization . . .because of a product that the defendant [trafficker] . . . designed or produced."[7] 381 F.3d at 1203 (emphasis added). Therefore, *Chamberlain* itself makes clear – with respect to the requirements for a prima facie case – that the trafficker's device must allow unauthorized *third-party* access to a copyrighted work (as Stottlemire's circumvention instructions and software allowed unauthorized third parties (readers of coupon forums) access to its coupons). *See* 381 F.3d at 1203. Neither the statute nor *Chamberlain* requires Plaintiff to allege or to prove that the *trafficker's* actions were unauthorized. *See id*.

Stottlemire makes much of the lack of a license agreement.[8] *See* Motion at 8. However, nothing in the DMCA, or even in *Chamberlain*, requires a license agreement. In the context of

---

[7] The entirety of the *Chamberlain* standard for proving a prima facie case under 17 U.S.C. § 1201(a)(2) is stated and discussed in Plaintiff's Opposition to Stottlemire's MSJ.

[8] Because Stottlemire refers to Exhibit D of his Request for Judicial Notice in his Motion for sanctions (*see* Motion at 8), Counsel states its objections to such evidence on the following grounds:

• Judicial notice is only appropriate when a fact is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Nearly all of Stottlemire's exhibits are ineligible based on this standard, including Exhibit D.

• Exhibit D contains unauthenticated printed pages allegedly from websites as available on certain dates. Without testimony establishing the source and authenticity of the documents, they are inadmissible pursuant to Fed. R. Evid. 901. In addition, all Exhibits to the Request for Judicial Notice are irrelevant to Stottlemire's Motion, and are therefore inadmissible pursuant to Fed. R. Evid. 402.

Because the Exhibits in his Request for Judicial Notice filed in connection with the MSJ are inadmissible, Stottlemire cannot rely on any of them to support his motion for sanctions. As such, to the extent any of Stottlemire's arguments rely on these documents the arguments must be disregarded.

*Chamberlain*, the court held that the plaintiff was required to provide an explicit restriction of the use of the subject garage door system, if plaintiff intended to bar its competitor from offering an interoperable garage door opener. *See* 381 F.3d at 1203-04. The *Chamberlain* court determined that this explicit restriction was necessary in light of the widely held marketplace perception that a consumer could use a universal garage door opener with any garage door system, including the plaintiff's system. *See id.* The marketplace expectation is different in the context of online coupons. *See* Weitzman Decl. ¶ 10. Regardless, Plaintiff does (and did) provide notice of explicit restrictions to its users, including a notice for each and every coupon which states that the user's print limit has been reached when the user has printed the coupons the authorized number of times. *See* Weitzman Decl. ¶ 8, Exh. 3. With such facts, Plaintiff's claim under the DMCA is far from "legally baseless," and Stottlemire's Motion must be denied. *See Holgate v. Baldwin*, 425 F.3d at 676.

### C. The FAC Was Not Filed for an Improper Purpose

With no evidentiary support, Stottlemire argues that Plaintiff filed the FAC to "instill unfounded fear in Defendant, Defendant's family, and any other person who uses their software."[9] *See* Motion at 10-11. This argument relies completely on Stottlemire's misguided premise that the claims are baseless, which, as shown above, is faulty. Once it is established that Plaintiff and Counsel filed the FAC based on facts supported by ample evidence and claims warranted by the existing law, there is no reason to believe that Plaintiff filed the FAC for any reason other than to seek relief for Stottlemire's violations of 17 U.S.C. § 1201.

Stottlemire further argues that Plaintiff's settlement offer (particularly one that required no payment unless Stottlemire violated its terms), and "history" of prior lawsuits (including two actions against past violators in the last four years) somehow prove that Plaintiff had an improper purpose in filing the FAC. Certainly a generous offer to Stottlemire to resolve the pending

---

[9] This section of the Motion appears only to reference Plaintiff, but because Counsel is not specifically excluded from Stottlemire's allegations of improper purpose, Counsel responds substantively to the arguments.

lawsuit and the filing of two prior lawsuits to enforce Plaintiff's rights under a completely different section of the DMCA (17 U.S.C. § 1202, which governs alterations of copyright management information) do not help Stottlemire meet his burden of showing an improper purpose. *See, e.g.*, *Allen v. Van Hoy*, Civ. No. 92-906-FR, 1993 WL 369311, *3 (D. Or. Sept. 8, 1993) ("[F]or a claim of harassment to be sustained on the basis of successive filings, there must exist an identity of parties involved in the successive claim, and a clear indication that the repeat claim was resolved in the earlier one.") (citations and quotations omitted). If anything, such actions demonstrate that Plaintiff is consistently enforcing its rights against Stottlemire and other violators when appropriate, for the purpose of stopping the violative conduct, and not for vindictive monetary gain. Stottlemire's arguments are further suspect given his shockingly weak basis for filing this Motion for sanctions; the lack of any legitimate argument or evidence to support this Motion begs the question of Stottlemire's purpose in filing the Motion, and it seems unlikely that the purpose was proper.

### D. The Court, in Its Discretion, Should Deny Sanctions

Based on the arguments above, Stottlemire has not met his burden to show that the FAC was frivolous or baseless, or filed for an improper purpose. The motion should therefore be denied.

## IV. CONCLUSION

For the reasons stated above, Counsel respectfully requests that the Court deny Stottlemire's motion for sanctions against Hollis Beth Hire and Wilson Sonsini Goodrich & Rosati.

Dated: November 13, 2007

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

  /s/ Hollis Beth Hire
John L. Slafsky
Hollis Beth Hire

For Counsel Hollis Beth Hire and Wilson Sonsini Goodrich & Rosati