Neil A. Goteiner (State Bar No. 083524)
Dennis M. Cusack (State Bar No. 124988)
Carly O. Alameda (State Bar No. 244424)
Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480
E-mail: ngoteiner@fbm.com, dcusack@fbm.com,
calameda@fbm.com

Attorneys for Plaintiff
COUPONS, INC.

1
2
3
4
5
6
7

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

8
9
10
11

| 12 | COUPONS, INC., | Case No. 5:07-CV-03457 HRL |
| 13 | Plaintiff, | **COUPONS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT STOTTLEMIRE'S MOTION TO DISMISS** |
| 14 | vs. | |
| 15 | JOHN STOTTLEMIRE, and DOES 1-10, | Date: May 13, 2008 |
| 16 | Defendants. | Time: 10:00 a.m. |
| 17 | | Courtroom: 2, 5th Floor<br>Judge: Honorable Howard R. Lloyd |

18
19
20
21
22
23
24
25
26
27
28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT
STOTTLEMIRE'S MOTION TO DISMISS
USDC/NDC/SJ 5:07-CV-03457 HRL

22675\1470554.1

Dockets.Justia.com

# TABLE OF CONTENTS

Page

I. INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II. FACTUAL BACKGROUND ................................................................ 2

III. PROCEDURAL BACKGROUND ............................................................ 3

IV. ARGUMENT ........................................................................ 4

    A. Legal Standard ............................................................ 4

    B. Coupons Has Alleged Facts That, If Proved, Would Establish That Stottlemire Has Violated 17 U.S.C. §1201(a) ........................................... 4

        1. Stottlemire's Contentions Against Coupons' 1201(a) Claim Are Without Merit ..................................................... 6

        2. EFF's Contentions Against Coupons' 1201(a) Claim Are Without Merit ........................................................ 7

    C. Coupons Has Alleged Facts That, If Proved, Would Establish That Stottlemire Has Violated 17 U.S.C. § 1201(b) ........................................ 10

    D. There is No Basis to Narrow Any Claims To Eliminate Reliance On Stottlemire's Circumvention Instructions And Comments ................................. 13

    E. Coupons Has Alleged Facts That, If Proved, Would Establish That Stottlemire Has Violated State Law ........................................... 15

        1. Coupons has alleged facts sufficient to support its Unlawful Business Practices cause of action under Business and Professions Code, section 17200 et seq. ........................................... 15

        2. Coupons has alleged facts sufficient to support its Common Law Unfair Competition cause of action. .................................... 16

        3. Coupons has alleged facts sufficient to support its Trespass to Chattel and Conversion causes of action. ............................... 17

            a. Coupons' SAC alleges facts to support a conversion cause of action. ............................................... 18

            b. Coupons' SAC alleges facts sufficient to support a trespass cause of action. ............................................. 19

            c. Coupons' trespass and conversion claims are not preempted by the Copyright Act ........................................ 23

V. CONCLUSION ...................................................................... 24

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT
STOTTLEMIRE'S MOTION TO DISMISS
USDC/NDC/SJ 5:07-CV-03457 HRL

- i -

22675\1470554.1

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Bell Atl. Corp. v. Twombly*,
 127 S. Ct. 1955 (U.S. 2007)................................................................. 4

*Chamberlain Group, Inc. v. Skylink Techs., Inc.*,
 381 F.3d 1178 (Fed. Cir. 2004)............................................................. 7

*City Solutions, Inc. v. Clear Channel Commc'ns, Inc.*,
 365 F.3d 835 (9th Cir. 2004)............................................................... 17

*CompuServe Inc. v. Cyber Promotions*,
 962 F. Supp. 1015 (S.D. Ohio 1997)..................................................... 22

*Erickson v. Pardus*,
 127 S.Ct. 2197, 2200 (U.S. 2007)........................................................ 4

*Filiti v. USAA Cas. Ins. Co.*,
 2007 WL 2345012 (E.D. Cal. 2007) ..................................................... 7

*Graehling v. Village of Lombard*,
 58 F.3d 295 (7th Cir. 1995)................................................................. 4

*eBay, Inc. v. Bidder's Edge, Inc.*,
 100 F. Supp. 2d 1058 (N.D. Cal. 2000) .................................. 20, 21, 22, 23

*Kremen v. Cohen*,
 337 F.3d 1024 (9th Cir. 2003)............................................................. 18

*Terarecon, Inc. v. Fovia, Inc.*,
 2006 U.S. Dist. LEXIS 48833 (N.D. Cal. 2006)................................... 9, 24

*Ticketmaster LLC v. RMG Techs., Inc.*,
 507 F. Supp. 2d 1096 (C.D. Cal. 2007)................................................. 9

*United States v. Elcom Ltd.*,
 203 F. Supp. 2d 1111 (N.D. Cal. 2002) ............................................ 11, 12

*United States v. Featherston*,
 461 F.2d 1119 (5th Cir. 1972).............................................................. 14

*United States v. Raymond*,
 228 F.3d 804 (7th Cir. 2000)............................................................... 14

*Universal City Studios, Inc. v. Reimerdes*,
 111 F. Supp. 2d 294 (S.D.N.Y. 2000), aff'd *sub nom* 273 F.3d 429 (2d Cir. 2001). 4, 5, 13

*Universal City Studios, Inc. v. Corley*,
 273 F.3d 429 (2d Cir. 2001)......................................................... passim

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

## STATE CASES

*Intel Corp. v. Hamidi*,
    30 Cal. 4th 1342 (2003) ........................................................................... 22

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) ........................................................................... 16

*Pines v. Tomson*,
    160 Cal. App. 3d 370 (1984) .................................................................... 16

*Thrifty-Tel, Inc. v. Bezenek*,
    46 Cal. App. 4th 1559 (1996) ............................................................. 19, 20

*Virtanen v. O'Connell*,
    140 Cal. App. 4th 688 (2006) ................................................................... 18

## FEDERAL STATUTES

17 U.S.C. § 102 ......................................................................................... 23

17 U.S.C. § 103 ......................................................................................... 23

17 U.S.C. § 106 ......................................................................................... 12

17 U.S.C. § 1201 et seq............................................................................ passim

## FEDERAL RULES

Federal Rules of Civil Procedure
    Rule 12(b)(6) ............................................................................................. 4

Wright & Miller, 5B Federal Practice and Procedure:
    Civil 3d § 1357………………………………………………………………..4

## STATE STATUTES

California Business & Professions Code
    § 17200 et seq ..................................................................................... 15, 16

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT
STOTTLEMIRE'S MOTION TO DISMISS                    - iii -                    22675\1470554.1
USDC/NDC/SJ 5:07-CV-03457 HRL

# I.   INTRODUCTION AND SUMMARY OF ARGUMENT

All of Defendant's and the Electronic Frontier Foundation's ("EFF") challenges to the Plaintiff's Second Amended Complaint ("SAC") are without merit.  Plaintiff's SAC sufficiently notifies the Defendant of Plaintiff's well grounded claims.  To summarize:

1.      Defendant simply ignores the specificity of the SAC's allegations, and their sufficiency to put him on notice of the claims, including allegations that Plaintiff notified Defendant and consumers of their unauthorized circumvention of Plaintiff's security feature;

2.      EFF's criticisms of Plaintiff's section 1201(a) claim are grounded in a misreading and improper narrowing of the SAC's allegations, as Coupons' security features clearly protect both access to, and distribution of, Coupons' copyrighted coupons.  Notably, each coupon illegally downloaded was a "unique" work, and not simply a replica, as EFF apparently assumed;

3.      EFF's contention that Defendant's instructions and troubleshooting feedback to consumers should be disregarded under sections 1201(a) and (b) is without merit because Defendant's actions demonstrate that Defendant was providing at least a "service," and his comments are relevant to his intent under the statute;

4.      There is no First Amendment protection for Defendant's email guidance to his customers.  There is neither "pure speech" here to protect, nor any risk to scientific research, as EFF hypothesizes; Defendant's purpose was to urge and assist consumers in stealing Plaintiffs' coupons by circumventing Plaintiff's security features;

5.      All Plaintiff's common law claims are well pled and singularly applicable to Defendant's conduct.  Defendant and EFF ignore or discount Plaintiff's intangible and tangible property rights in Plaintiff's coupons and in the value of Plaintiff's system.  Fundamentally, there is no practical difference between Defendant actually burglarizing irreplaceable coupons from Plaintiff's offices, and doing so by his circumvention software sending falsified information to Plaintiff's servers; and,

6.      Under well established doctrine, the Copyright Act does not preempt Plaintiff's common law claims given the nature of Defendant's conversion and trespass.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT
STOTTLEMIRE'S MOTION TO DISMISS                    - 1 -                    22675\1470554.1
USDC/NDC/SJ 5:07-CV-03457 HRL

1    Plaintiff respectfully submits that the Court should deny Defendant's motion and allow

2    the parties to develop the record.

3    **II.    FACTUAL BACKGROUND**

4        Coupons provides on-line, printable coupons to consumers on behalf of advertisers.  SAC

5    ¶ 9.  Coupons provides a valuable product and service to advertisers because its technology

6    allows advertisers to offer and distribute online coupons in a way that total prints across the

7    community are controlled, prints per computer are controlled, and each coupon within a particular

8    promotion is uniquely identified to ensure its validity.  SAC ¶¶ 13-14, 16-21, 38.  (As Defendant

9    Stottlemire understands, this control of the number of printed unique coupons is important

10   because advertiser customers of Coupons have advertising campaign limits.  Defendant

11   Stottlemire's February 26, 2008 Motion to Dismiss, ("Stottlemire Brief") pp. 3-5.)

12       The advertiser or Coupons, or both, offer the coupons online.  SAC ¶¶ 10-11.  When a

13   consumer first requests a coupon from a website, Coupons delivers to the consumer's computer a

14   security feature in the form of a unique identifier which interacts with Coupons' system to

15   prevent the printing of more than the authorized number of coupons.[1]  SAC ¶¶ 15-16.  Coupons'

16   system and technology determine if a computer is authorized to obtain a particular print, and if so,

17   the system transmits the coupon to the consumer's printer.  SAC ¶ 16.  Consumers print out the

18   coupons and redeem them at local stores.  SAC ¶¶ 11, 18.

19       Stottlemire created, used, offered to the public in chat room forums, and distributed by

20   email or other messaging services, a method and software program to circumvent the security

21   features and avoid the print limitations for a computer, all for the purpose of allowing users to

22   print more than the authorized number of unique coupons.  SAC ¶¶ 24-37.  By circumventing

23   Coupons' security features, Stottlemire was able to continue to gain access to and print additional

24   unique coupons.  Contrary to EFF's understanding of the SAC, Stottlemire did not use his

25

26   [1] The security feature limits coupon prints in two relevant ways: One, Coupons implements a
     network (or campaign) limit governing how many total coupons of a particular offer can be
27   printed for all consumers, for example an advertiser may authorize 10,000 of a particular coupon
     to be printed; and two, each computer is given a device limit, for example, for most coupons, each
28   computer is limited to two prints.  Each coupon printed is uniquely identified.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT
STOTTLEMIRE'S MOTION TO DISMISS          - 2 -                              22675\1470554.1
USDC/NDC/SJ 5:07-CV-03457 HRL

circumvention technology to print replicas of the same coupon; rather, each such coupon printed was a unique coupon, a different work for copyright purposes.[2]

Stottlemire is not a layperson; he is an expert in the area of online coupons and software programming. Coupons believes that Stottlemire owns and operates the online forum called The Coupon Queen (www.thecouponqueen.net), in which consumers discuss and trade coupons (the "Coupon Queen Forum"). SAC ¶¶ 23. The Coupon Queen Forum advertises coupons for sale in exchange for a handling fee. *Id*. Stottlemire understands the technology of coupons management in general, and many of Plaintiff coupons' generation procedures. SAC ¶¶ 23, 26-37, and Stottlemire Brief, pp. 3-5.

## III.    PROCEDURAL BACKGROUND

Coupons filed its initial complaint on July 2, 2007 and its first amended complaint on August 29, 2007. On September 24, 2007, Stottlemire filed a motion to dismiss, or in the alternative for summary judgment, a related motion for judicial notice, and a motion for sanctions based on Coupons' unwillingness to withdraw this action. On November 14, 2007, Stottlemire filed an ex parte motion to strike Coupons' opposition to the motion to dismiss. The court heard the motions on December 4, 2007, and on December 12 the court denied Stottlemire's motion to strike, denied the motion for sanctions, denied the motion for summary judgment, and denied in part and granted in part the motion to dismiss, with leave to amend. Specifically, leave to amend was granted in order for Coupons to elaborate on allegations demonstrating Stottlemire's actions

---

[2] It is true, as EFF points out, that Coupons' SAC refers to its ability to control "copying" of its coupons. Amicus Brief p. 9. However, Coupons used this term in a general and broad sense to reflect the control Coupons exerts, and the limits Stottlemire exceeded, in a consumer's ability to generate multiple prints of the same type of coupon from one particular promotion, even though technically each additional coupon print is not an exact replica, but instead contains a unique identifier differentiating every coupon within the particular promotion (as well as other possible differences). This language was not meant to restrict the description of Coupons' system and software to its narrowest literal sense (which would mean only that one particular coupon with its unique identifier was exactly duplicated), but instead to generally give notice to Stottlemire that the nature of Coupons' complaint was his accessing additional coupon prints. Stottlemire, who understands Coupons' technology, was clearly put on notice by the allegations that his alleged wrong of obtaining additional "copies" of a particular coupon meant that he obtained additional coupon prints, uniquely identified, but effectively the same coupon as far as the product and discount it represented. Stottlemire demonstrates his understanding of the allegations and the industry in his Brief's recitation of the facts. Stottlemire Brief, pp. 3-5.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT
STOTTLEMIRE'S MOTION TO DISMISS                     - 3 -                          22675\1470554.1
USDC/NDC/SJ 5:07-CV-03457 HRL

1  were not authorized.  See Court Order dated Dec. 12, 2007, pp. 6-7.  Coupons timely filed its

2  second amended complaint ("SAC") on December 27, 2007.  Stottlemire responded to the SAC

3  with a second motion to dismiss on February 26, 2008.  On March 25, 2008, the EFF filed its

4  Amicus Brief.

## IV.    ARGUMENT

### A.    Legal Standard

This Court summarized the applicable Rule 12(b)(6) standard to test the legal sufficiency of Plaintiff's claims in its December 12, 2007 Order.  Plaintiff's SAC meets Rule 12(b)(6) standards by alleging enough facts, "to state a claim to relief that is plausible on its face," and "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (U.S. 2007).  Further, it is beyond cavil that with Stottlemire's demonstrated expertise, the SAC, "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus,* 127 S.Ct. 2197, 2200 (U.S. 2007).[3]

### B.    Coupons Has Alleged Facts That, If Proved, Would Establish That Stottlemire Has Violated 17 U.S.C. §1201(a)

17 U.S.C. § 1201(a)(2)[4] of the DMCA contains "prohibitions on creating and making available certain technologies . . . developed or advertised to defeat technological protections against unauthorized access to a work." *Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 316 (S.D.N.Y. 2000) (internal citations omitted), aff'd *sub nom Universal City Studios, Inc. v. Corley*, 273 F.3d 429 (2d Cir. 2001).  Specifically, section 1201(a)(2) provides that:

> No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that –

---

[3] Dismissal under Rule 12(b)(6) is likely "only in the relatively unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to securing relief"; Rule 12(b)(6) dismissals are especially disfavored "when the asserted theory of liability is novel…since it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's suppositions."  Wright & Miller, 5B Federal Practice and Procedure: Civil 3d § 1357 at 690-692, 701.  "A suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim."  *Graehling v. Village of Lombard,* 58 F.3d 295, 297 (7th Cir. 1995).

[4] Unless otherwise noted, all further code section references are to 17 U.S.C. § 1201.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT
STOTTLEMIRE'S MOTION TO DISMISS                - 4 -                                     22675\1470554.1
USDC/NDC/SJ 5:07-CV-03457 HRL

1            (A) is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title;

2

3            (B) has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected under this title; or

4

5            (C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing a technological measure that effectively controls access to a work protected under this title.

6

7

8    Section 1201(a)(3)(A) further explains: "As used in this subsection— [¶] (A) to

9    'circumvent a technological measure' means to descramble a scrambled work, to decrypt an

10   encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological

11   measure, without the authority of the copyright owner."

12   In *Reimerdes*, eight motion picture studios brought suit against a group of computer

13   hackers under the DMCA. 111 F. Supp. 2d at 303. The studios distributed many of their

14   copyrighted motion pictures for home use on DVDs that contained copies of the motion picture in

15   digital form. These motion pictures were protected from copying using an encryption system

16   called CSS that allowed the DVDs to be played only on players with licensed technology. *Id.*

17   The defendants posted on their website a computer program called DeCSS that circumvented the

18   CSS protection system and allowed the DVDs to be played and copied on devices that did not

19   have the licensed technology. *Id.* The court found violations of sections 1201(a)(2)(A) and

20   1201(a)(2)(B) because: 1) DeCSS was a computer program, and unquestionably a technology

21   within the meaning of the statute (*Id.* at 317); 2) DeCSS circumvented a technological access

22   control measure (*Id.*); 3) CSS effectively controlled access to a copyrighted work because in the

23   ordinary course of its operation the technology worked in the defined ways to control access to

24   the work (*Id.* at 317-318); and 4) the programmer who wrote DeCSS and one of the defendants

25   conceded that DeCSS was created for the sole purpose of decrypting CSS, and that was its only

26   function. *Id.* at 319. The district court granted injunctive and declaratory relief in favor of the

27   plaintiff motion picture studios (*Id.* at 346), and the Second Circuit affirmed the decision on

28   appeal. See *Universal City Studios, Inc. v. Corley*, 273 F.3d 429 (2d Cir. 2001).

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT
STOTTLEMIRE'S MOTION TO DISMISS          - 5 -                                    22675\1470554.1
USDC/NDC/SJ 5:07-CV-03457 HRL

Here, Coupons' SAC pleads the facts necessary to support a claim under section 1201(a)(2). The SAC alleges that Coupons has in place a technological measure that, in its ordinary operation, serves to control access to its coupons (SAC ¶ 16), and those coupons are subject to copyright protection (SAC ¶ 12). The SAC alleges that Stottlemire has manufactured and offered to the public a software program and instructions (SAC ¶¶ 24-28, 33-35) primarily designed for the purpose of circumventing the technological measure put in place by Coupons to limit the number of coupons printed by a specifically identified computer (SAC ¶¶ 25-27, 29, 36), despite the fact that Coupons made clear that only access to a certain, limited number of coupons was authorized (SAC ¶¶ 18-21, 30-32). Stottlemire's actions continued even after Coupons incorporated a license agreement with its software. SAC ¶ 37.

Coupons' allegations are far from conclusory. They present the dates and Internet locations of the precise conduct at issue, and even quote the apparent admissions made by Stottlemire that indicate he designed and offered the Circumvention Method and Software specifically to defeat Coupons' security features.

**1.  Stottlemire's Contentions Against Coupons' 1201(a) Claim Are Without Merit.**

Stottlemire's contentions that Coupons failed to allege which of his actions were unauthorized and failed to explain how a customer would know whether particular actions were permitted are without merit. As set forth above, Coupons alleged Stottlemire's unlawful circumvention of security measures (SAC ¶¶ 24-31, 33-36), and several ways Coupons communicated to customers printing limitations, including messages on the computer screens. SAC ¶¶ 20-21, 30, 32, 42. Coupons also alleged that it incorporated a license agreement into the print software download to further notify consumers of restrictions, and that Stottlemire thereafter continued to circumvent Coupons' security measures. SAC ¶ 37.

Stottlemire's additional contention that Coupons failed to claim specifically that removal of certain Windows registry keys was unauthorized is misplaced. It is true that Coupons may not have alleged its claims in Stottlemire's exact words, but he understands full well the allegation and the grounds for it. Not only does the SAC allege that Coupons made clear that accessing and

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT
STOTTLEMIRE'S MOTION TO DISMISS                    - 6 -                    22675\1470554.1
USDC/NDC/SJ 5:07-CV-03457 HRL

printing unlimited coupons was not authorized, but it also alleges Stottlemire was aware of these limitations and that Stottlemire himself stated that his software "beat the limitation" imposed by Coupons' security software. SAC ¶ 18-21, 25, 30. Stottlemire is clearly on notice that Coupons is claiming that his actions to access unlimited amounts of otherwise limited coupons were unauthorized.[5] More specific details of Stottlemire's violations are not required. *Filiti v. USAA Cas. Ins. Co.*, 2007 WL 2345012, *2 (E.D. Cal. 2007). This is especially true since the burden to prove authorization will probably be on Stottlemire. See fn 5, *supra*.

### 2. EFF's Contentions Against Coupons' 1201(a) Claim Are Without Merit.

EFF's assertion that Coupons' section 1201(a) claim should be dismissed because Coupons' security measures do not qualify as an access control are without merit. EFF's amicus brief ignores certain of the SAC's allegations and misunderstands the relevant facts and technology. At best the EFF's argument is premature and without a factually developed record.

Specifically, EFF bases its entire access versus rights control argument on its assertions that: (1) all coupons for a particular product are identical and that Coupons' security feature is

---

[5] In addition, it is highly probable that Coupons will not need to affirmatively demonstrate that Stottlemire's actions were unauthorized in the way that he suggests. The burden will probably be on Stottlemire to demonstrate that Coupons' authorized his conduct, something that he will never be able to do. In *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 444 (2d Cir. 2001), the court stated that section 1201(a)(3)(A) "exempts from liability those who would 'decrypt' an encrypted DVD with the authority of a copyright owner, not those who would 'view' a DVD with the authority of a copyright owner." The court clarified that section 1201(a)(3)(A) "frees an individual to traffic in encryption technology designed or marketed to circumvent an encryption measure if the owner of the material protected by the encryption measure authorizes that circumvention." *Id*. at 444, fn 15. The court found that defendants "offered no evidence that the Plaintiffs have either explicitly or implicitly authorized DVD buyers to circumvent encryption technology to support use on multiple platforms." *Id*. at 444. Similarly, in *Chamberlain Group, Inc. v. Skylink Techs., Inc*., 381 F.3d 1178, 1193 (Fed. Cir. 2004) the court stated, "The law therefore places the burden of proof on the party attempting to establish that the circumstances of its case deviate from these normal expectations; defendants must prove authorized copying and plaintiffs must prove unauthorized access." However, this analysis was in response to the facts of the case, where a user had purchased a garage door opener, and merely wanted to make use of the copyrighted code in the particular product the user had purchased. *Id*. The court noted that the premise underlying the burden of proof was that copyright law authorizes a consumer to use the copy of software that they purchase. *Id*. Here, in the online coupon community, there is not a general expectation, understanding, or right to access unlimited coupon prints, nor would copyright law allow a consumer to access unlimited copyrighted materials where the copyright owner has placed clear limits on access and distribution.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT
STOTTLEMIRE'S MOTION TO DISMISS                    - 7 -                    22675\1470554.1
USDC/NDC/SJ 5:07-CV-03457 HRL

"solely intended to prevent users from printing additional [copies of the same] coupons (Amicus, p.7:26), i.e., just to prevent "electronic reproduction;" (p.9:16-17), (2) that all coupons "at issue are fully accessible to any user the first time they are printed," (p.8:4) and (3) that Coupons does not design its security feature to prevent access to each identifiable coupon (p.8:20). In short, EFF's view is that Coupons' security measures are solely intended to prevent users from printing additional unauthorized copies of the exact same coupon. (Amicus, pp. 7, 9).

In fact, the SAC alleges that Coupons' software produces each time a "unique" coupon. Thus when a consumer at a uniquely identified computer downloads the security file from Coupons, the consumer is limited to printing two "unique" coupons of a particular type. SAC ¶¶16-17. This obviously makes sense since, as Stottlemire acknowledges in his motion, he is, and always was, aware that there is a "campaign limit" for any particular promotional coupon linked to a particular retail product, as well as a "consumer limit" (Stottlemire's Brief, p.3). A campaign limit only works if there is a limited total number of coupons for a particular promotion that Coupons' customer instructs it to make available to all consumers. (Each coupon in fact receives its own unique bar code, and contains other features that may differ, such as an expiration date and a time stamp).[6]

Thus in context, the SAC accurately put Stottlemire on notice that each time he was employing his circumvention software, he was not copying the same coupon, but was accessing anew a unique coupon. Stottlemire's circumvention method, therefore comes squarely within EFF's reading of section 1201(a).

---

[6] And so the SAC alleges in relevant part:

"15. . . . After the consumer receives the coupon file, a data stream containing the graphics and content of the coupon is sent directly to the consumer's printer.

16. The software underlying these online coupons contains built-in security measures to prevent consumers from printing more than the authorized number of copies of the coupons. The software limits the number of times that a coupon can be printed **and uniquely identifies each and every coupon printed**. Plaintiff assigns a unique identifier to the computer of each consumer who uses Plaintiff's software, and any time a consumer's computer seeks to have a coupon printed, the computer's unique identifier is sent to Plaintiff's server for verification.

17. Plaintiff's anti-copying restrictions are critical to the integrity and desirability of Plaintiff's technology. Plaintiff's ability to control electronic reproduction of **unique** coupons is crucial to Plaintiff's commercial success." (emphasis added).

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT
STOTTLEMIRE'S MOTION TO DISMISS                - 8 -                          22675\1470554.1
USDC/NDC/SJ 5:07-CV-03457 HRL

1    Further, before a consumer can access a coupon at all, Coupons' security features must be

2    on the consumer's computer. SAC ¶ 15. The security feature therefore acts as a key and is

3    necessary for each instance of access to a uniquely identified coupon. SAC ¶ 16. Coupons'

4    security feature serves as a limit on the number of original coupon prints that the consumer can

5    generate; once the consumer on the identified computer reaches that limit, Coupons' security

6    feature again serves to block access to any additional coupon prints by the consumer's computer.

7    SAC ¶¶ 13, 16.

8    This security feature therefore blocks access in two ways - one, because a consumer

9    cannot gain any access to the coupons without the security file in place, and two, because once

10   the print limit is reached, the consumer is again denied any and all access to further unique prints

11   of that coupon.[7] Obviously, this security feature is critical since Coupons' coupon-issuing

12   customers permit the Coupons system to print a limited total number of coupons consistent with

13   their advertising needs. As Stottlemire knows full well, to the extent he and his clients deceive

14   the system into printing unauthorized coupons from any one computer, they are reducing the

15   limited number of original coupons permitted by Coupons' coupon-issuing customers and which

16   other consumers playing by the rules would have otherwise been able to print.

17   In addition, trafficking in a device used to circumvent a single security feature can violate

18   both sections 1201(a) and (b) if the security feature serves both purposes. (We discuss section

19   1201(b) in further detail below.) For example, in *Ticketmaster LLC v. RMG Techs., Inc.*, 507 F.

20   Supp. 2d 1096 (C.D. Cal. 2007), Ticketmaster claimed that the defendants circumvented the

21   technological security measure Ticketmaster utilized to prevent purchasers from using automated

22   devices to purchase tickets over its website. *Id.* at 1102. Ticketmaster sought a preliminary

23   injunction based on five claims, including a violation of the DMCA. *Id.* at 1104. The court held

24   that Ticketmaster was likely to succeed on its DMCA claim under both 1201(a) and 1201(b)

25   because Ticketmaster's technological measure "both controls access to a protected work because

26   ---

27   [7] Although the SAC's allegations did not contain each of these details, they were not required to. "[A]ll the rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests.'" *Terarecon, Inc. v.*

28   *Fovia, Inc.*, 2006 U.S. Dist. Lexis 48833, *5 (N.D. Cal. 2006).

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT
STOTTLEMIRE'S MOTION TO DISMISS          - 9 -                    22675\1470554.1
USDC/NDC/SJ 5:07-CV-03457 HRL

1  a user cannot proceed to copyright-protected webpages without solving [the technological

2  measure], and protects rights, of a copyright owner because, by preventing automated access to

3  the ticket purchase webpage, [the technological measure] prevents users from copying those

4  pages." *Id*. at 1111-1112.

5          Similarly here, Coupons' technological measure prevents a consumer from accessing the

6  Coupons server to obtain any coupon prints until the security feature is in place on the

7  consumer's computer; the security feature then restricts the consumer to the set number of coupon

8  prints; and then, blocks the consumer from accessing any additional coupon prints once the

9  consumer reaches the print limit. SAC ¶¶ 13, 15-17. Additionally, as discussed above, if

10  consumers from different identified computers reach the total number of prints for a certain

11  coupon as permitted by Coupons' customer, the security feature blocks all access to that coupon

12  for any consumers who attempt to download coupons. Stottlemire's trafficking in software that

13  circumvents this security measure violates both section 1201(a) and 1201(b).

14          Coupons' allegations are therefore sufficient to support the cause of action under

15  section 1201(a), and are sufficient to put Stottlemire on notice of the claims against him.

16      **C.      Coupons Has Alleged Facts That, If Proved, Would Establish That
17              Stottlemire Has Violated 17 U.S.C. § 1201(b).**

18          Stottlemire's attack on Coupons' section 1201(b) claim is similarly without merit.

19  Section 1201(b)(1) provides that:

20                  No person shall manufacture, import, offer to the public,
                provide, or otherwise traffic in any technology, product, service,
21              device, component, or part thereof, that –

22                  (A) is primarily designed or produced for the purpose of
                circumventing protection afforded by a technological measure that
23              effectively protects a right of a copyright owner under this title in a
                work or a portion thereof;
24
                    (B) has only limited commercially significant purpose or
25              use other than to circumvent protection afforded by a technological
                measure that effectively protects a right of a copyright owner under
26              this title in a work or a portion thereof; or

27                  (C) is marketed by that person or another acting in concert
                with that person with that person's knowledge for use in
28              circumventing protection afforded by a technological measure that

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT
STOTTLEMIRE'S MOTION TO DISMISS           - 10 -                              22675\1470554.1
USDC/NDC/SJ 5:07-CV-03457 HRL

effectively protects a right of a copyright owner under this title in a work or a portion thereof.

The important difference between Sections 1201(a)(2) and 1201(b)(1) is that: "[A]lthough both subsections prohibit trafficking in a circumvention technology, the focus of subsection 1201(a)(2) is circumvention of technologies designed to *prevent access* to a work, and the focus of subsection 1201(b)(1) is on circumvention of technologies designed to *permit access* to a work but *prevent copying* of the work or some other act that infringes a copyright. *Universal City Studios, Inc., v. Corley*, 273 F.3d 429, 441 (2d Cir. 2001) (emphasis in original).

In *United States v. Elcom Ltd.*, 203 F. Supp. 2d 1111 (N.D. Cal. 2002), Judge Whyte considered motions to dismiss a criminal indictment brought under the DMCA. In *Elcom*, the defendant developed and sold a software program that allowed a user to remove certain use restrictions of an Adobe Acrobat eBook Reader, including restrictions imposed by the ebook publisher that determined whether a consumer could copy or print the book, or lend it to another computer. *Id*. at 1117-1118. The court determined that the DMCA provisions were not unconstitutionally vague, did not violate the First Amendment, and were within Congressional authority. *Id*. at 1125-1142.

In reaching its conclusion, the *Elcom* court provided a thorough analysis of section 1201(b)(1)(A). The court stated that the section is comprised of three parts: "1) trafficking in any technology, product, service, device, component, or part thereof; 2) that is primarily designed or produced for the purpose of circumventing protection afforded by a technological measure; and 3) a technological measure that effectively protects a right of a copyright owner under the copyright statute." *Id.* at 1123 (internal quotations omitted).

The court explained that the first element is all-encompassing and "includes any tool, no matter its form, that is primarily designed or produced to circumvent technological protection. In the second element, "the phrase 'circumvent protection afforded by a technological measure' is expressly defined in the statute to mean: 'avoiding, bypassing, removing, deactivating, or otherwise impairing a technological measure.' 17 U.S.C. § 1201(b)(2)(A)." *Id.* at 1123. As for the third element, "the statute provides that 'a technological measure "effectively protects a right

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT
STOTTLEMIRE'S MOTION TO DISMISS                    - 11 -                    22675\1470554.1
USDC/NDC/SJ 5:07-CV-03457 HRL

of a copyright owner under this title" if the measure, in the ordinary course of its operation, prevents, restricts, or otherwise limits the exercise of a right of a copyright owner under this title.' 17 U.S.C. § 1201(b)(2)(B)." The rights of a copyright owner include the exclusive rights to reproduce the copyrighted work in copies, prepare derivative works, distribute copies of the work, perform the work publicly, or display the work publicly. 17 U.S.C. § 106.

The *Elcom* court summarized:

> Taken in combination, section 1201(b) thus prohibits trafficking in any tool that avoids, bypasses, removes, deactivates, or otherwise impairs any technological measure that prevents, restricts, or otherwise limits the exercise of the right to reproduce the work, prepare derivative works, distribute copies of the work, perform the work publicly or by digital audio transmission, or display the work publicly. *In short, the statute bans trafficking in any device that bypasses or circumvents a restriction on copying or performing a work.*

*Elcom*, 203 F.Supp. 2d at 1124 (emphasis added).

Here, Coupons' SAC pleads the facts necessary to support a claim under section 1201(b). The SAC alleges that Stottlemire manufactured and offered to the public software and instructions (SAC ¶¶ 24-25, 27-29, 33-35, 37) in order to "remove the limitations placed by coupons.com software" and "beat" the technological measures put in place to limit the number of coupons printed. SAC ¶¶ 25-27. As discussed further below, Stottlemire was offering a product, a service as well as technology (or a "part," of these tools) to remove Coupons' limitations on identified computers. The SAC also alleges that the technological measures circumvented by Stottlemire ordinarily operated to authorize only a limited number of Coupons' copyrighted coupons to be printed on any one computer. SAC ¶¶ 12-18, 31. Thus, Stottlemire's software circumvented Coupons' security measures that served to protect Coupons' right as a copyright owner to limit or control distribution of its copyrighted coupons.

Despite Stottlemire's contentions to the contrary, Coupons does allege which technological measure was circumvented. Stottlemire Brief, pp. 9-11. The SAC specifically alleges that Stottlemire offered software and instructions to remove "the security features which prevent the unlimited printing of Plaintiff's coupons." SAC ¶ 24. These security features are

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT
STOTTLEMIRE'S MOTION TO DISMISS         - 12 -                      22675\1470554.1
USDC/NDC/SJ 5:07-CV-03457 HRL

1  explained (SAC ¶¶ 15-18) and these features effectively protect Coupons' rights under copyright

2  law to limit distribution of its copyrighted coupons.  SAC ¶¶ 12-18, 31.

3      Stottlemire's additional contention that Coupons failed to claim that printing unlimited

4  coupons was an unauthorized reproduction is without merit.  The SAC alleges that printing

5  unlimited numbers of coupons was not allowed, and that consumers were informed of the limits

6  in place.  SAC ¶¶ 13, 16, 17, 18, 20-21, 30-32.  Further, Stottlemire's argument that the notation

7  "void if reproduced" that exists on certain coupons implies permission to reproduce that coupon,

8  but then voids the face value is not only entirely without merit, but is irrelevant at this stage of the

9  proceedings.[8]

10 **D.    There is No Basis to Narrow Any Claims To Eliminate Reliance On**

11 **Stottlemire's Circumvention Instructions And Comments.**

12     Sections 1201(a)(2) and (b)(1) both state that "No person shall manufacture, import, offer

13 to the public, provide, or otherwise traffic in any technology, product, service, device,

14 component, or part thereof."  It appears undisputed that Stottlemire's alleged creation and

15 offering of the software file ("Circumvention Software") fits within this definition, as software is

16 clearly a technology.  *See Universal City Studios v. Reimerdes*, 111 F. Supp. 2d 294, 317

17 (S.D.N.Y. 2000) (finding a computer program "unquestionably is 'technology' within the

18 meaning of the statute").

19     The EFF, however, asserts that the DMCA causes of action "should be narrowed to

20 eliminate any reliance on [Stottlemire's] comments," since the statute does not reach Stottlemire's

21 instructions and feedback on how to circumvent Coupons security feature.  Amicus Brief p. 11.

22 The EFF specifically asserts that Stottlemire's instructions constitute protected free speech.  They

23 are wrong and without applicable authority for their startling proposition.  As discussed below,

24 Stottlemire's actions violate the statute; by providing instructions and troubleshooting feedback,

25 Stottlemire provided and marketed a service to circumvent Coupons' security features.  Further,

26

---

[8] In fact, this argument is entirely irrelevant - because each coupon is a unique work with a unique

27 bar code, such a notation, if it appears, would only apply to reproduction of that specific instance

28 of the copyrighted work, and not another similar, but distinct coupon of its type.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT
STOTTLEMIRE'S MOTION TO DISMISS         - 13 -                    22675\1470554.1
USDC/NDC/SJ 5:07-CV-03457 HRL

1  Stottlemire's comments proudly announce his objective.  Given these facts, the EFF has no basis

2  to suggest diluting Coupons claim by giving Stottlemire a First Amendment refuge.

3      That prior DMCA decisions happened to have addressed software or tools that courts

4  found to be "technology," "products," or "devices," does not cabin the statute to just hardware or

5  software.  There is no logic, authority, or policy for such a limitation, which is why EFF does not

6  point to any such support.  Further, the plain meaning of the term "service," by itself

7  demonstrates that Congress did not intend to adopt EFF's reading.  Indeed, there is no reason to

8  believe that Congress intended to give entrepreneurs like Stottlemire a free pass for providing

9  instructions and follow up troubleshooting suggestions to circumvent Coupons' security features.

10  SAC ¶¶ 24-31.  If that were the case, the Stottlemires of the world would sidestep the statute by

11  issuing instructions by emails for violating the statute and frustrating Congress' objective to stop

12  this behavior.  That cannot be the law.

13      The EFF's efforts to cloak Stottlemire's instructions to steal under the First Amendment

14  also falls flat.  In *Universal City Studios, Inc., v. Corley*, 273 F.3d 429 (2d Cir. 2001), the court

15  considered whether an injunction barring the defendants from posting a decryption program or

16  providing hyperlinks to other sites that contained the decryption program was constitutional.  *Id*.

17  at 434-435.  The court considered computer code and computer program's status as speech,

18  analyzed the scope of First Amendment protection for computer code and decryption code, and

19  concluded that both the prohibitions on posting the program and linking to the program were not

20  unconstitutional restraints of speech.  *Id*. at 455-456, 458.

21      Also, *Corley* specifically cited holdings that the "First Amendment does not protect

22  instructions for violating tax law" and the "First Amendment does not protect instructions for

23  building an explosive device."  *Id*. at 446-447, citing *United States v. Raymond*, 228 F.3d 804,

24  815 (7th Cir. 2000) and *United States v. Featherston*, 461 F.2d 1119, 1122-1123 (5th Cir. 1972).

25  Therefore, although Stottlemire's instructions and feedback may constitute speech, the First

26  Amendment does not give Stottlemire refuge where, as alleged, Stottlemire counseled others on

27  how to violate the law.  *See Corley*, at 447, fns 17, 18.

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT
STOTTLEMIRE'S MOTION TO DISMISS          - 14 -                    22675\1470554.1
USDC/NDC/SJ 5:07-CV-03457 HRL

1    EFF's reliance on section 1201(c)(4) is also misplaced. *Universal City Studios, Inc. v.*

2    *Corley*, 273 F.3d 429, 444 (2d Cir. 2001). Section 1201(c)(4) provides that "[n]othing in this

3    section shall enlarge or diminish any rights of free speech or the press for activities using

4    consumer electronics, telecommunications, or computing products." *Corley* rejected a party's

5    suggestion that the DMCA be interpreted narrowly based on section 1201(c)(4): "This language is

6    clearly precatory: Congress could not 'diminish' constitutional rights of free speech even if it

7    wished to, and the fact that Congress also expressed a reluctance to 'enlarge' those rights cuts

8    against the [party's] effort to infer a narrowing construction of the Act from this provision." *Id.* at

9    444. Section 1201(c)(4) therefore does not limit the scope of the terms "service" or "technology"

10   as used in subsections (a)(2) or (b)(1).

11   Finally, Stottlemire's instructions and comments go directly to his intent under the statute

12   and delineate his purpose in designing and distributing his Circumvention Software.[9] Stottlemire

13   announces that the information and software he provided "beat the limitation imposed" by

14   Coupons' software and that he would "gladly send it" to anyone who requested it. SAC ¶¶ 25,

15   27.

16   **E.      Coupons Has Alleged Facts That, If Proved, Would Establish That**
17   **Stottlemire Has Violated State Law.**

18   **1.      Coupons has alleged facts sufficient to support its Unlawful Business**
     **Practices cause of action under Business and Professions Code,**
19   **section 17200 et seq.**

20   Stottlemire argues that Coupons' claim for unlawful business practices is insufficient

21   because Coupons' failed to allege that it suffered injury in fact, or lost money or property as a

22   result of Stottlemire's actions. The SAC, however, alleges that Stottlemire harmed Coupons

23   because, "Security breaches can undermine confidence in Plaintiff's technology, lead to

24   unfavorable publicity and lost business, and require Plaintiff to undertake expensive and time-

25   consuming corrective measures." SAC ¶ 38. In fact, at the time Coupons made these allegations,

26

27   [9] Section 1201(a)(2) and (b)(1) provide that no person shall traffic in any technology, product, or
     service that "is primarily designed or produced for the purpose of circumventing" a technological
28   measure, or protection afforded by a technological measure.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT
STOTTLEMIRE'S MOTION TO DISMISS          - 15 -                          22675\1470554.1
USDC/NDC/SJ 5:07-CV-03457 HRL

1    it was spending significant time and money updating its print limitation software in order to

2    prevent Stottlemire and others who made use of Stottlemire's software from circumventing the

3    print limitations and accessing unlimited numbers of its coupons. The allegations are sufficient to

4    put Stottlemire on notice of the type of loss it suffered.

5        And this loss is cognizable under Business and Professions Code section 17200 et seq.

6    which prohibits unfair competition, including unlawful, unfair, and fraudulent business acts. The

7    UCL covers a wide range of conduct. "It embraces anything that can properly be called a

8    business practice and that at the same time is forbidden by law." *Korea Supply Co. v. Lockheed*

9    *Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003) (internal citation omitted).

10       Also contrary to Stottlemire's assertions, the SAC discusses Stottlemire's operation of his

11   notorious Coupon Queen site on which he advertises coupons for sale in exchange for a handling

12   fee. SAC ¶ 23. Here Stottlemire posted his software and instructions on how to beat Coupons'

13   print limitations. SAC ¶¶ 27-29, 33-34, 37. That is enough.[10]

14
15
         **2.     Coupons has alleged facts sufficient to support its Common Law
                  Unfair Competition cause of action.**

16       EFF and Stottlemire (for the first time) wrongly attacks the sufficiency of Plaintiff's

17   common law claims. They both avoid the alleged facts of Stottlemire's repeated violations of

18   Coupons' property rights and how the courts have interpreted these basic property doctrines in the

19   internet world.

20       The elements of the tort of unfair competition under California law are: "(1) that [a

21   plaintiff] had invested substantial time, skill or money in developing its property; (2) that [a

22   defendant] appropriated and used [plaintiff's] property at little or no cost; (3) that [defendant's]

23   appropriation and use of [plaintiff's] property was without the authorization or consent of

24   ─────────────
     [10] In *Pines v. Tomson*, 160 Cal. App. 3d 370, 375, 386 (1984), the court determined that the
25   activities of a man and his foundation revolving around the publication of a Christian business
     telephone directory fell within the meaning of a "business practice" as the term is used in
26   Business and Professions Code section 17200 et seq. The court utilized definitions of "business"
     from case law interpreting the Unruh Civil Rights Act, which stated that "the word 'business'
27   embraces everything about which one can be employed, and it is often synonymous with 'calling,
     occupation, or trade, engaged in for the purpose of making a livelihood or gain'" and includes
28   commercial and noncommercial entities. *Id.* at 385-386.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT
STOTTLEMIRE'S MOTION TO DISMISS                    - 16 -                      22675\1470554.1
USDC/NDC/SJ 5:07-CV-03457 HRL

1    [plaintiff]; and (4) that [plaintiff] could establish that it has been injured by [defendant's]

2    conduct." *City Solutions, Inc. v. Clear Channel Commc'ns, Inc.,* 365 F.3d 835, 842 (9th Cir.

3    2004).

4        Here, Coupons expended significant time and money in developing its online Coupons

5    system and the associated coupon printing system.  SAC ¶ 38.  Stottlemire promoted his

6    circumvention scheme and software over his Coupon Queen online forum.  SAC ¶¶ 23-31, 33-37.

7    Coupons alleged that Stottlemire injured it, because its print restrictions are critical to the

8    integrity and desirability of Coupons' technology.  Stottlemire's caper to misappropriate coupons

9    for himself, his customers and his acolytes, reduced the number of coupons available to legitimate

10   coupon collectors, undermined confidence in Coupons' technology, and also required Coupons to

11   undertake expensive corrective measures.  SAC ¶¶ 17, 38.  The allegations of the SAC are

12   sufficient to put Stottlemire on notice of the basis of his potential liability.

13                **3.       Coupons has alleged facts sufficient to support its Trespass to Chattel
                            and Conversion causes of action.**
14

15       Stottlemire also challenges for the first time Plaintiff's conversion and trespass claims.  To

16   begin with, Stottlemire and EFF avoid a central point of the Complaint.  Stottlemire is printing

17   and taking coupons to which he and his clients are not entitled.  For every coupon that Stottlemire

18   or consumers using his software take, Coupons has one less coupon available for other

19   consumers.  There is no practical difference between Stottlemire's computer caper and a trespass

20   into Coupons' offices to steal a box of nonreplaceable coupons about to be mailed to consumers,

21   who properly ask for them by following Coupons' rules.  That Stottlemire and his clients have to

22   jimmy the key on Coupons' security feature using Stottlemire's software and instructions is the

23   same as illegally making a key to Coupons' offices to steal already printed coupons.

24       Moreover, the fact that Stottlemire's conduct takes place in the internet world has made it

25   even more objectionable.  As the Coupon Queen, he has multiplied the number of trespassers and

26   eliminated their risk, thus making Coupons more vulnerable to more likely illegal conduct.[11]

27   ───────────────
     [11] In *Corley*, the court discussed an analogy between a newspaper's and bookstores' actions on
28   the one hand, and those of a website on the other; the court commented that the digital world
     presents a far greater problem in certain ways because materials posted on a website "are

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT
STOTTLEMIRE'S MOTION TO DISMISS                    - 17 -                          22675\1470554.1
USDC/NDC/SJ 5:07-CV-03457 HRL

**a.  Coupons' SAC alleges facts to support a conversion cause of action.**

Stottlemire's new variation on an old theme meets the requirements of a conversion claim, which at core, "'is the wrongful exercise of dominion over the property of another.'" *Virtanen v. O'Connell*, 140 Cal.App.4th 688, 717 (2006).  To establish conversion, "a plaintiff must show 'ownership or right to possession of property, wrongful disposition of the property right and damages.'"  *Kremen v. Cohen*, 337 F.3d 1024, 1029 (9th Cir. 2003).  Surely Stottlemire's conduct and intentions as alleged in the complaint amount to the wrongful and unauthorized disposition of Coupons' right in the coupons which Coupons' customers entrust to Coupons for distribution to consumers.

And there is equally no doubt that the coupons which Stottlemire is unlawfully taking is Coupons' property, irrespective of whether he effects the theft by his program and instructions or by unlawfully entering Coupons' offices.  "Property is a broad concept that includes 'every intangible benefit and prerogative susceptible of possession or disposition.'"  *Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003).  In order to determine if a property right exists, "[f]irst, there must an interest capable of precise definition; second, it must be capable of exclusive possession or control; and third, the putative owner must have established a legitimate claim to exclusivity."  *Id*.  Although tort law once drew a distinction between tangible and intangible property, California has discarded this rigid limitation and, "California does not follow the *Restatement's* strict requirement that some document must actually represent the owner's intangible property right.  On the contrary, courts routinely apply the tort to intangibles without inquiring whether they are merged in a document. . . ."  *Id*. at 1030-1033.

Here, Coupons has a property right in all uniquely identified coupons available to be printed by a consumer, or in this case printed illegally by Stottlemire or a consumer, and the value those coupons represent.  Coupons' advertising customers charge Coupons with following the per-consumer coupon limit set by the advertising customer.  Each unique coupon, whether printed

---

available for instantaneous worldwide distribution before any preventative measures can be effectively taken.  273 F.3d 429, 457.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT
STOTTLEMIRE'S MOTION TO DISMISS                - 18 -                         22675\1470554.1
USDC/NDC/SJ 5:07-CV-03457 HRL

1    or still on Coupons system, has value realized when redeemed by the consumer at Coupons'

2    customer's store.  Coupons' customers therefore entrust Coupons with distributing this limited

3    number of coupons through Coupons' coupon printing system.  SAC ¶¶ 9-11, 13, 15, 18.

4         Stottlemire wrongfully converted Coupons' property by accessing and removing coupons

5    that Coupons and its product manufacturer customers reserved for other consumers.  Indeed, since

6    the purloined coupons are akin to script redeemable in discounts from Coupons' customers,

7    Stottlemire is effectively stealing the value of these unauthorized coupons, and taking the first

8    step in converting property belonging to Coupons' advertising customers, as well as to other

9    consumers who would otherwise have had legitimate access to the coupons from Coupons'

10   system.

11        Thus, EFF's claim that there is no property in this case that would support a conversion

12   claim is without merit.  Amicus Brief, p. 14.  The facts alleged in the SAC support the claim that

13   Stottlemire converted Coupons' unique coupons and the value in the products they represented.

14   EFF, of all entities, should be vigilant about the need for applying such common law remedies to

15   internet theft of property.

16              b.    **Coupons' SAC alleges facts sufficient to support a trespass
                      cause of action.**
17

18        Coupons has also stated a trespass claim: Stottlemire wrongfully intermeddled with

19   Coupons' computer system and server to obtain unauthorized access to coupons.

20        "Trespass to chattel . . . lies where an intentional interference with the possession of

21   personal property has proximately caused injury."  *Thrifty-Tel, Inc. v. Bezenek*, 46 Cal. App. 4th

22   1559, 1566 (1996).  "Where the conduct complained of does not amount to a substantial

23   interference with possession or the right thereto, but consists of intermeddling with or use of . . .

24   the personal property, the owner has a cause of action for trespass to chattel, but not for

25   conversion."  *Id*. at 1567 (internal citations omitted).  In *Thrifty-Tel, Inc*., the court found the

26   evidence supported a finding of trespass where two boys employed computer technology to crack

27   a telephone long distance carrier's access and authorization codes to make long distance phone

28   calls without paying for them.  *Id*. at 1563, 1566.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT
STOTTLEMIRE'S MOTION TO DISMISS                    - 19 -                    22675\1470554.1
USDC/NDC/SJ 5:07-CV-03457 HRL

Judge Whyte applied *Thrifty-Tel, Inc*. in an improper computer access case, noting that, "In order to prevail on a claim for trespass based on accessing a computer system, the plaintiff must establish:  1) defendant intentionally and without authorization interfered with plaintiff's possessory interest in the computer system; and 2) defendant's unauthorized use proximately resulted in damage to plaintiff."  *eBay, Inc. v. Bidder's Edge, Inc*., 100 F. Supp. 2d 1058, 1069-1070 (N.D. Cal. 2000).  There, eBay successfully moved to enjoin defendant from accessing its system by use of an automated querying program.  *Id*. at 1060, 1070.  The court found that the electronic signals sent by the defendant to retrieve information from eBay's computer system were sufficiently tangible to support a trespass cause of action under both prongs of the trespass claim.  *Id*. at 1069, 1070.

Analyzing the first prong, the court explained that defendant's use of the eBay system was intentional and unauthorized despite the site's public access; eBay's servers were private property to which eBay granted the public only conditional access.  eBay did not generally permit the type of defendant's automated access, and so notified automated visitors.  *Id*. at 1070.  The court noted that defendant's web crawlers were authorized to make individual queries of eBay's system, but they later exceeded the scope of consent when they began making repeated, automated queries.  *Id*.  The court clarified that "California does recognize a trespass claim where the defendant exceeds the scope of the consent."  The court concluded that the defendant's activities were sufficiently outside of the scope of the use permitted by eBay and therefore were unauthorized for the purposes of establishing a trespass.  *Id*.

Regarding the second trespass prong requiring damage, "[a] trespasser is liable when the trespass diminishes the condition, quality or value of personal property."  *Id*. at 1071.  "The quality or value of personal property may be 'diminished even though it is not physically damaged by defendant's conduct.'"  *Id*.  The court found that eBay was likely to demonstrate that the defendant's activities diminished the quality or value of eBay's computer systems because the defendant was using eBay's server and capacity to search, and even if only a small amount was used, the defendant was depriving eBay of the ability to use that portion of its system.  *Id*.  In

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT
STOTTLEMIRE'S MOTION TO DISMISS                     - 20 -                            22675\1470554.1
USDC/NDC/SJ 5:07-CV-03457 HRL

1    addition, if widely replicated, the defendant's conduct would impair the functioning of eBay's

2    system. *Id*. at 1071-1072.

3         Similarly, Stottlemire has trespassed as alleged in the SAC. When a consumer first makes

4    a request to access and print one of Coupons' coupons, Coupons' system sends to the consumer's

5    computer a file which permits the consumer's computer (and printer) to access the coupon from

6    Coupon's server. SAC ¶ 15. This file serves as an access control; a consumer cannot interact

7    with Coupons' system to print a coupon until Coupons' server communicates with the file now on

8    the consumer's computer, which file verifies to Coupons' system that the predetermined number

9    of coupon prints have not yet been generated.[12] SAC ¶ 16.

10        Defendant Stottlemire wrongfully intermeddled with Coupons' system because his

11   software and method tricked Coupons' system to give his identified computer a new computer

12   identification, which in turn allowed him to get new coupons, even though he reached his

13   individual print limit. SAC ¶ 26, 31, 35. Stottlemire, like all consumers, of course knew that he

14   was beyond his limit since Coupons sent him an on screen message that he reached his print limit.

15   SAC ¶¶ 20, 21, 30. Stottlemire intermeddled by circumventing Coupons' security file to obtain

16   the additional unauthorized file from Coupons' system, exceeding the scope of consent granted

17   by Coupons. SAC ¶¶ 26, 35-36. Stottlemire's alleged conduct therefore meets the first prong of

18   a trespass claim because it was intentional and unauthorized.

19        EFF sidesteps this point when it argues that Stottlemire did not meddle with Coupons'

20   system because it was "Coupons that sends files from its server to Stottlemire's computer. . . ."

21   (Amicus, p.15). EFF would have this Court simply ignore that Coupons would send nothing to

22   Stottlemire without Stottlemire's circumvention program tricking Coupons system. As with the

23

---

24   [12] As indicated above, (p. 2, fn 1) there are two levels of print limits in effect in Coupons' system
     which serve to determine how many unique coupons can be generated, a device limit and a
25   network limit. First, each coupon file that is sent to a particular computer (device) will allow that
     computer a certain number of prints, for example, two. When this limit is reached, that particular
26   computer will no longer be granted access to any more prints of the particular coupon. Second,
     there is also a predetermined network limit on the number of total prints allowed of any particular
27   coupon across the entire coupon printing community. For example, Coupons' coupon-issuing
     customer may want no more than 10,000 coupons generated as part of a promotional campaign;
28   once this limit is reached, the Coupons system will not print any more of that coupon.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT
STOTTLEMIRE'S MOTION TO DISMISS          - 21 -                                    22675\1470554.1
USDC/NDC/SJ 5:07-CV-03457 HRL

tango, Coupons' system is not self executing. Thus, to obtain the coupons, Stottlemire had to touch Coupons' servers with a request that contained intentionally falsified computer identification.

Stottlemire's conduct also violated the second alleged prong of the trespass claim because his actions diminished the quality and value of Coupons' coupon printing system. Print limits are critical to the integrity and value of Coupons' system to its customers. SAC ¶ 17. Stottlemire's actions to gain unauthorized access to Coupons' server and coupon print files devalued Coupons' system. Stottlemire consumed print files, server interactions, and coupon prints that would have otherwise been allocated to other consumers in the online coupon community properly accessing Coupons' system. *See e.g.*, *CompuServe Inc. v. Cyber Promotions*, 962 F. Supp. 1015, 1022 (S.D. Ohio 1997) ("any value [plaintiff] realizes from its computer equipment is wholly derived from the extent to which that equipment can serve its subscriber base.").

EFF also wrongly relies on *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342 (2003) to suggest that Stottlemire's meddling was trivial. (Amicus, p. 15). In *Hamidi*, defendant sent emails criticizing Intel to numerous current employees on Intel's email system. *Id*. at 1346. The defendant there breached no computer security barriers in order to communicate with the Intel employees, and he caused no damage or functional disruption to the computers or system; rather, Intel claimed that the content of the messages caused discussion and some disruption among employees and managers. *Id*. Reviewing Intel's claim of trespass, the Court stated that the tort of trespass to chattels does not encompass "an electronic communication that neither damages the recipient computer system nor impairs its functioning. Such an electronic communication does not constitute an actionable trespass to personal property, i.e., the computer system, because it does not interfere with the possessor's use or possession of, or any other legally protected interest in, the personal property itself. *Id*. at 1347. *Hamidi* distinguished *eBay* and others like it because in those cases, defendant placed some burden on the system or computers themselves, or use of the system actually did, or threatened to interfere with the intended functioning of the system. *Id*. at 1354-1357. The *Intel* court confirmed that "intermeddling is actionable only if 'the chattel is impaired as to its condition, quality, or value.'" *Id*. at 1357. Intel's claim of impairment based on

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT
STOTTLEMIRE'S MOTION TO DISMISS                - 22 -                          22675\1470554.1
USDC/NDC/SJ 5:07-CV-03457 HRL

the content of the emails, the reading of which distracted its workers, therefore failed because the alleged harm was to the employees' time, but not the computer system itself. *Id*. at 1358-1359.

In contrast, Coupons' claim of trespass is based upon the damage to the quality and value of Coupons' system, specifically the loss of its integrity and security resulting from Stottlemire's Circumvention Method and Software. SAC ¶¶ 26, 35. Defendant Stottlemire knew then, and now from the SAC, that he was illegally purloining coupons, leaving Coupons' system with fewer accessible coupons files for other consumers. SAC ¶¶ 15, 16. The SAC adequately notifies Stottlemire that his wrongful access to, and interaction with, Coupons' server and system harmed the value of the system itself, which relies on its ability to control and limit coupon prints. SAC ¶¶ 10, 13, 17, 38.

### c. Coupons' trespass and conversion claims are not preempted by the Copyright Act

EFF's preemption premise is wrong. As demonstrated above, not all tangible property supporting the SAC's trespass and conversion claim belongs to Stottlemire, as EFF presumes. SAC ¶¶ 14-17. Thus EFF relies on misplaced authorities and a wrong reading of the SAC, when it argues that Coupons has not alleged violation of any rights other than those protected by the Copyright Act (Amicus, p.16-17).

Coupons' common law claims are not preempted because they assert rights that are not just "equivalent," to rights arising from the Copyright Act.[13] In *eBay*, *supra*, after finding that plaintiff was likely to prevail on a trespass claim (as discussed above), the court also concluded the trespass cause of action was not preempted by the Copyright Act. *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1072 (N.D. Cal. 2000). The court noted that "eBay asserts a right not to have [the defendant] use its computer systems without authorization. The right to exclude others from using physical personal property is not equivalent to any rights protected by

---

[13] "A state law cause of action is preempted by the Copyright Act if, (1) the rights asserted under state law are 'equivalent' to those protected by the Copyright Act, and (2) the work involved falls within the 'subject matter' of the Copyright Act as set forth in 17 U.S.C. §§ 102 and 103." *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1072 (N.D. Cal. 2000). In order not to be equivalent, the right under state law must have an extra element that changes the nature of the action so that it is qualitatively different from a copyright infringement claim." *Id.*

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT
STOTTLEMIRE'S MOTION TO DISMISS                    - 23 -                    22675\1470554.1
USDC/NDC/SJ 5:07-CV-03457 HRL

copyright and therefore constitutes an extra element that makes trespass qualitatively different from a copyright infringement claim." *Id.* Here, Coupons asserts its right not to have Stottlemire continue to engage in unauthorized interactions with its coupon printing system, and not to continue to obtain unauthorized coupon prints. The trespass claim is not preempted.

Similarly, in *Terarecon, Inc. v. Fovia, Inc.*, 2006 U.S. Dist. Lexis 48833, *5 (N.D. Cal. 2006), the conversion claim encompassed not only copyrighted computer code but also conversion of "business plans and customer information, materials that are outside the scope of the Copyright Act." The court found that plaintiff has additional elements, which ended defendant's preemption argument. *Id.* Here, Coupons has alleged more than just Stottlemire unlawfully accessing its copyrighted coupons. In addition to wrongfully converting the copyrighted form of the coupon itself, he also: (1) converted each coupon's value as discount script for a particular product; and (2) interfered with Coupons computer system as discussed above. Coupons' right to stop Stottlemire's conversion and interference with Coupons' computer system, and the value of that system, falls outside the scope of the Copyright Act, and extinguishes EFF's preemption argument.

## V.   <u>CONCLUSION</u>

For the reasons stated above, Coupons respectfully requests that the Court deny Defendant Stottlemire's motion to dismiss.


Dated: April 4, 2008                          FARELLA BRAUN & MARTEL LLP


                                              By:  /s/ Neil A. Goteiner
                                                    Neil A. Goteiner

                                              Attorneys for Plaintiff
                                              COUPONS, INC.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT
STOTTLEMIRE'S MOTION TO DISMISS                    - 24 -                    22675\1470554.1
USDC/NDC/SJ 5:07-CV-03457 HRL