United States District Court
For the Northern District of California

* E-filed 07/02/08 *

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

COUPONS, INC.,

    Plaintiff,

v.

JOHN STOTTLEMIRE,

    Defendant.

Case No. CV 07-03457 HRL

**ORDER ON DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT AND DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S SUPPLEMENTAL BRIEF**

Re: Docket Nos. 49 & 79

### I.  INTRODUCTION

On behalf of its clients (usually consumer products companies), Coupons, Inc. ("Coupons") offers online, printable coupons to consumers. Consumers may print the coupons (either from the client's or Coupons' website) once they install plaintiff's software. Although the details of the installation are unclear, it appears that, when the coupon printing software is downloaded, plaintiff quietly places a registry key file on the user's personal computer. This registry key essentially acts as a "counter," limiting the number of times each coupon can be printed on that computer (typically, two prints per coupon).

Plaintiff generally alleges that defendant (1) discovered how to remove the "counter," (2) created a computer program which automates its removal, and (3) provided the program to others. Coupons says that this program permitted "users to access an unlimited number of

coupons from the same computer [up to the "campaign limit" established by Coupons' advertising clients], despite the fact that plaintiff's technological measures would only have authorized a certain, limited number of coupons per computer." Second Amended Complaint ("SAC") ¶ 31. Because plaintiff claims that its coupons are subject to copyright protection, it alleges that defendant's actions violate 17 U.S.C. §1201(a) and §1201(b) of the Digital Millennium Copyright Act ("DMCA").[1] Plaintiff also asserts related state law claims.

*Pro se* defendant John Stottlemire previously moved to dismiss the complaint. With the exception of one claim (for which the motion was granted with leave to amend),[2] the motion was denied. Plaintiff then filed its SAC, and Stottlemire again moved to dismiss. Having considered the papers submitted by the parties and by *amicus curiae* Electronic Frontier Foundation ("EFF")[3] and the arguments of counsel and EFF, the court orders as follows:

## II. LEGAL STANDARD

A motion to dismiss under FED. R. CIV. P. 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Business v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based on either the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). Hence, the issue here is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). In considering such a motion, all material factual allegations should be accepted as true and construed "in the light most favorable to the nonmoving party." *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).

---

[1] Unless specified, statutory references are to Title 17 of United States Code.

[2] The First Amended Complaint did not sufficiently allege "which actions by defendant were unauthorized, nor [did] it explain how a consumer would come to know particular actions were or were not permitted." [Docket No. 39].

[3] *See* orders re: amicus participation [Docket Nos. 59, 60]. The EFF is partnered with the Samuelson Law, Technology & Public Policy Clinic at the U.C. Berkeley School of Law.

2

The Federal Rules require only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). This was recently interpreted to mean that the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, ---- - ----, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted).[4] Therefore, the complaint must contain more than mere conclusions of law. *Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). Nevertheless, "heightened fact pleading of specifics" is not required to survive a motion to dismiss. *Bell Atlantic Corp.*, 127 S.Ct. at 1973-74. Rather, the complaint need only "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus*, --- U.S. ----, ----, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

### III. DISCUSSION

#### A. FIRST AND SECOND "CAUSES OF ACTION"

Coupons alleges the defendant violated both § 1201(a) and § 1201(b). *See* SAC ¶¶ 39-48. The enactment of § 1201(a)(1) and (2) and § 1201(b) created three new prohibitions on anti-circumvention.

> The first two provisions target circumvention of technological measures that effectively control *access* to a copyrighted work; the third targets circumvention of technological measures that impose limitations on the *use* of protected works.

*U.S. v. Elcom Ltd.*, 203 F.Supp.2d 1111, 1119-20 (N.D.Cal. 2002) (emphasis in original).

##### 1. Impermissible Blurring of § 1201(a) and § 1201(b)

The SAC alleges that Coupons' security products "prevent unauthorized *copying* of its coupons." (SAC ¶ 13, emphasis added). The word "copy" is used throughout the SAC. (*See e.g.,* ¶ 16 (noting the security measures "prevent consumers from printing more than the authorized number of copies of the coupons."); *also see*, ¶ 17 (referring to Coupons' "anti-copying restrictions"). Based on this, and because Coupons consumers have access to coupons (typically two per computer), EFF says that the allegations pertain only to §1201(b)

---

[4] This decision "retires" the oft-quoted language from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See, Bell Atlantic Corp.*, 127 S.Ct. at 1968-69.

3

(the provision dealing with use of protected works, i.e., "rights controls") and not to §1201(a) (the provision addressing "access controls").

Plaintiff responds that these facts also allow for claims under both §1201(a) and §1201(b). *See Ticketmaster LLC v. RMG Techs., Inc.*, 507 F.Supp. 2d 1096 (C.D. Cal. 2007) (finding violations under both theories possible given the technological measures in place).[5] It qualifies the SAC references to "copying" by explaining that what it actually meant was that the circumvention method allowed users to access more than the "consumer limit" for each unique coupon. Coupons says that each coupon is unique because it has a bar code and date stamp. It claims that, because each is "unique" in this way, each is a separate copyrightable work. Coupons concludes that Stottlemire's action violated §1201(a) by allowing unauthorized access to each "copyrighted" individual coupon (beyond the two coupon per computer authorization limit). The argument does not end there, however. Despite the characterization of each coupon as a "unique" work, Coupons asserts that it still has a claim under §1201(b) because the act of printing the coupons constitutes unauthorized copying or reproduction.

These concepts seem to be logically inconsistent and, when asserted together, do appear to blur the carefully constructed distinction between "access controls" and "rights controls."[6] If the court accepts Coupons' argument that each coupon is "unique," then can there be a claim of improper copying under the SAC? On the other hand, if the coupons are not unique, then the

---

[5] In that case, Ticketmaster's theory under §1201(a) was based on a security measure which was designed to distinguish between human users and computer programs. That measure prevented automated access for ticket purchasing. *Id.* at 1102-03. The theory asserted under §1201(b) involved the copying of the webpage that occurred when users viewed the website. To visit the site, Ticketmaster consumers were required to agree to the terms of use which prohibited commercial use, the use of automatic devices, and made other restrictions on viewing the pages and the purchasing of tickets. *Id.* Thus, if customers complied with the terms of use, customers were authorized to "view-and thereby copy-pages of the website." *Id.* at 1106-08. Thus, that case involved a nonexclusive license to consumers who complied with the terms of use to copy pages from the website. There are no similar allegations in the instant action.

[6] The DMCA's section on rights controls applies only to the distribution of circumvention tools, and, unlike the section on access controls, does not apply to individual acts of circumvention. This distinction leaves room for individual fair uses, adaptations for the blind, library research, and the other statutory exceptions to copyright.

4

allegations against Stottlemire appear to fall within the "rights controls" (i.e., permitting users to print more copies of coupons than were authorized by Plaintiff).

Furthermore, the court is not yet convinced that the addition of a bar code or other functional device on the coupon qualifies it as a unique copyrighted work.[7] Given these arguments, it appears this is an issue which is more appropriately resolved during the later stages of the case. At any rate, if Coupons intends to make this argument, then it needs to actually allege it in the complaint. The singular reference to "unique coupons" is not sufficient to put the defendant on notice of the claims against him. Plaintiff needs to clarify which theory it is pursuing (the "unique" coupon theory or the "general" coupon theory).

As the SAC currently stands, the only viable asserted claim is under §1201(b) "rights controls," i.e. allowing people to print more than the authorized number of copies. If Coupons wishes to assert a claim under the newly argued §1201(a) "unique coupons" / "access controls" theory, it may do so in the amended complaint. Accordingly the First Cause of Action is DISMISSED WITH LEAVE TO AMEND. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (leave to amend should be granted unless the court "determines that the pleading could not possibly be cured by the allegation of other facts.") (citations omitted); also see Fed. R. Civ. P. 15(a). Furthermore, Plaintiff, if it elects to do so, may amend its Second Cause of Action.

2. Defendant's other arguments

With respect to the first cause of action, defendant says that plaintiff has not withheld the right to alter or remove Windows registry keys and files on computers owned by consumers

---

[7] In court-requested supplemental briefing, Plaintiff says that the bar code is sufficient to make each coupon a derivative work. *Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1218 (9th Cir. 1997). Coupons interprets *Genesis* to mean that functional additions to a work are sufficient for derivative works, so long as such additions are not trivial. EFF says that a bar code does not overcome the *Genesis* triviality requirement because it does not possess the minimal degree of creativity necessary for copyright. *Feist Publications v. Rural Telephone Co.*, 499 U.S. 340 (1991).
Defendant has moved to strike this supplemental letter brief because he believes it goes beyond the scope of the court's request for citations to authority supporting Coupons' argument that a bar code is sufficient to create a derivative work. The motion to strike is DENIED.

5

and fails to allege that removal of these registry keys and files is unauthorized. (Indeed, plaintiff apparently offered the coupons to the public for some period of time without requiring a licensing agreement.) On the second cause of action, defendant says the message on the coupons "void if reproduced" does not prohibit the copying of coupons. In other words, Stottlemire argues that Coupons has given consumers an implied license to reproduce the coupon. No authority is cited for the argument. Because these arguments involve factual issues, they are more appropriate for a motion for summary judgment or trial. On these arguments the motion to dismiss is DENIED.

### 3. Circumvention and First Amendment Protected-Speech

The SAC refers to certain communications made by defendant over the Internet. *See e.g.* SAC ¶¶ 24-25, 37. The EFF is concerned that plaintiff has asserted DMCA claims based purely on defendant's speech. It appears the question of whether a claim under the DMCA may predicate liability solely on defendant's speech has not been squarely addressed by a court. However, EFF points to language in *Corley*, as well as to public policy as grounds for this court to narrow or exclude any such claims from the SAC. *Universal City Studios v. Corley*, 273 F.3d at 451 (finding that computer code was entitled to less protection than pure speech because computer code had both functional and expressive elements). EFF also says that § 1201(c)(4) - which notes "[n]othing in this section shall enlarge or diminish any rights of free speech . . . for activities using consumer electronics, telecommunications, or computing products" - supports this conclusion. Yet, that language does not appear to carve out the free speech protection envisioned by EFF. Coupons strenuously opposed EFF's position on this point.[8]

Such arguments are premature. Resolution of this issue requires a much more developed factual record and legal analysis. As such, the motion on this point is DENIED.

//

---

[8] Coupons argues that speech is relevant to defendant's intent and to showing that he provided a method or service for circumvention under § 1201. Citing United States v. Raymond, 228 F.3d 804, 815 (7th Cir. 2000) (First Amendment does not protect instructions for violating tax law); United States v. Featherston, 461 F.2d 1119, 1122-1123 (5th Cir. 1972) (First Amendment does not protect instructions for building explosive device).

6

B.  THIRD AND FOURTH CAUSES OF ACTION

Defendant next takes issue with Coupons' third and fourth causes of action for Unlawful Business Practices under Calif. Bus. & Prof. Code § 17200 et seq. and for common law unfair competition. A statutory unlawful business practices claim requires plaintiff to have suffered injury in fact and lost money or property as the result of defendant's actions. California Business & Professional Code § 17204.  "The [statute] covers a wide range of conduct. It embraces anything that can be properly called a business practice and that at the same time is forbidden by law." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal 4th 1134, 63 P.3d 937 at 943 (internal quotations omitted).  Common law unfair competition has four elements: (1) a substantial investment of "time, skill or money in developing its property"; (2) appropriation and use of the property by another company at little or no cost; (3) the appropriation and use of the "property was without the authorization or consent"; and (4) injury by the appropriation and use by the other company. *City Solutions, Inc. v. Clear Channel Communications*, 365 F.3d 835 at 842 (2004) (citing Balboa Ins. Co. v. Trans Global Equities, 218 Cal.App.3d 1327 at 1342 (1990))."

Thus, under both provisions, Plaintiff must sufficiently allege (1) that Coupons has suffered injury in fact and (2) that Stottlemire was engaged in a "business" when the alleged acts occurred.  Defendant claims that the SAC fails to allege that Stottlemire was involved in a business when he appropriated the property or that injury to plaintiff occurred as a result of the appropriation.

*"Injury in fact"*: In response to the motion to dismiss on this basis, Coupons points to its allegations that Coupons expended significant time and money in developing its coupons system, citing to SAC ¶ 17, 38.  However, these paragraphs do little more than reference the potential for Stottlemire's alleged activities to cause injury or damages to Coupons.[9]  Plaintiff

---

[9] "Plaintiff's anti-copying restrictions are critical to the integrity and desirability of plaintiff's technology. Plaintiff's ability to control electronic reproduction of unique coupons is crucial to plaintiff's commercial success." SAC ¶ 17.

"Defendants' acts described above have greatly and irreparably harmed plaintiff. *Security breaches can undermine confidence in plaintiffs technology, lead to unfavorable publicity*

7

fails to claim that defendant's actions resulted in lost money or property. However, in opposition to this motion, Coupons has argued that it has invested "significant time and money" updating its print limitation software to prevent this kind of circumvention. Because such an allegation as to damages could resolve the pleading deficiency, Plaintiff's Third and Fourth Causes of Action are DISMISSED, WITH LEAVE TO AMEND.

*"Defendant's business"*: Although Coupons is correct that "business" is defined broadly in this context, its pleading on this point is nevertheless deficient. In response to the motion to dismiss, plaintiff points to allegations in the complaint that "*defendants* own and operate another online forum called The Coupon Queen (www.thecouponqueen.net), in which consumers discuss and trade coupons (the "Coupon Queen Forum")." Plaintiff also alleges on information and belief that "the Coupon Queen Forum advertises coupons for sale in exchange for a handling fee." SAC ¶ 23 (emphasis added). The use of "defendants" is relevant because plaintiff sued "other Doe defendants" in addition to Stottlemire. The SAC appears (in some places) to carefully distinguish between allegations referring to Stottlemire and allegations referring to "defendants" generally. Here, there is no allegation that Stottlemire (as opposed to some other Doe Defendant) engaged in any sort of "business."[10] Thus, the third and fourth causes of action are DISMISSED WITH LEAVE TO AMEND on this basis as well.

C. FIFTH CAUSE OF ACTION

Plaintiff argues that Stottlemire committed the tort of conversion by intentionally and wrongfully exercising control over plaintiff's property, depriving Coupons of its property in a manner inconsistent with plaintiff's ownership rights. Alternatively, Coupons says that defendant trespassed on plaintiff's chattels.

1. Conversion

---

*and lost business for plaintiff, and require plaintiff to undertake expensive and time consuming corrective measures.*" SAC ¶ 38 (emphasis added).

[10] Pleading "Doe" defendants is disfavored. *Molnar v. National Broadcasting Co.,* 231 F.2d 684, 687 (9th Cir. 1956). If Plaintiff intends to seek leave to name additional defendants, it should take prompt steps to do so. Otherwise, the court is prepared to dismiss the Does *sua sponte* under FRCP 4(m).

8

"Conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Zaslow v. Kroenert*, 29 Cal. 2d 541 at 549 (Cal. 1946). To establish conversion, a plaintiff must show "ownership or right to possession of property, wrongful disposition of the property right and damages." *Kremen v. Cohen*, 337 F.3d 1024, 1029 (9th Cir. 2003). EFF and defendant argue that Coupons has failed to identify the property allegedly converted or trespassed upon.

Coupons responds that Stottlemire is printing and taking coupons to which he and his "clients" are not entitled. According to plaintiff,

> Stottlemire is effectively stealing the value of these unauthorized coupons, and taking the first step in converting property belonging to Coupons' advertising customers, as well as to other consumers who would otherwise have had legitimate access to the coupons.

Opposition Brief, pg 19. However, as to the value of the coupons, it is unclear how Coupons would have standing to assert a conversion claim on behalf of its customers. Focusing therefore on the second half of the argument, i.e., for every coupon that Stottlemire or consumers using his software take, Coupons has one less coupon available for other consumers. It does appear that these allegations implicate Coupons' rights to distribute coupons to consumers.

However, claims for conversion (or trespass to chattels) which are based on intangible property may be preempted by federal copyright law. *See Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1130 (N.D. Cal. 2001) (conversion claims based on intangible copyrights are preempted by federal law). Section 301 of the Copyright Act explicitly allows for preemption of state and common-law claims under certain circumstances. Preemption occurs when (1) the rights asserted under state law are "equivalent" to those protected by the Copyright Act, and (2) the work involved falls within the Copyright Act's "subject matter" as set forth in §§ 102 and 103. *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F.Supp. 2d 1058, 1072 (N.D. Cal. 2000).

Here, the allegation —as counsel for Coupons put it—is that "Stottlemire stole coupons." Applying the *eBay* test, the plaintiff's only right to the coupons is its right to them as a work (and not the value placed on the coupon by Coupons' customers). Therefore, the property right is within the "subject matter" of the Copyright Act. Furthermore, the rights

asserted in that property are equivalent to those asserted under the Copyright Act (or the DMCA). Here, plaintiff's only viable argument for conversion is that defendant's actions interfered with plaintiff's distribution rights. As such, the conversion claim is preempted by the Copyright Act and the motion to dismiss on this point is GRANTED WITHOUT LEAVE TO AMEND. "A district court does not err in denying leave to amend where the amendment would be futile." *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991).

### 2. Trespass to Chattels

Trespass to chattels "lies where an intentional interference with the possession of personal property has proximately caused injury." *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342 at 1350-51 (Cal. App. 2003). "In cases of interference with possession of personal property not amounting to conversion, 'the owner has a cause of action for trespass or case, and may recover only the actual damages suffered by reason of the impairment of the property or the loss of its use.'" *Id.* (internal citation and italics omitted). Here, the SAC alleges that Stottlemire wrongfully meddled with Coupons' server causing it to send more than the authorized number of coupons to Stottlemire's computer (or to the computers of users of his software). *See,* SAC ¶¶ 15, 16, 26, 31, 35-36. Further, plaintiff cites to *eBay, Inc. v. Bidder's Edge, Inc.*, which noted that "California does recognize a trespass claim where the defendant exceeds the scope of consent." 100 F.Supp. 2d at 1069-1070.

Defendant and EFF argue that, if there was any interference with Coupons' server, such interference must be non-trivial to be actionable. *See Intel*, 30 Cal. 4th at 1356 (sending tens of thousands of emails over a period of 21 months did not put such a strain on Intel's email server that a trespass action was appropriate). Although this may be an appropriate argument once more facts have been established, it would be premature to dismiss the trespass to chattels claim at this time. Furthermore, Coupons' claim for trespass to chattels, unlike conversion, does not fall victim to the preemption argument. *See eBay,* 100 F.Supp. 2d at 1072 (finding that under a trespass to chattels theory, the right to exclude others from using physical personal property is not equivalent to any rights protected by the Copyright Act). Therefore, the motion to dismiss the trespass to chattels claim of the Fifth Cause of Action is DENIED.

1 //

Plaintiff shall file its amended complaint not later than July 22, 2008.

**IT IS SO ORDERED.**

Dated: 07/02/08



HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**5:07-cv-3457 Notice has been electronically mailed to:**

Carly O Alameda calameda@fbm.com, lcoles@fbm.com

Dennis M. Cusack dcusack@fbm.com, adugan@fbm.com, calendar@fbm.com, lwarren@fbm.com

Neil A. Goteiner ngoteiner@fbm.com, calendar@fbm.com, karentsen@fbm.com

Jennifer Ann Lynch jlynch@law.berkeley.edu

John Allan Stottlemire jstottl@comcast.net

\* Counsel are responsible for providing copies of this order to co-counsel.

Dated: 07/02/08

                                                   /s/ MPK
                                       Chambers of Magistrate Judge Lloyd