John A. Stottlemire
33103 Lake Garrison Street
Fremont, CA 94555
Telephone: (614) 358-4185
Email: jstottl@comcast.net
Defendant, *pro se*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| COUPONS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>JOHN STOTTLEMIRE, and DOES 1-10,<br><br>Defendant | Case No. 5:07-cv-03457 HRL<br><br>**DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED [Fed. R. Civ. P. 12(b)(6)]**<br><br>Date:        November 4, 2008<br>Time:        10:00 AM<br>Courtroom:  2, 5th Floor<br>Judge:       Hon. Howard R. Lloyd |

## <u>NOTICE</u>

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on November 4, 2008, at 10:00 a.m., before the Honorable

Howard R. Lloyd, United States Magistrate Judge, in Courtroom 2, 5th Floor, 280 South 1st Street,

San Jose, California the following Motion to Dismiss, filed by defendant John Stottlemire, will be

heard.

## <u>MOTION</u>

Pursuant to Federal Rules of Civil Procedure 12(b)(6), Defendant John Stottlemire hereby

moves to dismiss the Third Amended Complaint's First Cause of Action and Second Cause of

Action filed against him by Plaintiff, Coupons, Inc., on the grounds that Coupons, Inc. has failed to

state a claim upon which relief may be granted because (1) Coupons, Inc.'s First Cause of Action

1  pleads the lack of a cognizable legal theory for relief Coupons, Inc. is seeking under 17 U.S.C. §

2  1201(a), and (2) Coupons, Inc.'s Second Cause of Action pleads the lack of a cognizable legal

3  theory for relief Coupons, Inc. is seeking under 17 U.S.C. § 1201(b).

4       Coupons, Inc. has failed to establish standing under California Business & Professional

5  Code § 17204 by failing to claim it has incurred a loss of money or a loss of property as a result of

6  Defendant John Stottlemire's actions.  Accordingly, Defendant John Stottlemire moves to dismiss

7  the Third Amended Complaint's Third Cause of Action pursuant to Federal Rules of Civil

8  Procedure 12(b)(1).

9       Defendant John Stottlemire also moves to dismiss the Third Amended Complaint's Fourth

10  Cause of Action filed against him by Plaintiff Coupons, Inc., on the grounds that Coupons, Inc has

11  failed to state a claim upon which relief may be granted because (1) Coupons, Inc. has failed to

12  allege that John Stottlemire has attempted to deceive Coupons, Inc.'s clients, (2) Coupons, Inc. has

13  failed to allege that John Stottlemire has attempted to obtain the trade which would have rightfully

14  belonged to Coupons, Inc. and (3) Coupons, Inc.'s Fourth Cause of Action has no arguable basis in

15  law.

16       Coupons, Inc. has asserted no basis for the Court's jurisdiction over its Fifth Cause of

17  Action apart from supplemental jurisdiction under 28 U.S.C. § 1367 which evaporates upon

18  dismissal of the First Cause of Action and Second Cause of Action.  Accordingly, Defendant John

19  Stottlemire moves to dismiss the Third Amended Complaint's Fifth Cause of Action pursuant to

20  Federal Rules of Civil Procedure 12(b)(1).

21       Finally, Defendant John Stottlemire moves to recover reasonable costs against Plaintiff

22  Coupons, Inc which Defendant John Stottlemire has incurred as a result of defending himself in

23  this action pursuant to 17 U.S.C. § 1203(b)(4).

24  //

25  //

26  //

27  //

28

1    In support of this motion, the Court is respectfully referred to the accompanying

2    memorandum of points and authorities in support.  A proposed Order consistent with this motion is

3    attached hereto.

4

5    Dated:  September 23, 2008                          _____/s/_____

6                                                        John A Stottlemire, *pro se*
                                                         33103 Lake Garrison St
7                                                        Fremont, CA 94555
                                                         jstottl@comcast.net
8                                                        (614) 358-4185

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

NOTICE ..........................................................................................................................i

MOTION .........................................................................................................................i

TABLE OF AUTHORITIES .........................................................................................v

PROCEDURAL HISTORY .............................................................................................1

MOTION TO DISMISS ..................................................................................................3

STATEMENT OF ISSUES TO BE DECIDED ..............................................................3

STANDARD OF REVIEW .............................................................................................3

SUMMARY OF ARGUMENT ........................................................................................4

PLAINTIFF'S 17 U.S.C. § 1201(a) CLAIM ..................................................................6

     ACCESS CONTROL ..........................................................................................6

     PLAINTIFF'S TECHNOLOGICAL MEASURE ............................................10

PLAINTIFF'S 17 U.S.C. § 1201(b) CLAIM ...............................................................10

     RIGHTS CONTROL ........................................................................................11

     PLAINTIFF'S TECHNOLOGICAL MEASURE ............................................14

PLAINTIFF'S CB&P CODE § 17200 *et seq.* CLAIM ...............................................16

PLAINTIFF'S COMMON LAW UNFAIR COMPETITION CLAIM............................16

PLAINTIFF'S COMMON LAW TRESPASS TO CHATTELS CLAIM ......................18

RECOVERY OF COSTS ..............................................................................................18

CONCLUSION..............................................................................................................19

# <u>TABLE OF AUTHORITIES</u>

**CASES**

Abrego Abrego v. The Dow Chemical Co., 443 F.3d 676 ...................................4

AGFA Monotype Corp., and International Typeface Corp., v. Adobe Systems, Inc., 404 F. Supp. 2d 1030 ...................................13

Blueport Company, LLP v. The United States, 71 Fed Cl. 768 ...................................13

Branch v. Tunnell, 14 F.3d 449 ...................................4

Cahill v. Liberty Mutual Insurance Co., 80 F.3d 336 ...................................3

Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co. 20 Cal. 4th 163 ...........17

Conley v. Gibson, 355 U.S. 41 ...................................3

Davidson & Associates v. Internet Gateway, 422 F.3d 630 ...................................9, 13

FDIC v. Meyer, 510 U.S. 471 ...................................6, 11

Frankie Lee Roberts v. Helen G. Corrothers, 812 F.2d 1173 ...................................4, 15

Galbraith v. County of Santa Clara, 307 F.3d 1119 ...................................4

Lexmark International, Inc. v. Static Control Components, Inc., 387 F.3d 522 ...................8, 9, 12

MGIC Indemnity Co. v. Weisman, 803 F.2d 500 ...................................4

Navarro v. Block, 250 F.3d 729 ...................................3

Neitzke v. Williams, 490 U.S. 319 ...................................3

Parrino v. FHP, Inc., 146 F.3d 699 ...................................4

Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530 ...................................3

Sony Computer Entertainment America, Inc. v. Divineo, Inc., 457 F. Supp. 2d 957 ...................9

Storage Technology Corporation v. Custom Hardware Engineering & Consulting, Ltd., 2006 U.S. Dist. LEXIS 43690 ...................................8, 9

Universal City Studios, Inc. v. Eric Corley, 273 F.3d 429 ...................................9, 12

Western Mining Council, 643 F.2d 618 ...................................4, 15

**STATUTES**

17 U.S.C. § 102 ...................................6

17 U.S.C. § 106 ...................................10, 11

17 U.S.C. § 1201(a) ................................... passim

17 U.S.C. § 1201(a)(1)(A) ........................................................................................7

17 U.S.C. § 1201(a)(2) .........................................................................................7, 11

17 U.S.C. § 1201(a)(3)(B) ........................................................................................7

17 U.S.C. § 1201(b) .......................................................................................... passim

17 U.S.C. § 1203(b)(4) ...........................................................................................18

California Business & Professions Code § 17200 ...................................................16

California Business & Professions Code § 17204 ...................................................16

**OTHER AUTHORITIES**

H.R. Rept. 105-109 ...........................................................................................12, 15

Merriam-Webster's Collegiate Dictionary (10th ed. 1999)..................................7, 11

S. Rep. No. 105-190......................................................................................6, 12, 15

## PROCEDURAL HISTORY

Coupons, Inc. ("Plaintiff") filed its Complaint with this Court on July 2, 2007 alleging violations of the Digital Millennium Copyright Act ("DMCA") 17 U.S.C. § 1201 and related state law claims against defendants John Stottlemire and Does 1-10 (collectively "Defendant").

Defendant filed a motion to extend time to answer the Complaint on July 24, 2007 which was granted in part by this Court, granting Defendant until September 24, 2007 in which to answer Plaintiff's complaint.

Plaintiff filed its First Amended Complaint ("FAC") on August 29, 2007 again alleging violations of the DMCA and related state law claims against Defendant.

Defendant filed responsive pleadings to the FAC on September 24, 2007. The responsive pleadings included Defendant's Motion to Dismiss for Failure to State a Claim upon which Relief May Be Granted, or in the Alternative, for Summary Judgment and its supporting Memorandum of Points and Authorities. Plaintiff filed its Opposition to Defendant's responsive pleadings on November 13, 2007. Defendant filed his Reply to Opposition to Defendant's responsive pleadings on November 20, 2007. The Court, after hearing the responsive pleadings on December 4, 2007, granted in part Defendant's Motion to Dismiss and dismissed the First Amended Complaint with leave to amend on December 12, 2007. The Court gave Plaintiff until January 2, 2008 to file a Second Amended Complaint.

Plaintiff filed its Second Amended Complaint ("SAC") on December 27, 2007 again alleging violations of the DMCA, specifically 17 U.S.C. § 1201(a) and 17 U.S.C. § 1201(b); and related state law claims against Defendant.

Defendant filed a motion to extend time to answer the SAC on January 14, 2008 which was granted in part by this Court, granting Defendant until February 26, 2008 in which to answer Plaintiff's SAC.

Defendant filed responsive pleadings to the SAC on February 26, 2008. The responsive pleadings included Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint for Failure to State a Claim upon which Relief May Be Granted and its supporting Memorandum of Points and Authorities. On March 25, 2008 *Amicus Curiae* EFF ("*Amicus Curiae*") filed for Leave

1  to File Amicus Curiae Brief in Support of Defendant's Motion to Dismiss concurrently with Brief

2  Amicus Curiae of Electronic Frontier Foundation in Support of Defendant's Motion to Dismiss.

3  This Court granted *Amicus Curiae* Motion for Leave to File Amicus Curiae Brief in Support of

4  Defendant's Motion to Dismiss on March 31, 2008.  Plaintiff and Defendant filed a Stipulation to

5  Extend Time to File Opposition and Reply to Motion to Dismiss on March 28, 2008 which was

6  granted by this Court on March 31, 2008 granting Plaintiff until April 4, 2008 to file its opposition

7  to Defendant's Motion to Dismiss including any response to the proposed amicus brief and

8  granting Defendant until April 11, 2008 to reply to Plaintiff's opposition.  The Court also

9  continued the hearing on Defendant's Motion to Dismiss until May 6, 2008.

10        The Court, after hearing responsive pleadings on May 6, 2008 granted in part Defendant's

11  Motion to Dismiss Plaintiff's Second Amended Complaint for Failure to State a Claim on July 2,

12  2008 and dismissed Plaintiff's SAC First Cause of Action with leave to amend, Plaintiff's SAC

13  Third Cause of Action with leave to amend, Plaintiff's SAC Fourth Cause of Action with leave to

14  amend and Plaintiff's SAC Fifth Cause of Action (Conversion) without leave to amend.  The Court

15  further ordered Plaintiff file an Amended Complaint by July 22, 2008.

16        Plaintiff filed its Third Amended Complaint ("TAC") on July 22, 2008 again alleging

17  violations of the DMCA, specifically 17 U.S.C. § 1201(a) and 17 U.S.C. § 1201(b); and related

18  state law claims against Defendant.

19        Defendant filed a motion to extend time to answer the TAC on July 28, 2008 which was

20  granted in part by this Court, granting Defendant until October 6, 2008 in which to answer

21  Plaintiff's TAC.

22  //

23  //

24  //

25  //

26  //

27

28

**MOTION TO DISMISS**

**STATEMENT OF ISSUES TO BE DECIDED**

1.    Whether Plaintiff's First Cause of Action states a claim on which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

2.    Whether Plaintiff's Second Cause of Action states a claim on which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

3.    Whether Plaintiff's Third Cause of Action has established standing under California Business & Professional Code § 17204.

4.    Whether Plaintiff's Fourth Cause of Action states a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6).

5.    Whether the Court should retain jurisdiction over Plaintiff's Fifth Cause of Action. Fed. R. Civ. P. 12(b)(1).

**STANDARD OF REVIEW**

A Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complain. *Navarro v. Block*, 250 F.3d 729 at 732 (9th Cir. 2001).  Dismissal of a claim under this Rule is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41 at 45-46 (1957); *Navarro v. Block*, 250 F.3d 729 at 732 (9th Cir. 2001).  Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory.  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530 at 534 (9th Cir. 1984); *see Neitzke v. Williams*, 490 U.S. 319 at 326-27 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law").  Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory.  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530 at 534 (9th Cir. 1984).

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mutual Insurance Co.*, 80 F.3d 336 at 337-38 (9th Cir. 1996).  However, legal conclusions need not be taken as true merely because they are cast in the form of factual

allegations. *Frankie Lee Roberts v. Helen G. Corrothers*, 812 F.2d 1173 at 1177 (9th Cir. 1987); *Western Mining Council*, 643 F.2d 618 at 624 (9th Cir. 1981). When ruling on a motion to dismiss, the court may consider facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the Court takes judicial notice. *Parrino v. FHP, Inc.*, 146 F.3d 699 at 705-06 (9th Cir. 1998) *superceded by statute on other grounds as stated in Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676 at 681-82 (9th Cir. 2006); *Branch v. Tunnell*, 14 F.3d 449 at 453-54 (9th Cir. 1994) *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 at 1123-1124 (9th Cir. 2002); *MGIC Indemnity Co. v. Weisman*, 803 F.2d 500 at 504 (9th Cir. 1986).

## SUMMARY OF ARGUMENT

Plaintiff's Third Amended Complaint lacks an arguable basis in law and the Third Amended Complaint must be dismissed in its entirety. Made obvious by Plaintiff's Third Amended Complaint, Plaintiff's technological measure cannot be defined as a technological measure which effectively controls access to Plaintiff's coupons or a technological measure which protects Plaintiff's rights under the Copyright Act.

Marshaling the facts and researching the substantive law are two of the most important responsibilities the Court assigns Plaintiff in preparation of their cases for trial. Two closely related duties, which every court expects the Plaintiff to perform long before a case enters the court's docket, are evaluating whether a legal claim exists based on the available facts, and screening out frivolous aspects of an otherwise valid claim. Evaluating whether a legal claim exists assigns Plaintiff the responsibility of knowing the substantive law involved in the claims they litigate even in claims where Plaintiff is not a specialist. Plaintiff is expected to recognize their responsibility to study the law involved in a case thoroughly before bringing claims before the court.

Here, Plaintiff utterly fails in its responsibilities to the Court. Plaintiff claims its technological measure effectively controls access to its coupons and pursues a claim for relief under 17 U.S.C. § 1201(a) against Defendant. Plaintiff's technological measure controls access to

its coupons while Plaintiff is in sole possession of its coupons and makes no attempt to control access once Plaintiff has given those coupons to consumers. The law is clear, Plaintiff concludes that its technological measure controls access effectively, however to pass the effectiveness test, Plaintiff must control access to its coupons even while Plaintiff no longer retains possession to its coupons and Plaintiff's legal conclusion must be rejected. Because Plaintiff's technological measure does not effectively control access to its coupons, circumvention of the technological measure to gain access to Plaintiff's coupons does not violate 17 U.S.C. § 1201(a).

As argued *infra*, Plaintiff's failure to meet its prefiling responsibilities are compounded by each of the claims for relief it seeks against the Defendant. There are no claims made by the Plaintiff in this immediate action which are tenable against the Defendant and none of Plaintiff's claims has an arguable basis in law. Plaintiff's 17 U.S.C. § 1201(b) claim lacks an arguable basis in law because Plaintiff's technological measure prevents access but does nothing more to protect its rights granted under Title 17. Plaintiff's California Business and Professions Code § 17200 et seq and Common Law Unfair Competition claims lack an arguable basis in law because Defendant has never been a competitor to Plaintiff and Defendant has never solicited Plaintiff's clients in an attempt to gain revenue which would rightfully belong to Plaintiff. Plaintiff's Common Law Trespass to Chattels claim lacks an arguable basis in law because Defendant neither damaged Plaintiff's computer system nor impaired its functioning.

In this light, which was known to Plaintiff before it filed this action against Defendant, Plaintiff continues to pursue its untenable claims. Until now, Plaintiff has sustained this action by simply not claiming the facts necessary to pursue the actions it has claimed. This pursuit has resulted in Defendant's successful challenges under the Federal Rules of Civil Procedure and Plaintiff has amended its complaint three times. Unfortunately, Plaintiff's quest to maliciously prosecute Defendant has resulted in a waste of the Court's resources for the previous 16 months.

As with Plaintiff's First Amended Complaint and its Second Amended Complaint, Plaintiff's Third Amended Complaint still fails to claim facts necessary to pursue an action under 17 U.S.C. § 1201(a) and § 1201(b). Plaintiff's bald assertion that Defendant circumvented its technological measure offers no other facts in support and concentrates solely on the effects of that

circumvention.  Neither the Court nor the Defendant is notified how the circumvention occurred.

Defendant once believed the gravamen of Plaintiff's claim was based upon the removal of

Windows Registry keys and files which Plaintiff hid on consumer's computers.  The Third

Amended Complaint now claims that if those keys do not exist, access to its coupons is denied

altogether and Defendant can no longer ascertain what actions he is alleged of that resulted in

circumvention of Plaintiff's technological measure.

Plaintiff's conclusory allegation that Defendant circumvented Plaintiff's technological

measure certainly qualifies as grounds for dismissal under the Federal Rules of Civil Procedure;

however, Defendant challenges Plaintiff's Third Amended Complaint on other grounds.  Plaintiff's

Third Amended Complaint finally claims facts which are dispositive to this immediate action and

none of Plaintiff's claims for relief has an arguable basis in law.  Plaintiff's Third Amended

Complaint must be dismissed without leave to amend.

### PLAINTIFF'S 17 U.S.C. § 1201(a) CLAIM

To pursue an action under 17 U.S.C. § 1201(a), Plaintiff's technological measure must

effectively control access to works protected under 17 U.S.C. § 102.  Plaintiff errs in concluding

its technological measure effectively controls access to its coupons.  Plaintiff's TAC, on its face,

lacks a cognizable legal theory under 17 U.S.C. § 1201(a) against Defendant and there are no set

of facts Plaintiff can claim which would entitle him to relief.  Plaintiff's claim must be dismissed

without leave to amend for failure to state a claim upon which relief may be granted.

### ACCESS CONTROL

To gain protection under 17 U.S.C. § 1201(a) a technological measure must control access

effectively to Plaintiff's works protected under 17 U.S.C. § 102.  *See S. Rep. No. 105-190,* at 12

(1998):

> "if an effective technological protection measure limits access to the plain text of a
> work only to those with authorized access…then a potential cause of action against
> the manufacturer of a device designed to circumvent the measure lies under
> subsection 1201(a)(2)."

17 U.S.C. § 1201(a) does not specifically define the term "access."  Thus, the term should

be given its ordinary, customary meaning.  *See FDIC v. Meyer,* 510 U.S. 471 at 476, 127 L. Ed. 2d

308, 114 S. Ct. 996 (1994) (when the text of a statute contains an undefined term, that term

receives its "ordinary or natural meaning."). The ordinary, customary meaning of the term

"access" is the "ability to enter, to obtain, or to make use of." *Merriam-Webster's Collegiate*

*Dictionary* (10th ed. 1999).

Plaintiff's legal conclusion, cast in the form of factual allegations, is that Plaintiff's

technological measure effectively controls access to Plaintiff's coupons. However, Plaintiff fails

to consider access to Plaintiff's coupons, *while not protected* by its technological measure is

unavoidable. A technological measure cannot protect access to a work printed on plain paper. As a

result, Plaintiff's technological measure does not effectively control access to its coupons.

Plaintiff errs by disregarding the law. A cause of action under 17 U.S.C. § 1201(a) only exists

when Plaintiff's technological measure effectively controls access to its coupons. *See* 17 U.S.C. §

1201(a)(1)(A): "No person shall circumvent a technological measure that effectively controls

access to a work protected under this title" *See also* 17 U.S.C. § 1201(a)(2):

> "No person shall manufacture, import, offer to the public, provide, or otherwise
> traffic in any technology, product, service, device, component, or part thereof, that
> – (A) is primarily designed or produced for the purpose of circumventing a
> technological measure that effectively controls access to a work protected under
> this title; (B) has only limited commercially significant purpose or use other than to
> circumvent a technological measure that effective controls access to a work
> protected under this title; or (C) is marketed by that person or another acting in
> concert with that person with that person's knowledge for use in circumventing a
> technological measure that effectively controls access to a work protected under
> this title."

17 U.S.C. § 1201(a)(3)(B) specifically defines the phrase "effectively controls access to a work" as

meaning:

> "a technological measure effectively controls access to a work if the measure, in the
> ordinary course of its operation, requires the application of information, or a
> process or a treatment, with the authority of the copyright owner, to gain access to
> the work."

Nothing narrows the plain language of 17 U.S.C. § 1201(a). An action under 17 U.S.C. §

1201(a) requires a technological measure control access effectively without regard to who is in

possession of the work the copyright holder is attempting to protect. The Court in *Lexmark*

*International, Inc. v. Static Control Components, Inc.* offered a helpful analogy to explain the meaning of "effectively controls access":

> "Just as one would not say that a lock on the back of a house controls access to a house whose front door does not contain a lock and just as one would not say that a lock on any door of a house controls access to the house after its purchaser receives the key to the lock, it does not make sense to say this provision of the DMCA applies to otherwise-readily-accessible-copyrighted works. Add to this the fact that the DMCA not only requires the technological measure to control access but also requires the measure to control access effectively, 17 U.S.C. § 1201(a)(2), and it seems clear that this provision does not naturally extend to a technological measure that restricts one form of access but leaves another route wide open." *Lexmark International, Inc. v. Static Control Components, Inc.*, 387 F.3d 522 at 547 (6th Cir. 2004) (Internal quotations omitted).

In instances where the copyright holder has distributed its works on medium which can be freely distributed among consumers – e.g. hard disks, floppy disks, integrated circuit boards, compact discs or digital versatile disc – the courts have only applied the provisions of 17 U.S.C. § 1201(a) where the work could only be accessed through the technological measure which restricted access. Most notably, the Court in *Storage Technology Corporation v. Custom Hardware Engineering & Consulting, Ltd.* decided that a technological measure cannot effectively control access to copyrighted works when consumers who *own the copyrighted work* can access and copy them without the technological measure preventing access:

> "RTD Code, along with the rest of the LMU Code, is contained either on the hard drive of the LMU or on floppy disks that STK sometimes ships with its products. CHE has asserted and STK has not denied that any customer who owns an STK system can access and copy RTD Code. Like the Lexmark customers who were able to copy PEP directly from the printers, STK's customers can access RTD Code regardless of the existence of GetKey protection. STK disputes the relevance of Lexmark and cites instead *Davidson & Assocs. v. Jung, 422 F.3d 630 (8th Cir. 2005)*. (#679, at 6-7). In Davidson, however, the court found that the technological measure at issue did effectively control access to the copyrighted work; the copyrighted works were, unlike the PEP and unlike RTD Code, "not freely available," even to purchasers of the product. *Id. at 642. Davidson* is thus inapposite. Because GetKey does not effectively control access to RTD Code, circumvention of GetKey to access RTD Code cannot violate the DMCA." *Storage Technology Corporation v. Custom Hardware Engineering & Consulting, Ltd.*, 2006 U.S. Dist. LEXIS 43690 at *25, 26 (Mass. 2006).

Both the *Lexmark* and *Storage Tech* Courts make obvious that it is impossible to claim a technological measure effectively controls access to works which are printed on ordinary paper. In *Lexmark* the Court noted consumers who own printers manufactured by Lexmark could access

Lexmark's Printer Engine Program with or without the benefit of Lexmark's authentication sequence:

> "Anyone who buys a Lexmark printer may read the literal code of the Printer Engine Program directly from the printer memory, with or without the benefit of the authentication sequence, and the data from the program may be translated into readable source code after which copies may be freely distributed." *Lexmark International, Inc. v. Static Control Components, Inc.*, 387 F.3d 522 at 546 (6th Cir. 2004).

In *Storage Tech* the Court noted that any customer in possession of hardware distributed by Storage Tech can access and copy the maintenance software regardless of Storage Tech's authentication sequence:

> "RTD Code … is contained either on the hard drive … or on floppy disks that [Storage Tech] sometimes ships with its products. [Custom Hardware Engineering] has asserted and [Storage Tech] has not denied that any customer who owns [a Storage Tech] system can access and copy RTD Code. Like the Lexmark customers who were able to copy PEP directly from printers, [Storage Tech's] customers can access RTD Code regardless of the existence of GetKey protection." *Storage Technology Corporation v. Custom Hardware Engineering & Consulting, Ltd.*, 2006 U.S. Dist. LEXIS 43690 at *25, 26 (Mass. 2006).

Works printed on ordinary paper are always accessible and can be copied without the benefit of a copyright holder's authentication sequence. Protection for technological measures which control access to those works necessarily fails as it is simply impossible to effectively control that access.

Contrariwise, without regard to who owns the work, plaintiffs who succeed with claims for violations of 17 U.S.C. § 1201(a) and are no longer in possession of the copyrighted work, effectively control access to the copyrighted work: CSS effectively controls access to the movies distributed on DVD's (*See Universal City Studios, Inc. v. Eric Corley, 273 F.3d 429* (2nd Cir 2001)) and the CD Key effectively controls access to the games distributed on CDs (*See Sony Computer Entertainment America, Inc. v. Divineo, Inc.*, 457 F. Supp. 2d 957 (N.D. Cal. 2006) *See also Davidson & Associates v. Internet Gateway*, 422 F.3d 630 (8th Cir. 2005)).

In sum, to seek a potential cause of action under 17 U.S.C. § 1201(a) Plaintiff must control the ability to obtain the work without leaving another route to obtain that work wide open and without regard to who is in possession of the work.

## PLAINTIFF'S TECHNOLOGICAL MEASURE

Plaintiff claims the work its technological measure protects is its coupons (TAC ¶ 12) and Plaintiff distributes these coupons directly to consumer's printers (TAC ¶ 16). Plaintiff also claims that its technological measure effectively controls access to its coupons; however by causing coupons to be printed directly to a consumer's printer, Plaintiff cannot claim its technological measure effectively controls access to its coupons. Plaintiff necessarily "leaves another route wide open." Consumers have the ability to obtain authorized copies of Plaintiff's coupons without Plaintiff's technological measure limiting access to the coupons – e.g. by obtaining the coupon from a friend, neighbor or relative. Plaintiff's technological measure controls access to the coupons only while Plaintiff is in sole possession of the coupon and makes no attempt to control access with its technological measure after the coupon is given to the consumer. Plaintiff informs consumers they are unauthorized to access coupons by presenting screens to consumers that claim "print limit reached" (TAC ¶ 23). Even after a consumer is told they are not authorized access to Plaintiff's coupons nothing prevents the consumer from obtaining that coupon from a friend, neighbor or relative and Plaintiff's technological measure does nothing to prevent such access.

There are no set of facts Plaintiff can allege to support a claim which would entitle it to relief under 17 U.S.C. § 1201(a). Nothing within 17 U.S.C. § 1201(a) allows Plaintiff to narrow the scope defining when a copyright holder must control access to its works to be protected under the plain language of the statute. Plaintiff's technological measure, while obviously an access control, does not attempt to control access to its coupons after Plaintiff is no longer in possession of those coupons. To have a potential cause of action under 17 U.S.C. § 1201(a) Plaintiff must control access to its coupons effectively. Plaintiff necessarily "leaves another route wide open" by not controlling access to its coupons after causing the coupon to be printed on ordinary paper. Plaintiff's claim under 17 U.S.C. § 1201(a) lacks a cognizable legal theory and the claim must be dismissed without leave to amend for failure to state a claim upon which relief may be granted.

## PLAINTIFF'S 17 U.S.C. § 1201(b) CLAIM

All access controls necessarily protect exclusive rights granted under 17 U.S.C. § 106. By ignoring requirements to pursue an action under 17 U.S.C. § 1201(b), Plaintiff errs in concluding

that an allegation based exclusively on circumvention of its access control creates a cause of action under 17 U.S.C. § 1201(b). Plaintiff's TAC, on its face, lacks a cognizable legal theory under 17 U.S.C. § 1201(b) against Defendant and there are no set of facts Plaintiff can claim which would entitle him to relief. Plaintiff's claim must be dismissed without leave to amend for failure to state a claim upon which relief may be granted.

**RIGHTS CONTROL**

By seeking a claim under both 17 U.S.C. § 1201(a) and § 1201(b), Plaintiff claims its technology controls access to Plaintiff's coupons and prevents, restricts or otherwise limits the exercise of a right Plaintiff has under Title 17. Plaintiff's legal conclusion, cast in the form of factual allegations, that its access control which necessarily protects rights Plaintiff has under 17 U.S.C. § 106 gives Plaintiff a cause of action under 17 U.S.C. § 1201(b) fails to consider applicable statute and case law. Plaintiff errs by disregarding the law, a cause of action under 17 U.S.C. § 1201(b) only exists when Plaintiff's technology protects its rights under Title 17 with more than just technology that limits access.

A plaintiff seeking protection for its access control under 17 U.S.C. § 1201(b) must protect its rights under Title 17 with more than just an authentication sequence. 17 U.S.C. § 1201 *et seq* does not specifically define the term "access." Thus, the term should be given its ordinary, customary meaning. *See FDIC v. Meyer*, 510 U.S. 471 at 476, 127 L. Ed. 2d 308, 114 S. Ct. 996 (1994) (when the text of a statute contains an undefined term, that term receives its "ordinary or natural meaning."). The ordinary, customary meaning of the term "access" is the "ability to enter, to obtain, or to make use of." *Merriam-Webster's Collegiate Dictionary* (10th ed. 1999). In the digital world, all access controls necessarily protect the rights of a copyright holder and copyright holders must claim unauthorized access gives consumers the ability to obtain an unauthorized copy of the work protected under Title 17. *See Chamberlain v. Skylink*, 381 F.3d 1178 at 1203 (Fed Cir 2004), (The fifth element a Plaintiff must claim to bring a claim of liability under 17 U.S.C. § 1201(a)(2) "in a manner that infringes or facilitates infringing a right protected by the Copyright Act"). Without doubt, this was exactly the intention of Congress with passage of 17 U.S.C. § 1201(a) and 17 U.S.C. § 1201(b). *See specifically Senate Report Number 105-190:*

> "The two sections are not interchangeable, and many devices will be subject to challenge only under one of the subsections. For example, if an effective technological protection measure does nothing to prevent access to the plain text of the work, but is designed to prevent that work from being copied, then a potential cause of action against the manufacturer of a device designed to circumvent the measure lies under subsection 1201(b), but not under 1201(a)(2)." *S. Rep. No. 105-190* at 12 (1998).

*See also House of Representatives Report 105-551 Part 2:*

> "Section 102(b) applies to those technological protection measures employed by copyright owners that effectively protect their copyrights, as opposed to those technological protection measures covered by Section 102(a), which prevent unauthorized access to a copyrighted work." *H.R. Rept. 105-109* at 39 (1998).

And:

> "In the Committee's view, measures that can be deemed to "effectively control access to a work" would be those based on encryption, authentication, or some other measure which requires the use of a "key" provided by a copyright owner to gain access to a work." *Id.*

In the light of Congressional intent, four different United States Courts of Appeals, the United States Court of Federal Claims and at least one District Court have rejected the conclusion of law Plaintiff makes in this action. These Courts have all agreed, alleged circumvention of an access control does not give Plaintiff a cause of action under 17 U.S.C. § 1201(b):

*See Universal City Studios, Inc. v. Eric Corley*, 273 F. 3d 429 at 441 (2nd Cir. 2001):

> "Subsection 1201(b)(1) is similar to subsection 1201(a)(2), except that subsection 1201(a)(2) covers those who traffic in technology that can circumvent "a technological measure *that effectively controls access* to a work protected under" Title 17, whereas subsection 1201(b)(1) covers those who traffic in technology that can circumvent "protection afforded by a technological measure *that effectively protects a right of a copyright owner* under" Title 17. *Id.* § 1201(a)(2), (b)(1) (emphasis added). In other words, although both subsections prohibit trafficking in a circumvention technology, the focus of subsection 1201(a)(2) is circumvention of technologies designed to *prevent access* to a work, and the focus of subsection of 1201(b)(1) is circumvention of technologies designed to *permit access* to a work but *prevent copying* of the work or some other act that infringes a copyright. *See S. Rep. No. 105-190, at 11-12 (1998)." (Emphasis and citations in original).

*See also Lexmark International, Inc. v. Static Control Components, Inc.*, 387 F.3d 522 at 545 (6th Cir. 2004):

> "The statute finally bans devices that circumvent "technological measures" protecting "a right" of the copyright owner. *Id.* § 1201(b). The last provision prohibits devices aimed at circumventing technological measures that allow some

forms of "access" but restrict other uses of the copyrighted work, *see Universal City Studios, Inc. v. Corley*, 273 F.3d 439, 441 (2d Cir. 2001); *United States v. Elcom Ltd.,* 203 F. Supp. 2d 1111, 1120 (N.D. Cal. 2002), such as streaming media, which permits users to view or watch a copyrighted work but prevents them from downloading a permanent copy of the work, *see RealNetworks, Inc. v. Streambox, Inc.*, 2000 U.S. Dist LEXIS 1889, No. 2:99CV02070, 2000 WL 127311, at *1-2 (W.D. Wash. Jan. 18, 2000)." (Emphasis and citations in original).

*See also Davidson & Associates, doing business as Blizzard Entertainment Inc., et al v. Internet Gateway*, 422 F.3d 630 at 640 (8th Cir. 2005):

"The second and third provisions are §§ 1201(a)(2) and 1201(b)(1), the "antitrafficking provisions." These sections are similar, except that § 1201(a)(2) covers those who traffic in technology that can circumvent "a technological measure *that effectively controls access* to a work protected under" Title 17, whereas § 1201(b)(1) covers those who traffic in technology that can circumvent "protection afforded by a technological measure *that effectively protects a right of a copyright owner* under" Title 17. 17 U.S.C. §§ 1201(a)(2) & (b)(1). (Emphasis added.) In other words, although both sections prohibit trafficking in a circumvention technology, the focus of § 1201(a)(2) is circumvention of technologies designed to prevent access to a work, and the focus of § 1201(b)(1) is circumvention of technologies designed to *permit access* to a work but *prevent copying* of the work or some other act that infringes a copyright. *See* S. Rep. No. 105-190, at 11-12 (1998)." (Emphasis and citations in original).

*See also The Chamberlain Group, Inc., v. Skylink Technologies, Inc.*, 381 F.3d 1178 at 1195 (Fed Cir. 2004):

"[17 U.S.C. § 1201(b)] prohibits trafficking in devices that circumvent technological measures tailored narrowly to protect an individual right of the copyright owner while nevertheless allowing access to the protected work."

*See also Blueport Company, LLP v. The United States*, 71 Fed Cl. 768 at 771 (Fed Claims 2006):

"The distinction between these anti-trafficking provisions is that, while both prohibit the trafficking of anti-circumvention devices and software, DMCA § 1201(a)(2) applies to the trafficking of circumvention of technology designed to prevent access to a copyrighted work, while DMCA § 1201(b)(1) applies to the trafficking of circumvention of technology designed to permit access to a copyrighted work, but prevent copying of that work. *See* S. Rep. No. 105-190, at 11-12." (Citations in original).

And finally *See AGFA Monotype Corp., and International Typeface Corp., v. Adobe Systems, Inc.*, 404 F. Supp. 2d 1030 at 1038 (N.D. Ill. 2005):

"To be covered under section 1201(b), an alleged trafficker must "circumvent technological measures tailored narrowly to protect an individual right of the copyright owner while nevertheless allowing access to the protected work." *Chamberlain*, 381 F.3d at 1195." (Citation in original).

# PLAINTIFF'S TECHNOLOGICAL MEASURE

Without regard to the identity of the consumer who attempts to print coupons from Plaintiff's website, Plaintiff's technological measure uses a unique identifier ("key") to authenticate requests by consumers. After granting the consumer's request and providing access to the coupon, the key does nothing further to protect Plaintiff's rights granted under Title 17. Plaintiff's technological measure must therefore be defined as an access control and not a rights control.

Plaintiff assigns the unique identifier to the consumer's computer: "Plaintiff assigns the unique identifier to an individual computer" (TAC ¶ 16). "Plaintiff delivers to the consumer's computer a security feature in the form of a unique identifier." (Id.)

Plaintiff verifies if a particular coupon is authorized for transmission to the printer attached to the computer used by the consumer *each time* the consumer requests a coupon:

> "Any time that computer seeks to have a coupon printed, the computer's unique identifier is sent to Plaintiff's server for verification. The computer must seek and obtain access each time it asks to have a coupon printed." (Id.).

In the event the authentication sequence is successful, consumers are given the ability to obtain the plain text of the work requested by the consumer:

> "[Plaintiff's] system and technology determine if a computer is authorized to gain access for a particular print, and if so, the system transmits the coupon to the consumer's printer." (Id.).

In the event the authentication sequence fails, consumers are denied the ability to obtain the plain text of the work requested by the consumer:

> "This identifier interacts with Plaintiff's system to prevent access to and the printing of more than the authorized number of coupons agreed upon with [Plaintiff's] client for a particular coupon offer." (Id.).

Plaintiff's authentication sequence is exactly that, simply an authentication sequence. Plaintiff's authentication sequence limits access to the work: "using uniquely identified computers to limit access effectively achieves Plaintiffs goals." (TAC ¶ 18) but does nothing to protect Plaintiff's rights under Title 17 after the authentication sequence gives the consumer the ability to obtain the plain text of the work requested by the consumer:

"if an effective technological protection measure limits access to the plain text of a work only to those with authorized access, but provides no additional protection against copying, displaying, performing or distributing the work, then a potential cause of action against the manufacturer of a device designed to circumvent the measure lies under subsection 1201(a)(2), but not under subsection 1201(b)." *S. Rep. No. 105-190* at 12 (1998).

Plaintiff also claims to maintain a distribution system using proprietary encryption, authentication and private/public key technology. "In order to supply secure, printable coupons to consumers over the Internet, Plaintiff maintains a distribution system using proprietary encryption, authentication, and private and public key technology." (TAC ¶ 14) This is exactly what Congress stated were measures that can be deemed to effectively *control access* to a work:

"In the Committee's view, measures that can be deemed to "effectively control access to a work" would be those based on encryption, authentication, or some other measure which requires the use of a "key" provided by a copyright owner to gain access to a work." *H.R. Rept. 105-109* at 39 (1998).

Plaintiff's only claim is that Defendant circumvented the authentication technology and concludes this authentication technology protects both access to Plaintiff's coupons and Plaintiff's rights under Title 17 of the United States Code pursuant to 17 U.S.C. § 1201(a) and 17 U.S.C. § 1201(b). Plaintiff's legal conclusion need not be taken as true merely because Plaintiff has cast them in the form of factual allegations. *See Frankie Lee Roberts v. Helen G. Corrothers*, 812 F.2d 1173 at 1177 (9th Cir. 1987); *Western Mining Council*, 643 F.2d 618 at 624 (9th Cir. 1981). As argued *supra*, Plaintiff errs in its legal conclusion and this Court should reject them.

Plaintiff authenticates each consumer's individual request to access Plaintiff's coupons. This authentication sequence is initiated without regard to the number of coupons a consumer has previously printed and access is granted or denied based upon the printing history of the key provided to the consumer's computer by Plaintiff. The key provided by Plaintiff controls access but provides no additional protection against copying, displaying, performing or distributing Plaintiff's coupons. Congress' intentions are clear. Plaintiff's technological measure limits access to the plain text of a work only to those with authorized access, but provides no additional protection against copying, displaying, performing or distributing the work. Undoubtedly, Plaintiff does not have a potential cause of action against Defendant under subsection 1201(b). Plaintiff's

action under 17 U.S.C. § 1201(b) lacks an arguable basis in law and must be dismissed without

leave to amend for failure to state a claim upon which relief may be granted.

## PLAINTIFF'S CB&P CODE § 17200 *et seq.* CLAIM

Plaintiff has not established standing in this action and Plaintiff's claim under California

Business & Professions Code § 17200 *et seq* must be dismissed for lack of standing:

> "Actions for any relief pursuant to this chapter shall be prosecuted exclusively in a court of competent jurisdiction by the Attorney General of any district attorney or by any county counsel authorized by agreement with the district attorney in actions involving violation of a county ordinance, or any city attorney of a city having a population in excess of 750,000, or by a city attorney in any city and county and, with the consent of the district attorney, by a city prosecutor in any city having a full-time city prosecutor in the name of the people of the State of California upon their own complaint or upon the complaint of any board, officer, person, corporation, or association or by any person *who has suffered injury in fact and has lost money or property* as a result of the unfair competition" *California Business & Professions Code § 17204.* (emphasis added).

Plaintiff claims it has suffered injury in fact and as a result "required Plaintiff to undertake

expensive corrective measures, required management to spend time and resources responding to

industry concerns, and required Plaintiff to expend attorneys fees and costs" (TAC ¶ 67). Plaintiff

fails to claim, that as a result of Defendant's actions, Plaintiff has lost money or property.

Absent a claim of lost money or property, Plaintiff has not established standing under

section 17204 of the California Business and Professions Code and Plaintiff's claim under section

17203 must be dismissed for lack of standing.

## PLAINTIFF'S COMMON LAW UNFAIR COMPETITION CLAIM

Plaintiff's claim for relief under the Common Law of California Unfair Competition fails

to allege facts necessary to establish that Plaintiff is entitled to relief. Plaintiff has not claimed, nor

can it truthfully claim Defendant deceived Plaintiff's clients while attempting to secure Plaintiff's

clients as his own or Defendant committed an act of fraud while attempting to secure Plaintiff's

clients as his own and Plaintiff's claim for relief under the Common Law of California, Unfair

Competition must be dismissed without leave to amend for failure to state a claim upon which

relief may be granted.

1    The Supreme Court of the State of California addressed Common Law Unfair Competition

2  and defined the acts which must occur at the very heart of every Common Law Unfair Competition

3  claim:

4         "Unfair competition originated as a common law tort.  At common law, before the
       enactment of any statutory prohibition against unfair competition, "unfair competition"
5       had a stable and relatively narrow meaning that focused on business practices tht
       harmed competitors by deceiving customers.  (Dunston v. Los Angeles Van etc. Co.
6       (1913) 165 Cal. 89, 94 [131 P. 115] ["relief in such cases really rests upon the deceit or
       fraud which the later comer into the business field is practicing upon the earlier comer
7       and upon the public."].)  Originally, it was the deceptive "passing off" of one's goods
       or services as those of another, commonly accomplished by appropriating the trade
8       name of another.  "The fundamental principal underlying this entire branch of law is,
       that no man has the right to sell his goods as the goods of a rival trader."  (Weinstock,
9       Lubin & Co. v. Marks (1895) 109 Cal. 529, 539 [42 P. 142]; see also Lutz v. Western
       Iron & Metal Co. (1923) 190 Cal. 554, 561 [213 P. 962]; Banzhaf v. Chase (1907) 150
10      Cal. 180, 183 [88 P. 704]; Pierce v. Guittard (1885) 68 Cal. 68, 71 – 72 [8 P. 645].)

11      Even though the tort has been extended to situations other than classic "passing
       off," deceptive conduct has remained at the heart of unfair competition.  As we said
12      in Weinstock, Lubin & Co. v. Marks, supra, 109 Cal. 529, 541, the principles of
       unfair competition "apply to all cases where fraud is practiced by one in securing
13      the trade of a rival dealer; and these ways are as many and as various as the
       ingenuity of the dishonest schemer can invent."  (See also Schecter Corp. v. United
14      States (1935) 295 U.S. 495, 531 – 532 [55 S. Ct. 837, 843 – 844, 79 L. Ed. 1570, 97
       A.L.R. 974] ["'Unfair competition,' as known to the common law, is a limited
15      concept. . . . Unfairness in competition has been predicated of acts which lie outside
       the ordinary course of business and are tainted by fraud, or coercion, or conduct
16      otherwise prohibited by law." (Fn. Omitted.)].)  For example, in American
       Philatelic Soc. V. Clairbourne (1935) 3 Cal. 2d 689 [46 P.2d 135], the defendant
17      was a stamp dealer with a stock of a stamp rare in perforated form but common in
       unperforated form.  The defendant's stock was in the unperforated form; he
18      perforated the stamps and offered them for sale to other dealers, disclosing that the
       perforations where unofficial but suggesting that they could be resold to collectors
19      as genuine.  Even though the defendant's sales to other dealers were not deceptive,
       this court had no trouble concluding that his sales were ultimately grounded in the
20      deception of the collectors of genuine stamps:  "[T]he conduct of [defendant] in
       offering for sale these privately perforated stamps will inevitably result in severe
21      pecuniary injury to the [plaintiffs], and the gaining by [defendant] of an advantage
       arising out of, in the final analysis, duplicity and dishonesty." (Id. at p. 696.)" *Cel-*
22      *Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* 20 Cal. 4th 163
       at 192-93 (1999).  (Citations and quotations in original).

23

24    Common Law Unfair Competition claims "apply to all cases where fraud is practiced by

25  one in securing the trade of a rival dealer." (*Id.*)  Here, Plaintiff claims its clients include "many of

26  the country's most prominent consumer product manufacturers, advertising agencies, retailers,

27  promotional marketing companies, and Internet portals" (TAC ¶ 10).  To pursue a claim for relief

28  under Common Law Unfair Competition, Defendant must have attempted to secure the trade of

Plaintiff while practicing fraud, coercion or other conduct prohibited by law. Plaintiff's TAC does not claim, nor can Plaintiff truthfully claim that Defendant has ever attempted to secure Plaintiff's trade. No such attempt has ever been made. Plaintiff's TAC makes no mention of any acts by Defendant which could lead any person to believe that Defendant was even remotely interested in securing the trade of "many of the country's most prominent consumer product manufacturers, advertising agencies, retailers, promotional marketing companies [or] Internet portals."

Plaintiff's TAC does not claim Defendant attempted to secure the trade of Plaintiff and Plaintiff can never truthfully make that claim. In order to pursue a claim for relief under Common Law Unfair Competition, Defendant must have attempted to secure Plaintiff's trade and made such an attempt through an act of fraud, coercion or other conduct prohibited by law. Unable to truthfully claim the most basic element, Plaintiff's claim for relief pursuant to Common Law Unfair Competition must be dismissed without leave to amend for failure to state a claim upon which relief may be granted.

### PLAINTIFF'S COMMON LAW TRESPASS TO CHATTELS CLAIM

Plaintiff has asserted no basis for the Court's jurisdiction over its claim against Defendant under Common Law Trespass to Chattels apart from supplemental jurisdiction under 28 U.S.C. § 1367 which evaporates upon dismissal of Plaintiff's 17 U.S.C. § 1201 *et seq*. claims. Accordingly, Defendant moves to dismiss Plaintiff's Common Law Trespass to Chattels claim pursuant to Federal Rules of Civil Procedure 12(b)(1).

### RECOVERY OF COSTS

Pursuant to 17 U.S.C. § 1203(b)(4), Defendant, at the discretion of the Court, is entitled to recover cost from Plaintiff and Defendant moves to recover cost against Plaintiff.

17 U.S.C. § 1203(b)(4) states: "In an action brought under subsection (a), the court. … (4) in its discretion may allow the recovery of costs by or against any party other than the United States or an officer thereof."

Defendant has incurred a great deal of cost associated strictly with the defense of Plaintiff's claims. Had Plaintiff fulfilled its responsibilities to the Court prior to filing this action against Defendant these cost would have never been incurred as none of Plaintiff's claims have an

arguable basis in law.  These costs include, but are not limited to, research fees paid to LexisNexis, travel expenses to and from San Jose, California, parking fees and child care expenses.

As a result of Plaintiff's baseless claims, Defendant was forced to incur costs which he otherwise would not have incurred and at the Court's discretion, Defendant moves to recover the reasonable costs which have been incurred by the Defendant as a result of Plaintiff's claims it has brought against the Defendant.

## CONCLUSION

Plaintiff has completely ignored its responsibilities to the Court and has filed an action against Defendant which is frivolous in an attempt to chill statements made by Defendant and to enjoin Defendant from offering tools which erase files and registry keys from consumer's computers.  Plaintiff's ability to control access to its coupons is crucial to its commercial success (TAC ¶ 13) and it is the protection of its commercial success which has dictated Plaintiff's litigation tactics.  With full knowledge that its technological measure is not protected by the DMCA, Plaintiff regularly threatens litigation against any individual which would publish information explaining how Plaintiff's technology works.  Without exception, until now, each time Plaintiff threatens litigation these individuals cower to Plaintiff's will simply because litigation is too costly.  It is time for Plaintiff to end these tactics.

Plaintiff's technological measure does not effectively control access to its coupons. Plaintiff's access control cannot be defined as a technological measure which protects Plaintiff's rights.  Plaintiff cannot claim Defendant has earned income which rightfully belongs to Plaintiff or that Defendant solicited Plaintiff's clients.  For all of these reasons argued above, Plaintiff's claims against Defendant have no arguable basis in law and must be dismissed without leave to amend.