1  Neil A. Goteiner (State Bar No. 083524)
   Dennis M. Cusack (State Bar No. 124988)
2  Carly O. Alameda (State Bar No. 244424)
   Farella Braun & Martel LLP
3  235 Montgomery Street, 17th Floor
   San Francisco, CA 94104
4  Telephone: (415) 954-4400
   Facsimile: (415) 954-4480
5  E-mail: ngoteiner@fbm.com, dcusack@fbm.com,
   calameda@fbm.com
6
   Attorneys for Plaintiff
7  COUPONS, INC.

8              UNITED STATES DISTRICT COURT

9           NORTHERN DISTRICT OF CALIFORNIA

10                  SAN JOSE DIVISION

11

12 COUPONS, INC.,                          Case No. 5:07-CV-03457 HRL

13              Plaintiff,                  **COUPONS' MEMORANDUM OF POINTS
                                            AND AUTHORITIES IN OPPOSITION TO**
14      vs.                                 **DEFENDANT'S MOTION TO DISMISS
                                            THIRD AMENDED COMPLAINT**
15 JOHN STOTTLEMIRE, and DOES 1-10,
                                            Date:       November 4, 2008
16              Defendants.                 Time:       10:00 a.m.
                                            Courtroom:  2, 5th Floor
17                                          Judge:      Honorable Howard R. Lloyd

18

19

20

21

22

23

24

25

26

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT
STOTTLEMIRE'S MOTION TO DISMISS                              22675\1470554.1
USDC/NDC/SJ 5:07-CV-03457 HRL

Dockets.Justia.com

# TABLE OF CONTENTS

Page

I. INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II. FACTUAL ALLEGATIONS ................................................................................ 1

III. PROCEDURAL HISTORY ................................................................................ 3

IV. ARGUMENT ................................................................................................. 4

    A. Legal Standard ................................................................................... 4

    B. Coupons Adequately Alleges Effective Control Over Access To Its Coupons ................................................................................................ 5

    C. Coupons' System Is An Access Control, Protected By § 1201(a) ...................... 10

    D. Coupons Has Stated A Claim Under Section 1201(b) ........................................ 11

        1. The DMCA Does Not Preclude Liability Under Both 17 U.S.C. § 1201(a) and 17 U.S.C. § 1201(b) For A Particular Circumvention Tool ....................................................................................... 11

        2. Coupons' Technology Protects Its Rights To Control Copying ............... 14

        3. Coupons' Technology Protects Its Rights To Control Distribution .......... 14

    E. Coupons Has Alleged That It Has Suffered Injury In Fact Under Section 17200. ...................................................................................... 15

    F. Coupons Has Alleged A Cause Of Action For Common Law Unfair Competition. ........................................................................................ 15

    G. Stottlemire's Challenge To The Trespass To Chattels Claim Is Necessarily Moot. .................................................................................................. 17

    H. No Basis Exists For Stottlemire To Recover Costs ........................................... 17

V. CONCLUSION ............................................................................................... 17

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT'S
MOTION TO DISMISS THIRD AMENDED
COMPLAINT USDC/NDC/SJ 5:07-CV-03457 HRL

- i -

22675\1731513.1

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*321 Studios v. Metropolitan Goldwyn Mayer Studios, Inc.,*
    307 F.Supp.2d 1085 (N.D. Cal. 2004)...............................................................5

*Bell Atlantic Corp. v. Twombly,*
    127 S.Ct. 1955 (U.S. 2007)...............................................................4

*City Solutions, Inc. v. Clear Channel Commc'ns, Inc.,*
    365 F.3d 835 (9th Cir. 2004)...............................................................16

*Erickson v. Pardus,*
    127 S.Ct. 2197 (U.S. 2007)...............................................................4

*Gilligan v. Jamco Development Corp.,*
    108 F.3d 246 (9th Cir. 1997)...............................................................5

*Graehling v. Village of Lombard, Ill.,*
    58 F.3d 295 (7th Cir. 1995)...............................................................4

*Lexmark International, Inc. v. Static Control Components, Inc.,*
    387 F.3d 522 (6th Cir. 2004)...............................................................7

*Sony Computer Entertainment America, Inc. v. Divineo,*
    457 F.Supp.2d 957 (N.D. Cal. 2006)...............................................................8, 9

*Storage Technology Corp. v. Custom Hardware Engineering & Consulting, Ltd.,*
    2006 U.S. Dist. LEXIS 43690 (D. Mass. June 28, 2006)...............................................................8

*Ticketmaster LLC v. RMG Technologies, Inc.,*
    507 F.Supp.2d 1096 (C.D. Cal. 2007)...............................................................12, 13

*Universal City Studios, Inc. v. Reimerdes, supra,*
    111 F.Supp.2d 294 (S.D.N.Y. 2000)...............................................................5, 6, 8, 11

*Universal City Studios v. Corley,*
    273 F.3d 429 (2d Cir. 2001)...............................................................8

**STATE CASES**

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.,*
    20 Cal.4th 163 (1999)...............................................................17

**FEDERAL STATUTES**

17 U.S.C. § 106...............................................................12

17 U.S.C. § 1201(a)...............................................................passim

17 U.S.C. § 1201(b)...............................................................passim

- ii -

22675\1731513.1

17 U.S.C. § 1203(b)(4)..........................................................................................17

## OTHER AUTHORITY

Fed. R. Civ. Proc. 12(b)(6)......................................................................................4

Wright & Miller, 5B Federal Practice and Procedure: Civil 3d § 1357.......................................4

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT'S
MOTION TO DISMISS THIRD AMENDED
COMPLAINT USDC/NDC/SJ 5:07-CV-03457 HRL

- iii -

22675\1731513.1

# I. INTRODUCTION AND SUMMARY OF ARGUMENT

Stottlemire's motion to dismiss the Third Amended Complaint ("TAC") repeats arguments that the Court has previously considered and rejected. To summarize:

First, while Stottlemire agrees that Coupons' technology, and his efforts to circumvent it, should be reviewed under 17 U.S.C. § 1201(a) as an "access control," he again asserts that Coupons' controls are not "effective." But it's still the law that the technology's effectiveness is legally irrelevant, and at best raises factual issues about how the technology works.

Second, Stottlemire again argues that Coupons' technology does not act as a "rights control" subject to 17 U.S.C. § 1201(b), ignoring the Court's prior ruling that Coupons did state a claim under 17 U.S.C. § 1201(b).

In addition, the language and logic of the DMCA embrace a particular technology, and efforts to circumvent it, falling within both 17 U.S.C. § 1201(a) and § 1201(b). One court in fact expressly held – on facts remarkably similar to those in this case, that liability could be established under both sections. It is therefore singularly appropriate to analyze both Coupons' technology, and Stottlemire's violations, under both sections. Coupon's technology controls access to downloadable authentic coupons, and simultaneously protects Coupons' rights as a copyright owner to control the distribution of the coupons, and their reproduction.

Stottlemire's remaining challenges to Coupons' state law claims are without any merit, as is his request for an award of costs.

It is therefore time to move beyond the parties' allegations about Coupons' innovative technology and demonstrate how it works in practice and how Stottlemire violated the DMCA. We therefore urge the Court to deny Stottlemire's motion to dismiss in its entirety, so that this case can be adjudicated fairly based on a complete factual record.

# II. FACTUAL ALLEGATIONS

Coupons provides on-line, printable coupons to consumers on behalf of advertisers. TAC ¶¶ 9-10. Coupons' clients include prominent consumer product manufacturers, advertising agencies, retailers, promotional marketing companies and Internet portals. *Id.* The coupons are subject to copyright protection under federal law. TAC ¶ 12.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT'S
MOTION TO DISMISS THIRD AMENDED                    - 1 -                    22675\1731513.1
COMPLAINT USDC/NDC/SJ 5:07-CV-03457 HRL

1    Advertisers usually want wide distribution of coupons across the target market. They
2    always want to set and limit the total number available in order to control the total amount of
3    discounts, and therefore the cost, of the marketing program. TAC ¶ 13.
4          Advertisers' goals require Coupons to ensure both wide distribution and control over the
5    total number of coupons available in order to provide a valuable product to its customers. The
6    Third Amended Complaint describes Coupons' technological solution to these challenges and
7    particularly how it monitors and prevents unauthorized printing by: (1) controlling the number of
8    total prints per uniquely identified computer and (2) uniquely identifying each coupon within a
9    particular promotion to ensure each coupon's validity. TAC ¶¶ 13-24, 43. These controls work
10   irrespective of whether the advertiser or Coupons, or both offer the coupons online. TAC ¶¶ 10-
11   11.
12         The Third Amended Complaint further details how Coupons' technology employs
13   security features to control the printing and distribution of coupons. TAC ¶¶ 13-20. In addition
14   to keying the security features to individual computers (rather than to individual consumers), and
15   delivering to each consumer's computer a unique identifier, Coupons' system prevents each
16   computer from printing more than the authorized number of coupons. TAC ¶¶ 15-16. Whenever
17   a computer seeks to have a coupon printed, Coupons' security system sends the computer's
18   unique identifier to Coupons' server for verification. TAC ¶ 16. Coupons' system and
19   technology determine if a computer is authorized to obtain a particular print, and if so, the system
20   transmits the coupon directly to the consumer's printer. *Id.* Thus, the consumer's computer must
21   seek and obtain access each time it asks to have a coupon printed. *Id.* If authorized, the computer
22   prints the coupon, which the consumer can redeem at a local store. TAC ¶¶ 11, 21.
23         The security feature limits coupon prints in two relevant ways. First, Coupons implements
24   a network (or campaign) limit governing how many total coupons of a particular offer can be
25   printed for all consumers. For example, an advertiser may authorize 10,000 of a particular
26   coupon to be printed. Second, Coupons' system limits each uniquely identified computer to a
27   printing maximum for each campaign, usually to two prints. TAC ¶ 20. Once a computer limit is
28   reached, the system prevents any access by that computer to a coupon. TAC ¶ 15. This security

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT'S
MOTION TO DISMISS THIRD AMENDED            - 2 -                           22675\1731513.1
COMPLAINT USDC/NDC/SJ 5:07-CV-03457 HRL

1  feature serves Coupons' and its customers' dual objectives of wide consumer distribution and of

2  preventing and monitoring fraud. TAC ¶¶ 13, 19.

3      In addition, Coupons' system uniquely identifies each print. The copyrighted form of

4  each type of coupon remains the same; however, Coupons' software assigns a unique identifier to

5  each coupon within its bar code. This bar code serves to mark each coupon as the one authentic

6  copy of a copyrighted coupon. Concomitantly, each individual coupon print is one in a

7  numerically limited set of coupons. TAC ¶ 18. This feature helps Coupons to track coupons in

8  order to monitor for fraud and distribution patterns. TAC ¶¶ 13, 17.

9      Defendant Stottlemire created, used and distributed a method and software program to

10  circumvent these security features with the express objective of having consumers print more than

11  their authorized number of unique coupons. TAC ¶¶ 25-42. His scheme was effective, in part

12  because he is an expert in online coupons and software programming. Stottlemire understands the

13  technology of coupons management in general, and many of Plaintiff's coupon generation

14  procedures. TAC ¶¶ 27-41. Coupons believes that Stottlemire owns and operates the online

15  forum called The Coupon Queen (www.thecouponqueen.net), in which consumers discuss and

16  trade coupons (the "Coupon Queen Forum"). TAC ¶ 26. The Coupon Queen Forum advertises

17  coupons for sale in exchange for a handling fee, all to Stottlemire's financial benefit. *Id.*

18  **III.    PROCEDURAL HISTORY**

19      Coupons filed its initial complaint on July 2, 2007 and its first amended complaint on

20  August 29, 2007. On September 24, 2007, Stottlemire filed a motion to dismiss, or in the

21  alternative for summary judgment, a related motion for judicial notice, and a motion for sanctions

22  based on Coupons' unwillingness to withdraw this action. On November 14, 2007, Stottlemire

23  filed an ex parte motion to strike Coupons' opposition to the motion to dismiss. The Court heard

24  the motions on December 4, 2007, and on December 12 the Court denied Stottlemire's motion to

25  strike, denied the motion for sanctions, denied the motion for summary judgment, and denied in

26  part and granted in part the motion to dismiss, with leave to amend. Specifically, leave to amend

27  was granted in order for Coupons to elaborate on allegations demonstrating that Stottlemire's

28  actions were not authorized. *See* Court Order dated Dec. 12, 2007, pp. 6-7. Coupons timely filed

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT'S
MOTION TO DISMISS THIRD AMENDED          - 3 -
COMPLAINT USDC/NDC/SJ 5:07-CV-03457 HRL                           22675\1731513.1

its second amended complaint ("SAC") on December 27, 2007. Stottlemire responded to the

SAC with a second motion to dismiss on February 26, 2008. On March 25, 2008, the EFF filed

its Amicus Brief.

On July 2, 2008, the Court granted in part and denied in part Stottlemire's motion to

dismiss. The Court granted the motion to dismiss the First Cause of Action under 17 U.S.C.

§ 1201(a), with leave to amend. The Order denied the motion to dismiss as to the Second Cause

of Action under 17 U.S.C. § 1201(b). The Third and Fourth Causes of Action, for statutory and

common law unfair competition, were dismissed with leave to amend. The claim for conversion

in the Fifth Cause of Action was dismissed without leave to amend. The motion to dismiss the

claim for trespass to chattels in the Fifth Cause of Action was denied.

Coupons timely filed its Third Amended Complaint on July 22, 2008. Stottlemire's

motions to dismiss and for sanctions followed.

## IV.   ARGUMENT

### A.   Legal Standard

This Court summarized the applicable Federal Rule of Civil Procedure 12(b)(6) standard

to test the legal sufficiency of Plaintiff's claims in its December 12, 2007 and July 2, 2008

Orders. Plaintiff's TAC meets Rule 12(b)(6) standards by alleging enough facts, "to state a claim

to relief that is plausible on its face," and "to raise a right to relief above the speculative level."

*Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (U.S. 2007). The issue is not whether

Coupons will ultimately prevail, but whether Coupons is entitled to offer evidence to support its

claims. *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). Further, it is

beyond cavil that with Stottlemire's demonstrated expertise, the TAC, "give[s] the defendant fair

notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus,* 127

S.Ct. 2197, 2200 (U.S. 2007).[1]

---

[1] Dismissal under Fed. R. Civ. Proc. 12(b)(6) is likely "only in the relatively unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to securing relief"; Rule 12(b)(6) dismissals are especially disfavored "when the

asserted theory of liability is novel…since it is important that new legal theories be explored and assayed in the light of actual facts rather than a pleader's suppositions." Wright & Miller, 5B

Federal Practice and Procedure: Civil 3d § 1357 at 690-692, 701. "A suit should not be dismissed

## B. Coupons Adequately Alleges Effective Control Over Access To Its Coupons

Stottlemire appears to agree that Coupons' system operates as an "access control" such that Stottlemire's conduct should be reviewed under 17 U.S.C. § 1201(a).[2] Stottlemire, however, exhumes an unsuccessful argument from his motion to dismiss the First Amended Complaint: that Coupons cannot allege a technological measure that controls access effectively where the coupons are printed on paper and can be easily photocopied. *See* Defendant's Motion to Dismiss or in the Alternative, for Summary Judgment, filed September 24, 2007, at 4, 7, 9, 14-15. The Court rejected this argument. *See* Order on Defendant's Motion to Strike, etc., December 12, 2007, ("December 12 Order") at p. 5.

This attack, like Stottlemire's previous attacks on the efficacy of Coupons' security measures, is misplaced. The strength of the security measure is legally irrelevant.[3] *See Universal City Studios, Inc. v. Reimerdes*, *supra*, 111 F.Supp.2d 294, 317-318 (S.D.N.Y. 2000); *321 Studios v. Metro Goldwyn Mayer Studios, Inc.*, 307 F.Supp.2d 1085, 1095 (N.D. Cal. 2004) (citing *Reimerdes* for the proposition that CSS "effectively controls access" to a copyrighted work within the meaning of the statute, whether or not it is a strong means of protection). *Reimerdes* stated that a defendant's contention that a security measure did not meet the requirements of section 1201(a)(2)(A) because it was a "weak cipher" was "indefensible as a matter of law." *Id.* at 317. The court clarified that the statute expressly provides that "a technological measure 'effectively controls access to a work' if the measure, in the ordinary course of its operation, requires the application of information or a process or a treatment, with the authority of the copyright owner, to gain access to a work.'" *Id.* at 317-318. A technological measure, therefore, "effectively

---

if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim." *Graehling v. Village of Lombard, Ill.,* 58 F.3d 295, 297 (7th Cir. 1995).

[2] *See* Stottlemire's Notice Of Motion And Motion To Dismiss Plaintiff's Third Amended Comlaint For Failure To State A Claim On Which Relief May Be Granted, filed September 22, 2008 ("Stottlemire's Brief"), at 10:19-20.

[3] Nonetheless, as we previously pointed out in response to Stottlemire's motion for summary judgment, it requires a high degree of technical savvy to know how to find the relevant files and to perform the necessary operations on the computer to locate them. *See* Coupons' Opposition to Stottlemire's Motions to Dismiss, for Sanctions and for Summary Judgment, filed November 13, 2007, at p. 14, and the Weitzman Decl., ¶ 9, cited therein.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT'S
MOTION TO DISMISS THIRD AMENDED         - 5 -                    22675\1731513.1
COMPLAINT USDC/NDC/SJ 5:07-CV-03457 HRL

1  controls access" to a copyrighted work if its function is to control access, *regardless of whether it*

2  *is successful in doing so*. *Id*. at 318. The court stated bluntly:

3         [D]efendants' construction, if adopted, would limit the application
       of the statute to access control measures that thwart circumvention,
4      but withhold protection for those measures that can be
       circumvented. In other words, defendants would have the Court
5      construe the statute to offer protection where none is needed but to
       withhold protection precisely where protection is essential. The
6      Court declines to do so. *Id*.

7  That a user might be able to photocopy a printed coupon, or change computers to obtain more

8  coupons, is irrelevant to the analysis under the DMCA. The fact remains that the ability to gain

9  access to and download a coupon offered on-line is controlled by Coupons' technology.

10        In addition, a coupon is not *legally* obtainable through a photocopy. A store coupon

11 downloaded from Coupons' system states that they are "void if reproduced" or "void if copied"

12 (TAC ¶ 22). Photocopying one would be a clear, direct, unlawful infringement of Coupons'

13 copyright. Thus, there is no *lawful* ability to obtain a coupon through a photocopy.

14        Moreover, Stottlemire's own conduct as alleged in Coupons' TAC and as he tacitly

15 admits, trumps his photocopy argument. If Stottlemire or any of his Coupon Queen customers

16 could have been satisfied with mere photocopies of any printed on-line coupons, we would not be

17 here. Photocopied coupons are different from downloaded coupons, because the photocopy does

18 not have a unique identifier. The unique identifier embedded in each barcode allows Coupons to

19 track each coupon, note unauthorized duplicates, and thus monitor for fraud. TAC ¶¶ 13, 17.

20 Stottlemire went out of his way to create a technology to gain access to on-line coupons, not

21 photocopied coupons. Coupons has properly alleged that Stottlemire aimed his scheme at

22 circumventing Coupons' technological security measures to control access to authentic *on-line*

23 coupons.

24        Stottlemire's second assertion that Coupons' system does not control access since

25 consumers can give away their authentic and unique coupons to a friend is frivolous.

26 (Stottlemire's Brief, at 10.) The gift of a coupon does not create a new copy of the coupon, does

27 not impair any of Coupons' copyrights, and is irrelevant to Coupons' system designed to control

28 access to the original coupon print in the first instance. Stottlemire created a tool to circumvent

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT'S
MOTION TO DISMISS THIRD AMENDED          - 6 -                              22675\1731513.1
COMPLAINT USDC/NDC/SJ 5:07-CV-03457 HRL

Coupons' technology in order to obtain original prints from on-line. That is all that is at issue

here and is fully protected by the DMCA.

Stottlemire's third, and overarching, factual assertion that Coupons leaves "another route

to obtain" its coupons **"wide open and without regard to who is in possession of the work"**

(Stottlemire's Brief, at 9:25-27), does not make it true either as a matter of fact or law,

irrespective of how often he asserts it. The complaint more than adequately alleges that there is

no wide open route for others to obtain possession of authentic coupon printings, except for

Stottlemire's illegal scheme.

Stottlemire's continued reliance on *Lexmark International, Inc. v. Static Control*

*Components, Inc.*, *supra*, 387 F.3d 522 (6th Cir. 2004), remains wholly inapposite. In *Lexmark*, a

printer manufacturer brought an action against the seller of a computer chip used in

remanufactured toner cartridges, alleging a violation of its copyright in a toner loading software

program and violations of the DMCA. *Id*. at 529. Specifically, Lexmark sold toner cartridges for

its printers that only it could refill and that contained a microchip that prevented its printers from

functioning with cartridges it did not refill. *Id*. The defendant chip seller mimicked Lexmark's

computer chip and sold it to companies for use in remanufactured toner cartridges. *Id*. Lexmark

claimed that the chip violated the DMCA by circumventing a technological measure designed to

control access to its toner loading software program. *Id*. The court rejected the argument. *Id*. at

551. The court explained that there were no measures in place to control access to that program.

*Id*. at 546. Rather, anyone who purchased the printer could read the literal code of the program

directly from the printer memory, with or without the help of an authentication sequence. *Id*.

Because no security device was in place to protect access to the program, there was nothing to be

circumvented. *Id*. at 547. In contrast, there is no dispute here that Coupons' system contains a

security device to control access to coupon prints offered on-line.

*Lexmark* made clear that its analysis did not turn on the *degree* to which a measure

controlled access to a work because "a precondition for DMCA liability is not the creation of an

impervious shield to the copyrighted work." *Id*. at 549. Rather its conclusion relied on the fact

that for Lexmark, there was simply nothing to circumvent. *Id*.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT'S
MOTION TO DISMISS THIRD AMENDED          - 7 -                          22675\1731513.1
COMPLAINT USDC/NDC/SJ 5:07-CV-03457 HRL

1    For the same reasons, *Storage Technology Corp. v. Custom Hardware Engineering &*
2    *Consulting, Ltd*., 2006 U.S. Dist. LEXIS 43690 (D. Mass. June 28, 2006), is inapposite.  There, as
3    in *Lexmark*, the plaintiff could in fact point to *no* technology that actually restricted access to the
4    computer code at issue.  This is because "CHE has asserted and STK has not denied that any
5    customer who owns an STK system can access and copy RTD Code."  *Id.* at *25.

6        Here, Coupons has alleged that it has security measures in place to control access to its
7    copyrighted, uniquely identifiable and therefore authentic, coupons.  TAC ¶¶ 13-20.  Those
8    security measures effectively control access to the coupons in their ordinary operation.
9    Stottlemire's assertions about the ability to photocopy (Stottlemire's Brief, at, e.g. 9) ignores
10   those allegations describing the fact that Coupons' technology produces uniquely numbered
11   coupons for download from the Internet (TAC ¶ 17), and it is to *these* coupons that Coupons'
12   technology is designed to control access.

13       Stottlemire mis-cites *Universal City Studios v. Corley*, 273 F.3d 429 (2d Cir. 2001), and
14   *Sony Computer Entertainment America, Inc. v. Divineo*, 457 F.Supp.2d 957 (N.D. Cal. 2006), for
15   the proposition that to succeed under 17 U.S.C. § 1201(a), a plaintiff must show that it controls
16   access to the work even when it is out of its possession.  These cases do not hold or even imply
17   such a rule.  *Corley* upheld the trial court's decision in *Universal City Studios v. Reimerdes*,
18   *supra*, 111 F.Supp.2d 294, 317-318 (S.D.N.Y. 2000).  In *Reimerdes* (and as we discussed above),
19   the court held that "effective control" means whether the *function* of the technology is to control
20   access to the work.  The defendant in that case did not even challenge that ruling on appeal in
21   *Corley*.  There was no discussion whatsoever in either the trial court or the appellate court of the
22   relative ability to control access once the work is out of the owner's possession.

23       The court in *Sony Computer* in fact rejected an argument similar to Stottlemire's.  There,
24   the defendant argued that Sony's authentication process for its computer games did not
25   effectively control access because there were many other ways of getting access to the games
26   through other circumvention devices already out there.  457 F.Supp.2d at 965.  Citing *Reimerdes*,
27   the court held that defendant's argument was illogical, because otherwise the statute would only

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT'S
MOTION TO DISMISS THIRD AMENDED          - 8 -                    22675\1731513.1
COMPLAINT USDC/NDC/SJ 5:07-CV-03457 HRL

1  protect technology that perfectly thwarted circumvention, and withhold protection from

2  technologies "precisely where protection is essential." *Id.*

3       Thus, those decisions support Coupons. Just like in those decisions, by limiting access

4  according to specific computers, and by embedding a unique identifier in each downloaded

5  coupon, Coupons' technology does in fact function to control access to downloadable coupons.

6  This also practically protects copying once the coupon is no longer in Coupons' possession,

7  because the unique identifier makes a downloaded coupon distinguishable from an infringing

8  photocopy. Coupons' system can distinguish the two and make it possible for Coupons to

9  monitor for the unique identifier.

10       Moreover, the encryption technology at issue in *Corley* did not even purport to protect

11  access perfectly once the copyright owner was no longer in possession of the work. For example,

12  an encrypted movie shown on an authorized DVD player can potentially become widely

13  accessible beyond the person authorized to view it. One could video record the movie while it is

14  playing on a screen. One could also rent a hall and invite friends and neighbors, and charge them

15  to view it. Nothing about the encryption technology precludes this unauthorized copying or

16  public performance. It is necessarily imperfect, but serves the purpose for which it is intended.

17  That is all that the DMCA requires, as discussed above (pp. 6-7). If those DVDs could be played

18  in front of hundreds of people and still come within DMCA protection, then surely would

19  Coupons' works with the alleged access controls, even if a consumer photocopied one or gave his

20  coupons to his friend.

21

22

23

24

25

26

27

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT'S
MOTION TO DISMISS THIRD AMENDED         - 9 -                          22675\1731513.1
COMPLAINT USDC/NDC/SJ 5:07-CV-03457 HRL

**C.** **Coupons' System Is An Access Control, Protected By § 1201(a)**[4]

Coupons' system controls access to its coupons in several ways:

Access to each coupon print (even the first) must be requested, authorized and granted. Thus, where the system authorizes a computer to make two prints, the system separately authorizes each of the two prints. TAC ¶¶ 15-16.

Once a unique computer limit is reached, the system denies access to that computer for that coupon. TAC ¶¶ 18-20.

Once a campaign limit is reached, the system denies access to all computers for that coupon. TAC ¶ 20.

Coupons' system only authorizes access for the purpose of delivering a print of the coupon. Without authorization by Coupons' system, the consumer can obtain no access through his/her computer to an authentic copyrighted coupon. Indeed, a coupon is never even separately displayed on the consumer's computer screen. Thus, it is ***not*** the case that access is granted to the coupon, with Coupons' security feature only working to cap the total number of coupons that can be printed.

Stottlemire designed his circumvention software to avoid Coupons' technology for limiting access to the on-line authentic coupons. Specifically, it operates to delete registry files which otherwise identify the unique computer and bar the computer from gaining access to a coupon after the device limit has been reached. TAC ¶¶ 27-31; *and see* Stottlemire's Motion for Sanctions, at 4-5 (describing how his software deleted the registry files containing the

---

[4] Although Stottlemire agrees that Coupons' technology is an "access control" measure subject to 17 U.S.C. § 1201(a), we address this issue in light of the Court's July 2, 2008 Order on Stottlemire's motion to dismiss the Second Amended Complaint. Stottlemire argued in that motion that Coupons' technology acted as an "access control," not a "rights control," and should be analyzed only under 17 U.S.C. § 1201(a). His amicus, Electronic Frontier Foundation (EFF), argued the opposite – that only "rights controls" (i.e., the right to control copying) were at issue and the case should be analyzed under § 1201(b). The Court adopted EFF's view that, as alleged in the Second Amended Complaint, Coupons stated a claim under 17 U.S.C. § 1201(b) but not § 1201(a). The Court focused on the allegations that emphasized the system's restrictions on unauthorized "copying" and concluded that there were insufficient allegations to support a violation of both "access controls" (17 U.S.C. § 1201(a)) and "rights controls" (§ 1201(b)).

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT'S
MOTION TO DISMISS THIRD AMENDED
COMPLAINT USDC/NDC/SJ 5:07-CV-03457 HRL

- 10 -

22675\1731513.1

computer's unique identifier).  Stottlemire did not photocopy coupons; Stottlemire created a program to gain automated, unauthorized access to Coupons' on-line coupons.

Coupons' system therefore operates as an access control like the encryption program at issue in *Universal City Studios v. Reimerdes*, 111 F.Supp.2d 294 (S.D.N.Y. 2000).  In both cases, technology controls the ability to gain any access to the protected work.  In the case of movies on DVDs, the technology controls access for the purpose of displaying the movie on a DVD player.  In Coupons' case, the technology controls access for the purpose of producing prints.  In both cases, though, the technology works to prevent any access to the protected work except as authorized.

As we explain below, that Coupons' technology operates as an access control is perfectly consistent with the technology's operation to protect Coupons' rights as a copyright owner.  Since the only purpose for obtaining access is to obtain a print, the same technology that controls access also controls copying.[5]  In addition, the technology operates separately to protect Coupons' rights as a copyright holder to control distribution of its coupons.

**D.     Coupons Has Stated A Claim Under Section 1201(b)**

**1.     The DMCA Does Not Preclude Liability Under Both 17 U.S.C. § 1201(a) and 17 U.S.C. § 1201(b) For A Particular Circumvention Tool.**

Notwithstanding the Court's July 2 Order, finding that Coupons stated a claim under § 1201(b), Stottlemire argues that Coupons' technology protects *only* access, and nothing else.  Stottlemire is wrong.  Coupons' technology protects, in addition to access, its rights as a copyright owner to control both copying and distribution.

Section 1201(b) prohibits trafficking in technology for the purpose of circumventing measures that protect a right of a copyright owner under Title 17.  The rights of a copyright owner include the exclusive rights to reproduce the copyrighted work in copies, prepare derivative

---

[5] In contrast, in the case of encrypted movie DVDs, access is authorized (or not) for the purpose of displaying it for private viewing, which is not a right separately protected by the copyright laws.

x

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT'S
MOTION TO DISMISS THIRD AMENDED                    - 11 -                    22675\1731513.1
COMPLAINT USDC/NDC/SJ 5:07-CV-03457 HRL

1  works, distribute copies of the work, perform the work publicly, or display the work publicly. 17

2  U.S.C. § 106.

3      We acknowledge that section 1201(a) is intended to protect technological measures that

4  control access to a protected work, and section 1201(b) is intended to protect technological

5  measures that allow access but protect the rights of a copyright owner. Nothing in the statutes

6  themselves, or their legislative history, purports to preclude the possibility that a particular

7  technology, and the methods of circumventing it, could implicate both statutes. Congress could

8  not have, and did not purport to, imagine all possible technologies and how they might implicate

9  a copyright owner's several different rights (i.e., to copy, distribute, perform, display or prepare

10  derivative works). None of the legislative history comments, or dicta in the cases cited by

11  Stottlemire, remotely suggests that the two sections are mutually exclusive, regardless of the

12  technology at issue. To the contrary, the legislative history explicitly leaves room for technology

13  coming within both sections.[6]

14      One court, in fact, found that the same circumvention method violated both § 1201(a) and

15  § 1201(b). In *Ticketmaster LLC v. RMG Technologies, Inc.*, 507 F.Supp.2d 1096 (C.D. Cal.

16  2007), Ticketmaster claimed that defendants circumvented the technological security measure

17  utilized to prevent purchasers from using automated devices to purchase tickets over its website.

18  *Id*. at 1102. Ticketmaster sought a preliminary injunction based on five claims, including a

19  violation of the DMCA. *Id*. at 1104. The court held that Ticketmaster was likely to succeed on

20  its DMCA claim under both 17 U.S.C. § 1201(a) and § 1201(b).

21      Ticketmaster's claims for liability under both sections of the DMCA were premised on

22  the same factual allegations. A user navigating the ticketmaster.com website accesses webpages

23  in order to complete ticket purchases, subject to a license agreement. *Id*. at 1102. "[W]henever a

24  webpage is viewed on a computer, copies of the viewed pages are made and stored on the

25  viewer's computer." *Id*. at 1105.

26

27  [6] *See* Stottlemire's Brief, at 11-12, quoting *S. Rep. No. 105-190* at 12 (1998): "The two sections
   are not interchangeable and *many* devices will be subject to challenge only under one of the

28  subsections…" (emphasis added).

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT'S
MOTION TO DISMISS THIRD AMENDED          - 12 -                          22675\1731513.1
COMPLAINT USDC/NDC/SJ 5:07-CV-03457 HRL

1    Ticketmaster's claims for violation of both 17 U.S.C. § 1201(a) and § 1201(b) were

2    premised on the same automated process of viewing, and thus simultaneously copying, webpages.

3    The court held that plaintiff was likely to prevail on the § 1201(a) "access control" claim because

4    the plaintiff employed technological measures to block automated access to its webpages,

5    defendant's system automated access to those webpages without authorization, and the access

6    infringed plaintiff's rights because it allowed copying of the webpages beyond what was

7    authorized. *Id*. at 1111-1112. This same conduct, the court held, violated 17 U.S.C. § 1201(b)

8    "because Ticketmaster's technological measure "both controls access to a protected work because

9    a user cannot proceed to copyright protected webpages without solving [the technological

10   measure], *and protects rights of a copyright owner because, by preventing automated access to*

11   *the ticket purchase webpage, [the technological measure] prevents users from copying those*

12   *pages*." *Id.* at 1112-13 (emphasis added).

13       In *Ticketmaster*, then, the technological measure and corresponding circumvention

14   method addressed the ability to access and simultaneously copy copyrighted webpages. Here,

15   Coupons' system, and Stottlemire's circumvention software, address the ability to access and

16   simultaneously print copyrighted coupons. There is no meaningful distinction under the DMCA

17   between the technology and circumvention issues in *Ticketmaster* and this case. Both sections of

18   the DMCA are violated by the same conduct.

19       The result in *Ticketmaster*, finding claims viable under both sections, did not turn on the

20   non-exclusive license at issue in that case, as suggested in the Court's July 2 Order (at 4 n.5).

21   The license merely defined, for purposes of § 1201(a) liability, whether access was authorized or

22   not. Coupons similarly has alleged lack of authorization. TAC ¶¶ 22-24, 29-30, 34, 36, 39-40,

23   42, 51-53 (including in contravention of an express license agreement). *Ticketmaster* reached the

24   result it did because the technology at issue simultaneously controlled access and copying. There

25   is no reason to reach a different result here.

26       The Third Amended Complaint clarifies why Coupons' particular technology acts as both

27   an "access control" and a "rights control" with respect to the downloadable coupons. We explain

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT'S
MOTION TO DISMISS THIRD AMENDED
COMPLAINT USDC/NDC/SJ 5:07-CV-03457 HRL

- 13 -

22675\1731513.1

1    above why Stottlemire's circumvention software violates § 1201(a). Because Coupons'

2    technology also serves as a "rights control," Stottlemire's conduct also violates § 1201(b).

3        **2.    Coupons' Technology Protects Its Rights To Control Copying.**

4        As in *Ticketmaster*, Coupons' technology simultaneously controls the ability to access and

5    to reproduce a coupon. When access is granted to particular computer, it is granted solely for the

6    purpose of reproducing in print one authentic coupon. A particular computer, once identified, is

7    typically granted authorized access no more than twice, to enable it to obtain no more than two

8    prints of a coupon. In Coupons' system, the same technology serves both to control access and to

9    control Coupons' right to limit the number of authentic, uniquely identifiable prints. Stottlemire's

10   software thus simultaneously circumvents a control over access and a control over Coupons'

11   rights to control printing and distribution. As discussed above, no statutory interpretation or

12   decision suggests that Stottlemire's circumvention violates either 17 U.S.C. § 1201(a) or

13   § 1201(b), but not both.

14       **3.    Coupons' Technology Protects Its Rights To Control Distribution.**

15       Coupons' technology keys its limitations on access and printing to an individual uniquely

16   identified computer, as opposed to an individual person. TAC ¶ 15. The purpose of imposing

17   limits on the ability of any one person to print a particular coupon is to ensure wide distribution of

18   coupons among the target market. Coupons determined that limits keyed to an identifiable

19   individual were not effective, and raised privacy concerns. TAC ¶ 18. Coupons therefore

20   developed technology that identifies an individual computer, and keys access and print limits to

21   that computer. *Id*. While an individual could, in theory, go from computer to computer to access

22   and print the same coupon many times over, the effort is impracticable. *Id*.

23       The technology also uniquely identifies each printed coupon. TAC ¶ 17. This serves to

24   mark each coupon as an authentic print of a copyrighted coupon, in much the same way that

25   authorized lithographs of a copyrighted painting may be numbered. *Id*. Because coupons can

26   then be identified and tracked by their unique barcodes, Coupons' system is able to monitor the

27   coupons for distribution patterns and for fraud.

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT'S
MOTION TO DISMISS THIRD AMENDED          - 14 -                          22675\1731513.1
COMPLAINT USDC/NDC/SJ 5:07-CV-03457 HRL

The computer-keyed limitations on access and printing, and the unique identifier embedded in the coupons, together protect Coupons' right as a copyright owner to control distribution of the coupons. Stottlemire's circumvention technology permits an individual from a single computer to print more authentic copies of the coupon than the device limit allows, in theory up to the "campaign limit"[7] for the coupon. Because each coupon offer has a campaign limit, each print of an authentic coupon depletes the number of prints available for others who might wish to obtain prints. Stottlemire's circumvention software thus concentrates authentic coupons in individual hands in a way that Coupons' technology otherwise would not allow, interfering with Coupons' right to control distribution of the coupons. *See* TAC ¶¶ 56-62.

### E. Coupons Has Alleged That It Has Suffered Injury In Fact Under Section 17200.

Stottlemire's objection that Coupons has not alleged injury in fact makes no sense. (Stottlemire's Brief, at 16.) The TAC plainly alleges that Stottlemire's actions "required Plaintiff to undertake *expensive and time-consuming corrective measures*, required management to *expend time and resources* responding to industry concerns, and required Plaintiff to *expend attorneys fees and costs* to protect their system." TAC ¶ 67 (emphasis added). These allegations sufficiently allege injury in fact and lost money and property.[8] Discovery will quantify the actual money expended out of pocket for attorneys fees and costs, company resources (both money and property), and wasted employee productivity as a result of Stottlemire's actions.

### F. Coupons Has Alleged A Cause Of Action For Common Law Unfair Competition.

Stottlemire repeats another rejected argument: that Coupons has not alleged the elements of a cause of action for common law unfair competition. The only defect the Court found in Coupons' Second Amended Complaint is that Coupons did not clearly allege that Stottlemire

---

[7] The total number of prints of a particular coupon offer available for all computers across the Internet community. TAC ¶ 20.

[8] Indeed, in its July 2, 2008 Order (at 8), the Court granted Coupons leave to amend this cause of action because allegations that, for example, Coupons expended time and money on corrective measures would resolve any deficiency in the pleading.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

1   himself (as opposed to Doe defendants) engaged in a "business."  *See* July 2, 2008 Order at p. 8.

2   The TAC alleges that Stottlemire himself is an owner of The Coupon Queen, through which

3   Stottlemire engages in the business of trading in store coupons.  TAC ¶¶ 26, 69-73.

4          The Court previously rejected Stottlemire's argument that Coupons did not allege the

5   elements of a common law unfair competition claim[9] for good reason.  Coupons alleges that it

6   expended significant time and money in developing its online Coupons system and the associated

7   coupon printing system.  TAC ¶ 43, 72.  Stottlemire promoted his circumvention scheme and

8   software over his Coupon Queen online forum.  TAC ¶¶ 25-45, 71.  Coupons alleged that its print

9   restrictions are critical to the integrity and desirability of Coupons' technology and to Coupons'

10  business reputation.  Stottlemire's scheme injured that integrity, desirability and business

11  reputation.  His misappropriation of coupons for himself and his customers/followers reduced the

12  number of coupons available to legitimate coupon users, interfered in the intended distribution

13  system for the coupons, undermined confidence in Coupons' technology, and also required

14  Coupons to undertake expensive corrective measures.  TAC ¶ 72.  The allegations of the TAC are

15  sufficient to put Stottlemire on notice of the basis of his potential liability.

16         Stottlemire is disingenuous when he suggests he never "attempted to secure the trade of

17  Plaintiff while practicing fraud, coercion or other conduct prohibited by law."  (Stottlemire's

18  Brief, at 17-18.)  Coupons is in the business of distributing coupons, on behalf of advertisers.

19  TAC ¶¶ 9-10, 14.  Stottlemire is in the business of distributing coupons, on behalf of coupon

20  users.  TAC ¶ 26.  It does not matter that Stottlemire's customers are not the advertisers.

21  Stottlemire is still attempting to distribute coupons by using fraud (deceiving Coupons' system

22  into believing that one computer is actually many different computers) and by violating the

23  DMCA to divert coupons from Coupons' distribution channels to his own.  Stottlemire is doing

24

25  ───────────────

26  [9] The elements of the tort of unfair competition under California law are:  "(1) that [a plaintiff]
    had invested substantial time, skill or money in developing its property; (2) that [a defendant]
    appropriated and used [plaintiff's] property at little or no cost; (3) that [defendant's] appropriation
27  and use of [plaintiff's] property was without the authorization or consent of [plaintiff]; and
    (4) that [plaintiff] could establish that it has been injured by [defendant's] conduct."  *City*
28  *Solutions, Inc. v. Clear Channel Commc'ns, Inc.,*  365 F.3d 835, 842 (9th Cir. 2004).

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT'S
MOTION TO DISMISS THIRD AMENDED                    - 16 -                       22675\1731513.1
COMPLAINT USDC/NDC/SJ 5:07-CV-03457 HRL

so through his business, Coupon Queen.  This conduct sufficiently alleges a claim for common law unfair competition.[10]

### G. Stottlemire's Challenge To The Trespass To Chattels Claim Is Necessarily Moot.

Stottlemire's only challenge to the trespass to chattels cause of action is premised on the assumption that the DMCA claims will be dismissed, leaving nothing to which to append the common law claims pursuant to the Court's supplemental jurisdiction.  The DMCA causes of action are sound; therefore, the Court must reject this aspect of the motion to dismiss.

### H. No Basis Exists For Stottlemire To Recover Costs.

The DMCA causes of action are sound, and remain to be adjudicated.  No basis exists, therefore, for a recovery of costs under 17 U.S.C. § 1203(b)(4).

We address separately Stottlemire's Motion for Sanctions in our Opposition to that motion.

## V. CONCLUSION

For the reasons stated above, Coupons respectfully requests that the Court deny Defendant Stottlemire's motion to dismiss the Third Amended Complaint.


Dated:  October 7, 2008                          FARELLA BRAUN & MARTEL LLP


                                                  By:  ___/s/_____
                                                            Dennis M. Cusack

                                                  Attorneys for Plaintiff
                                                  COUPONS, INC.


---

[10] *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163 (1999), says nothing to support Stottlemire's argument.  First, Stottlemire quotes from the concurring and dissenting opinion of Justice Kennard, not the opinion of the court.  Second, common law unfair competition was not an issue in that case.

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

COUPONS' MPA IN OPP. TO DEFENDANT'S
MOTION TO DISMISS THIRD AMENDED                - 17 -                    22675\1731513.1
COMPLAINT USDC/NDC/SJ 5:07-CV-03457 HRL