1  John A. Stottlemire
   4509 Wayland Court
2  High Point, NC 27265
   Telephone: (614) 358-4185
3  Email: johna@stottlemire.com
   Defendant, *pro se*

4

5                    UNITED STATES DISTRICT COURT

6                  NORTHERN DISTRICT OF CALIFORNIA

7                        SAN JOSE DIVISION

8  COUPONS, INC., a California corporation,  )  Case No. 5:07-CV-03457 HRL
                                             )
9              Plaintiff,                     )  **DEFENDANT'S NOTICE OF MOTION
                                             )  AND MOTION TO SUMMARILY
10                 v.                         )  ENFORCE SETTLEMENT AGREEMENT**
                                             )
11 JOHN STOTTLEMIRE                           )  Date:       February 24, 2009
                                             )  Time:       10:00 AM
12             Defendant                      )  Courtroom:  2, 5th Floor
                                             )  Judge:      Hon. Howard R. Lloyd
13                                            )
                                             )
14 _____

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO SUMMARILY ENFORCE SETTLEMENT AGREEMENT
No. 5:07-CV-03457 HRL                                                    - i -

Dockets.Justia.com

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on February 24, 2009, at 10:00 a.m., before the Honorable Howard R. Lloyd, United States Magistrate Judge, in Courtroom 2, 5th Floor, 280 South 1st Street, San Jose, California defendant John Stottlemire ("Stottlemire") will move for an order summarily enforcing the parties' settlement. The motion will be made on the ground that the Plaintiff Coupons, Inc. ("CI") and Stottlemire entered into a binding and enforceable settlement of this matter in its entirety on November 13, 2008, and the court has the power to summarily enforce the settlement.

The motion will be based upon this notice of motion and motion, the accompanying memorandum of points and authorities, the Declaration of John Stottlemire, and upon such other oral or documentary evidence as may be presented at the hearing of this motion.

Respectfully submitted,

Dated: January 20, 2009

_____ /s/ _____
John Stottlemire
Defendant, *pro se*

**INTRODUCTION**

CI and Stottlemire ("the parties") settled this matter in its entirety on November 13, 2008

pursuant to Early Neutral Evaluation ("ENE") with the evaluator, Harold McElhinny.  The parties

have an enforceable settlement.  Yet, apparently motivated by settlor's remorse, CI is attempting to

renege on the settlement by claiming Stottlemire committed a material breach of the settlement

agreement.

One of the settlement terms included the parties' agreement that the terms of the settlement

would remain confidential.  CI claims Stottlemire caused a material breach in the confidentiality

term of the agreement by disclosing facts which would become public knowledge.  Claiming

Stottlemire materially breached the confidentiality term of the agreement, CI informed the Court

that it had rescinded the agreement on November 24, 2008.  CI has made no other claims against

Stottlemire in its justification for rescinding the settlement agreement.

Under well-established law, a party has no authority to rescind a contract when the terms of

the contract preclude rescission.  CI told Stottlemire on November 17, 2008 that it intended to

make public that it was dismissing this action against Stottlemire, and that the dismissal was with

prejudice.  On November 26, 2008, CI informed Stottlemire that it was "fine with making

everything public regarding the settlement."  CI made this admission without restriction.  In this

light, CI claims as a result of Stottlemire posting a single comment on his website and releasing

information which allegedly made public the terms of the settlement it has rescinded the settlement

agreement and now proceeds with its litigation against Stottlemire.  Even if all of CI's claims

(detailed *infra*) were true, CI interpreted the terms of the settlement agreement and concluded

"regardless of what happens in the future", the settlement agreement remains in full force and in

effect.  Stottlemire therefore requests the Court grant this motion to enforce summarily the parties'

settlement.

**FACTS REGARDING SETTLEMENT**

**A.      CI's Previous Attempts to Settle**

Prior to ENE, CI sought settlement on multiple occasions.  As a term to settlement CI

demanded Stottlemire promise he not manufacture, offer or use any technology or service to

circumvent the technological measures CI put into place to limit the number of prints for its online coupons. CI's technological measure places limits on the number of times a consumer can print coupons. This limitation is based upon the number of computers a consumer has access to. CI does not attempt to limit the individual consumer. Thus, Stottlemire has always believed that use of technology which prevents CI from identifying consumer's computers is not in violation of any law. Stottlemire has refused to settle this litigation with CI unless CI remove the term from the settlement agreement.

**B.     Stottlemire's Misgivings Towards Settlement**

In addition to the above, Stottlemire has always thought CI's decision to file this action with the Court has been an act of malicious prosecution and abuse of process. Stottlemire has, on several occasions, informed CI that to settle this matter CI must agree to compensate Stottlemire. Stottlemire sought damages he would receive if Stottlemire were to file and ultimately prevail on an action of malicious prosecution. CI has always stated it would not compensate Stottlemire. Settlement discussions have never proceeded beyond this disagreement.

CI claims Stottlemire gave up his claim for malicious prosecution when the Court denied Stottlemire's Motion to Dismiss CI's Third Amended Complaint. CI bases this claim on the lack of demands by Stottlemire during the seven day period between the Court's order denying Stottlemire's motion and the parties' participation in ENE. CI's presumptions are inaccurate. Until the parties settled this matter at ENE, Stottlemire continued to request on his personal blog that CI compensate him for a possible action of malicious prosecution. Simply because Stottlemire did not repeat his demands to CI verbally does not indicate Stottlemire had abandoned his claim.

**C.     Stottlemire's Motivation to Settle**

Stottlemire became motivated to settle this action because of his relocation to North Carolina. One day after the Court ruled on his motion to dismiss, Stottlemire's wife was offered and accepted a position for employment in North Carolina. During the next six days, while preparing for ENE, Stottlemire had numerous in depth discussions with his wife in regards to settlement with CI. Stottlemire and his wife decided, if CI were to accept terms which did not

include any promises by Stottlemire then Stottlemire would settle this lawsuit with CI. Stottlemire and his wife made this decision based upon the amount of resources it would require should Stottlemire continue litigation with CI while living in North Carolina.

**D.     The Settlement**

In this light, during ENE, Stottlemire offered to settle the litigation. The terms Stottlemire offered CI were (1) Stottlemire would stipulate to a dismissal with prejudice if (2) CI would agree to keep the terms of the settlement confidential. CI countered Stottlemire's offer to settle. CI stated they would settle under Stottlemire's proposed terms if Stottlemire would agree not to pursue an action against CI for malicious prosecution. Stottlemire had full knowledge that an action against CI for malicious prosecution could only be pursued if the lawsuit was terminated favorably in Stottlemire's favor. Settlement of the lawsuit does not qualify as being terminated in Stottlemire's favor so Stottlemire agreed and the parties settled.

The final terms the parties agreed to are: (1) CI would dismiss this action against Stottlemire with prejudice, (2) Stottlemire agreed to stipulate to the dismissal, (3) CI and Stottlemire would exchange mutual general releases in standard form, (4) CI and Stottlemire would bear their own individual attorney's fees and costs, and (5) the terms of the settlement would remain confidential. (See Attachment A, hereto).

**E.     Actions After Settlement**

On November 14, 2008, CI filed with the Court a letter. The letter stated in part (1) the parties participated in a successful ENE, and (2) the parties had signed an agreement to settle. (Docket number 110).

On November 17, 2008, via email, CI sent Stottlemire two documents. The documents were titled "Mutual Release of Claims" (hereinafter "Release") (Attachment B, hereto) and "Stipulation for Dismissal with Prejudice Pursuant to Settlement Agreement" (hereinafter "Stipulation") (Attachment C, hereto). The email received by Stottlemire stated that once CI and Stottlemire agreed on final wording of the documents an exchange of signatures would take place on the Release and then the Stipulation would be filed (See *Stottlemire Declaration* ¶ 3). CI made no indication they would file the Stipulation under seal or that the Stipulation would be redacted.

Stottlemire had every reason to believe the Stipulation would be filed in the same manner as all other documents have thus been filed and the public would have access to them. In this light, Stottlemire believed with good cause either (1) CI's agreement to dismiss this action against Stottlemire with prejudice was not subjected to the confidentiality clause of the settlement agreement, or (2) CI was requesting an alteration of the settlement agreement whereby allowing the parties to disclose to the public CI was dismissing this action against Stottlemire with prejudice. Stottlemire believed this since it would be impossible for the parties to file the Stipulation without the public having complete access to the information contained therein. A short 17 minutes after receiving the documents, Stottlemire responded to CI and requested the Release be edited (See *Id*. ¶ 4). The edits Stottlemire requested were limited to a clause that neither party had previously assigned its claims to any third party and that CI defend, indemnify and hold harmless Stottlemire (See *Id*.). Stottlemire did not request any changes to the Stipulation and agreed the Stipulation would be filed in the same manner as all previous documents had been filed, thus, the public would have unrestricted access to the document and its contents.

On November 19, 2008, Stottlemire posted an entry to his blog. The entry Stottlemire posted stated:

> "As long as Coupons, Inc. complies with the confidential settlement agreement, the action against me will be dismissed with prejudice. Dismissal with prejudice means that Coupons, Inc. will be unable to file this action again. The letter Coupons, Inc. sent the Court to confirm the above can be viewed here: Link (PDF)."

If a visitor to Stottlemire's blog clicked on the "Link (PDF)" hyperlink, the visitor would have seen a copy of the letter CI sent the Court on November 14, 2008 (Docket number 110) (See *Stottlemire Declaration* ¶ 5). As a result of posting this entry to Stottlemire's blog, Stottlemire caused a copy of the entry to be mailed to persons who subscribe to his blog. One person who received the email was David Kravets, a wired.com journalist.

Also, on November 19, 2008, CI emailed Stottlemire and informed Stottlemire they could not and would not agree to the defend, indemnify, and hold harmless clause Stottlemire requested. CI attached a copy of its revised Release (Attachment D hereto) to the email and told Stottlemire that they would file the previously agreed upon Stipulation *as soon as* they received Stottlemire's

signature on the Release. Within 40 minutes of receiving the email from CI, Stottlemire signed and sent the Release to CI via email (See *Stottlemire Declaration* ¶ 6, 7).

On November 20, 2008, David Kravets, the wired.com journalist, called Stottlemire and requested he comment further on the blog entry he had received. Stottlemire told David Kravets that he was unable to discuss the terms of settlement since they were confidential but would answer any other questions he had. During his conversation with David Kravets, Stottlemire made clear (1) the Court did not rule on the issues surrounding the litigation, and (2) CI upgraded their software in December 2007 and the instructions which were central to the litigation no longer had any effect on the number of coupons consumers could print through CI's website. David Kravets responsibly reported both of these points when he published his blog entry at wired.com's website (*Id.* ¶ 8). In addition to the points above, Stottlemire was asked to provide an overview of the litigation. Stottlemire's statement released to David Kravets and ultimately published stated:

> "Without being represented by an attorney, I defended myself in federal court against a company who solicited the services of two separate law firms, and in my opinion, I kicked their ass. By refusing to succumb to their bullying tactics, I continued to assert my innocence and fought the claims Coupons, Inc. filed against me."

The statement does not disclose any term of the settlement agreement, instead the statement describes Stottlemire's opinion of his performance during the entire course of litigation as a *pro se* defendant (*Id.* ¶ 9).

On November 21, 2008, Wendy Davis, a journalist with mediapost.com, contacted Stottlemire and asked Stottlemire to comment on the litigation after she had read the posting made by David Kravets at wired.com. Wendy Davis' questions to Stottlemire were limited is scope to Stottlemire's *pro se* status. As a result of the conversation, Wendy Davis posted an entry to mediapost.com where Stottlemire is quoted as saying: "I knew I was right, and I couldn't afford an attorney. I spent many nights in front of the computer researching case law and writing briefs and rewriting briefs." The mediapost.com blog entry also responsibly reported (1) the Court did not rule on the merits of the case and the Court did not decide if Stottlemire's actions violated the DMCA, and (2) CI changed its software so that Stottlemire's instructions central to this lawsuit no

longer had any effect on the number of coupons a consumer could print from CI's website (*Id*. ¶ 10).

Also, on November 21, 2008, Stottlemire emailed CI. Stottlemire's email to CI stated that he had signed and returned the Release as per the agreement and inquired as to when CI planned to file the Stipulation. In reply to Stottlemire's email, CI stated that Stottlemire had breached the confidentiality term of the settlement agreement by (1) Stottlemire's comment on his website, (2) Stottlemire's statement that he "kicked ass", (3) Stottlemire disclosing that the case was dismissed with prejudice, and (4) Stottlemire's direct or indirect communication with various bloggers (*Id*. ¶ 13). CI also stated that it would not file the Stipulation unless Stottlemire agreed to repair the alleged breach. To repair the breach, CI demanded Stottlemire release a statement which would be authored by CI. The statement CI demanded Stottlemire release would have required Stottlemire to mischaracterize the litigation, make admissions which were untrue and interpret previous orders by the Court in a manner which could not be construed as factual interpretations. As an example, CI required Stottlemire to "specifically explain the court's of how and why both sections 1201(a) and section 1201(b) [of Title 17] are applicable" (*Id*) although the Court's decision limited its analysis of CI's claims and stated that CI should be given a chance to prove both sections of Title 17 are applicable.

Consequently, Stottlemire and CI exchanged several emails over the next four days. Stottlemire held that, as a result of CI's decision to file the Stipulation in a manner which would allow the public complete access to the Stipulation. Stottlemire was authorized to announce the Stipulation would be filed and the contents of the Stipulation. Claiming Stottlemire's argument was without merit, CI analyzed the Release Stottlemire signed and stated that even if CI had breached the agreement as Stottlemire had contended, the agreement remained in full force and Stottlemire was not authorized to release facts he had released. CI argued Stottlemire "signed a mutual release which provided that Coupons and Stottlemire each further represent, warrant and agree that the Settlement Agreement shall remain in full force, and in effect, notwithstanding the occurrence of any possible changes or differences in material fact. [Stottlemire] represented and

warranted that [he] would maintain the confidentiality, regardless of what happens in the future." (*Id.* ¶ 14).

CI's own analysis of the Release agreed upon by CI and Stottlemire require that CI uphold its contractual obligations. CI must file the Stipulation and release Stottlemire from all claims related to this action. CI agreed to a Release which provided that CI and Stottlemire each further represent, warrant and agree that the Settlement shall remain in full force, and in effect, notwithstanding the occurrence of any possible changes or differences in material fact. CI represented and warranted that it would file the Stipulation and release Stottlemire from all claims regardless of what happens in the future.

## LEGAL ANALYSIS

**A.     The District Court has the Equitable Power to Summarily Enforce the Agreement to Settle**

It is well settled that a district court has the equitable power to summarily enforce an agreement to settle a case pending before it. *Callie v. Near*, 829 F.2d 888 at 890 (9th Cir. 1987). Complete settlement agreements are those where there is no disputed "material facts concerning the existence or terms of an agreement to settle." *Id.*

In the present matter, the existence and terms of the agreement to settle are indisputable. The parties reached a complete settlement agreement on November 13, 2008 and there were no material terms left to be negotiated: the parties agreed that CI would dismiss the lawsuit with prejudice, that Stottlemire would stipulate to the dismissal, that CI and Stottlemire would release one another from all known and unknown claims, that each party would bear their own costs and that the term of the agreement would remain confidential. There is no need for an evidentiary hearing where material facts concerning the existence or terms of an agreement to settle are not in dispute. *Doi v. Halekulani Corp.*, 276 F.3d 1131 at 1138 (9th Cir. 2002). Here, both parties have admitted to the existence of the settlement on numerous occasions and neither party can deny that it signed the agreement during the ENE conducted on November 13, 2008. Since both parties made representations to the court that agreement had been reached, there can be no factual dispute that the settlement had been consummated, and the court is empowered summarily to require the

parties to comply with their representations without holding a hearing. *See Id.* at 1139, citing *Vari-O-Matic Machine Corp. v. New York Sewing Machine Attachment Corp.*, 629 F. Supp. 257 at 259 (S.D.N.Y. 1986).

The authority of a trial court to enter a judgment enforcing a settlement agreement has as its foundation the policy favoring the amicable adjustment of disputes and the concomitant avoidance of costly and time consuming litigation. *Dacanay v. Mendoza*, 573 F.2d 1075 at 1078 (9th Cir. 1978). Agreements settling litigation are "solemn undertakings, invoking a duty upon the involved lawyers, as officers of the court, to make every reasonable effort to see that the agreed terms are fully and timely carried out." *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368 at 1372 (6th Cir. 1976). Public policy strongly favors settlement of disputes without litigation. *Id.*

**B.     A Settlement Agreement is a Contract under California Law**

An agreement to settle a federal case is a contract governed by the applicable state law. See *Kokkonen v. Guardian Life Insurance Co. of Am.*, 511 U.S. 375 at 381, 128 L.Ed. 2d 391, 114 S. Ct. 1673 (1994). Under California law, a settlement agreement is a contract, and the legal principles which apply to contracts generally apply to settlement contracts. *Gorman v. Holte*, 164 Cal. App. 3d 984 at 988 (1985); *Jeff D. v. Andrus*, 899 F.2d 753 at 759 (9th Cir. 1989) ("An agreement to settle a legal dispute is a contract and its enforceability is governed by familiar principles of contract law."). Compromise settlements are governed by the legal principles applicable to contracts generally. *T.M. Cobb Co. v. Superior Court*, 36 Cal. 3d 273 at 280 (1984).

"A settlement agreement is treated as any other contract for purposes of interpretation." *United Commer. Ins. Serv. v. Paymaster Corp.*, 962 F.2d 853 at 856 (9th Cir. 1992). Under California law, the determination of the existence or terms of an agreement is made by reference to the objective intent of the parties. *United Commercial Ins. Serv., Inc.*, 962 F.2d at 856. Objective intent is "the intent manifested in the agreement and by surrounding conduct[,] rather than the subjective beliefs of the parties." *Id.* In other words, the parties' "outward manifestation or expression of assent is controlling." *Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832 at 851, 89 Cal. Rptr. 2d 540 (1990). Here, the parties' objective intent in the settlement agreement and surrounding conduct indisputably shows the existence and terms of the settlement reached on

November 13, 2008.  Moreover, in CI's letter to the Court on November 14, 2008, CI informed the Court that it settled the case.

**C.    Parties Cannot Escape Their Obligation By Refusing to Sign a More Formal Writing Required by the Terms of the Settlement**

Where "the terms of the contract are in the first instance definitely agreed upon and completed, then the mere fact that immediately thereafter they agree to evidence the contract by a written instrument does not interfere with the force and effect of the oral agreement." *Nolte v. Southern California Home Bldg. Co.*, 28 Cal.App.2d 532 at 535 (1938).  In the case of *Fly v. Cline*, 49 Cal.App.414 at 425 (1920) the court, in commenting upon an oral settlement agreement, said:

> "It may be condeded that where the minds of the parties have met respecting the terms and conditions of the more formal writing that is to be executed by them, and the agreed terms of the contract thereafter to be executed are certain and in all respects definitely understood and agreed upon in advance, either orally or by informal writing, there is in such case an obligatory contract dating from the making of the earlier agreement."

Parties cannot escape their obligation by refusing to sign a more formal writing required by the settlement. *Alipo v. Secretary of the U.S. Army*, 1998 U.S. Dist. LEXIS 6360 (N.D. Cal. 1998). Here, like *Alipo*, the parties reached an enforceable agreement, that is, their agreement was complete.  While the parties signed the Settlement Agreement, CI's refusal to sign the formal Release is not a legitimate basis for the Court not to enforce the settlement.

A litigant can no more repudiate a compromise agreement than he could disown any other binding contractual relationship, *Dacanay v. Mendoza*, 573 F.2d 1075 at 1078 (9th Cir. 1978). Here, the November 13, 2008 Settlement Agreement signed by the respective parties confirm acceptance of the Settlement Terms:  CI agreed to dismiss the lawsuit with prejudice it had filed against Stottlemire; Stottlemire agreed to stipulate to the dismissal; CI and Stottlemire agreed to sign a complete release of all claims known and unknown; CI and Stottlemire agreed to bear their own costs associated with the lawsuit; and CI and Stottlemire agreed to keep the terms of the settlement confidential.

CI also filed a letter with the Court, affirming the settlement and informing the Court that a more detailed settlement would be executed shortly. The letter did not state that the parties merely had an agreement in principal, or were engaged in further settlement negotiations. Rather, CI stated, through its attorney of record, that it settled. The agreement to execute a more detailed settlement, and the exchange of drafts and revision of same, does not affect the validity, or enforceability, of the settlement. *Alipo v. Secretary of the U.S. Army*, 1998 U.S. Dist. LEXIS 6360 (N.D. Cal. 1998).

To date, CI's only articulated basis for its refusal to go forward with the settlement is Stottlemire's alleged breach of the confidentiality term of the agreement. CI claims Stottlemire breached the agreement by disclosing "a dismissal with prejudice in return for no money" (*See* Coupons' Opposition to Defendant's Motion to Stay Discovery (Document 129) Page 1, Lines 8-9). CI's claim that Stottlemire breached the confidentiality term of the settlement agreement are without merit. Prior to CI's admission that it "is fine with making everything public regarding the settlement," Stottlemire has never stated that the dismissal with prejudice was given in return for no money. Although CI has made this claim many times over the past two months, CI has yet to attach evidence to any of its pleadings to support its claim. Evidence simply does not exist. CI claims Stottlemire has admitted to the breach by his silence, but this is not true. Instead, Stottlemire refuses to address CI's accusations because they are premature. Neither of the pending motions require Stottlemire to admit or deny CI's allegations for the Court to rule upon them. The time to address CI's allegations was not ripe. Stottlemire responded to the motions without deviating from the issues the motions raised.

**D.     CI's Analysis of the Severability of the Settlement Agreement**

Regardless of CI's claims that Stottlemire breached the Settlement Agreement, CI has entered into an agreement which precludes rescission of the agreement. CI cannot escape its own analysis of this fact, regardless of what happened after CI agreed to the terms of the settlement agreement. CI must release Stottlemire of all claims, known and unknown that CI has against him.

In its November 23, 2008 email CI fully explained its understanding of the clause within the Release which precludes rescission of the Settlement Agreement. CI argued that Stottlemire

1  represented and warranted that he would maintain the confidentiality of the settlement agreement,

2  "regardless of what happens in the future".  CI made this analysis in view of Stottlemire's

3  argument that CI and Stottlemire jointly agreed by their actions that the confidentiality term of the

4  Settlement Agreement did not apply to the Stipulation.  CI cannot escape the standards CI has held

5  Stottlemire to.  CI's own analysis must also apply to CI.  CI has represented and warranted that it

6  would release Stottlemire of all claims, "regardless of what happens in the future."  Therefore, it

7  must release Stottlemire.  This Court should order enforcement of the settlement agreement.

## CONCLUSION

8

9  The parties have a complete settlement enforceable by this Court.  However, CI now

10  refuses to comply with the settlement ignoring its own analysis for claiming Stottlemire's actions

11  violated the terms of the settlement agreement.  CI agreed to the terms and that the terms should

12  remain in force "regardless of what happens in the future."  Bound by this restriction, CI cannot

13  rescind a settlement agreement because of an event that happened in the future, that is,

14  Stottlemire's purported breach.

15  Stottlemire therefore respectfully requests that the Court summarily enforce the settlement

16  and require CI to sign the Release and deliver a signed stipulation of dismissal with prejudice.

17

18

19

20

21

22

23

24

25

26

27

28

# ATTACHMENT

# A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

COUPONS, INC.,

               Plaintiff,

    v.

JOHN STOTTLEMIRE, and DOES 1-10,

               Defendants.

Case No.    5:07-CV-03457 HRL

**SETTLEMENT AGREEMENT**

      Coupons, Inc. and John Stottlemire agree to settle their pending dispute upon the following terms:

      1.     Coupons, Inc. will dismiss its pending lawsuit against Mr. Stottlemire with prejudice.

      2.     Mr. Stottlemire agrees to stipulate to the dismissal.

      3.     The parties will exchange mutual general releases in standard form.

      4.     Each party will bear its own attorney's fees and costs.

5.     The terms of the settlement will remain confidential.


Dated:  November 13, 2008


FOR COUPONS, INC.

_Lauren Segal_
Lauren Segal
Authorized Representative

_Dennis Cusak signature_
Dennis Cusak
Attorney for Plaintiff



For John Stottlemire

_John Stottlemire signature_
John Stottlemire

# ATTACHMENT

# B

<u>**MUTUAL RELEASE OF CLAIMS**</u>

This Mutual Release of Claims is entered into by and between Coupons, Inc. ("Coupons") and

John Stottlemire ("Stottlemire").  Coupons filed a civil lawsuit for money damages and injunctive relief

against Stottlemire captioned "*Coupons, Inc. v. John Stottlemire, et al.*," United States District Court,

Northern District of California, case number 5:07-CV-03457 HRL ("the Action").  On November 13,

2008, at an Early Neutral Evaluation conducted by Harold McElhinny, Coupons and Stottlemire

executed a Settlement Agreement, which provides as follows:

1.      Coupons, Inc. will dismiss its pending lawsuit against Stottlemire with prejudice;

2.      Stottlemire agrees to stipulate to the dismissal;

3.      The parties will exchange mutual general releases in standard form;

4.      Each party will bear its own attorney's fees and costs; and

5.      The terms of the settlement will remain confidential.

Therefore, in accordance with paragraph 3 of the Settlement Agreement, Coupons and

Stottlemire agree as follows:

Coupons and Stottlemire, and each of them, both individually, on behalf of any of their

respective present or former parent, subsidiary or affiliated companies, if any, and on behalf of all of

their respective present or former agents, partners, spouses, owners, principals, shareholders, joint

venturers, officers, directors, servants, employees, independent contractors, predecessors, successors,

heirs, trustees and assigns, do hereby fully and forever release and discharge each other, each others'

subsidiaries, affiliates and parent companies, and all of each others' respective present or former agents,

partners, spouses, owners, principals, shareholders, joint venturers, officers, directors, servants,

employees, predecessors, successors, heirs, trustees and assigns, insurers, reinsurers, attorneys, and

22675\1766955.1

sureties, of and from each and every claim, demand, action, cause of action, loss, cost, expense or element of damage, of every kind and character, known or unknown, contingent or certain, past, present or future, including but not limited to any claim for malicious prosecution, which arises out of, relates to, or in any way concerns the Action, the allegations contained in the Action, or any defenses or counterclaims which could have been brought in the Action.

In entering into the Settlement Agreement, and the mutual releases provided herein, it is the intent of Coupons and Stottlemire, on behalf of themselves, on behalf of their respective present or former parent, subsidiary or affiliated companies, if any, and on behalf of all of their respective present or former agents, partners, spouses, owners, principals, shareholders, joint venturers, officers, directors, servants, employees, predecessors, successors, heirs and assigns, to waive all rights and benefits which any of them may have had under California Civil Code §1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Coupons and Stottlemire each acknowledge that there is a risk that the damages, injuries, costs, expenses or losses which they believe they may have suffered or will suffer, with respect to the foregoing matters, may later turn out to be other than, of a different character from, or greater than, those now known, suspected or believed to be true. Further, other facts upon which Coupons and Stottlemire may be relying in entering into the Settlement Agreement may later turn out to be other than, or different from, those now known, suspected or believed to be true.

Coupons and Stottlemire each acknowledge that in entering into the Settlement Agreement, and the mutual releases provided for herein, they have expressly agreed to assume the risk of such possible

unknown damages, claims, demands, actions, or causes of action, or such possible changes or differences in material fact. Coupons and Stottlemire each further represent, warrant and agree that the Settlement Agreement shall remain in full force, and in effect, notwithstanding the occurrence of any possible changes or differences in material fact.

DATED: _____          COUPONS, INC.

By:_____
       Lauren Segal, General Counsel

DATED: _____

_____
       John Stottlemire

22675\1766955.1

# ATTACHMENT

# C

Neil A. Goteiner (State Bar No. 083524)
Dennis M. Cusack (State Bar No. 124988)
Carly O. Alameda (State Bar No. 244424)
Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480
E-mail: ngoteiner@fbm.com, dcusack@fbm.com,
calameda@fbm.com

Attorneys for Plaintiff
COUPONS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| COUPONS, INC., | Case No. 5:07-CV-03457 HRL |
| Plaintiff, | **STIPULATION FOR DISMISSAL WITH PREJUDICE PURSUANT TO SETTLEMENT AGREEMENT** |
| vs. | |
| JOHN STOTTLEMIRE, and DOES 1-10, | |
| Defendants. | |

      Plaintiff Coupons, Inc. and Defendant John Stottlemire hereby submit this Stipulation to dismiss this case with prejudice.

      WHEREAS, the parties participated in an Early Neutral Evaluation with Harold McElhinny on November 13, 2008, and entered a Settlement Agreement at that time; and

      WHEREAS, the Settlement Agreement provides among other things that Coupons, Inc. will dismiss the case with prejudice, and that Mr. Stottlemire will stipulate to the dismissal;

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

STIP FOR DISMISSAL 5:07-CV-03457 HRL

22675\1767135.1

IT IS HEREBY STIPULATED by and between the parties hereto that this action shall be

dismissed in its entirety, with prejudice.

Dated:  November 18, 2008                    FARELLA BRAUN & MARTEL LLP

By:_____

    Dennis M. Cusack

Attorneys for Plaintiff

COUPONS, INC.

Dated:  November 18, 2008

By:_____

    John Stottlemire

Defendant, *pro se*

**ORDER**

Good cause appearing therefor, IT IS HEREBY ORDERED that this case is dismissed in

its entirety, with prejudice.

DATED:  _____           _____

    The Honorable Howard R. Lloyd

    Judge of the United States District Court

# ATTACHMENT

# D

## MUTUAL RELEASE OF CLAIMS

This Mutual Release of Claims is entered into by and between Coupons, Inc. ("Coupons") and John Stottlemire ("Stottlemire"). Coupons filed a civil lawsuit for money damages and injunctive relief against Stottlemire captioned "*Coupons, Inc. v. John Stottlemire, et al.*," United States District Court, Northern District of California, case number 5:07-CV-03457 HRL ("the Action"). On November 13, 2008, at an Early Neutral Evaluation conducted by Harold McElhinny, Coupons and Stottlemire executed a Settlement Agreement, which provides as follows:

1.    Coupons, Inc. will dismiss its pending lawsuit against Stottlemire with prejudice;

2.    Stottlemire agrees to stipulate to the dismissal;

3.    The parties will exchange mutual general releases in standard form;

4.    Each party will bear its own attorney's fees and costs; and

5.    The terms of the settlement will remain confidential.

Therefore, in accordance with paragraph 3 of the Settlement Agreement, Coupons and Stottlemire agree as follows:

Coupons and Stottlemire, and each of them, both individually, on behalf of any of their respective present or former parent, subsidiary or affiliated companies, if any, and on behalf of all of their respective present or former agents, partners, spouses, owners, principals, shareholders, joint venturers, officers, directors, servants, employees, independent contractors, predecessors, successors, heirs, trustees and assigns, do hereby fully and forever release and discharge each other, each others' subsidiaries, affiliates and parent companies, and all of each others' respective present or former agents, partners, spouses, owners, principals, shareholders, joint venturers, officers, directors, servants, employees, predecessors, successors, heirs, trustees and assigns, insurers, reinsurers, attorneys, and

22675\1766955.1

sureties, of and from each and every claim, demand, action, cause of action, loss, cost, expense or element of damage, of every kind and character, known or unknown, contingent or certain, past, present or future, including but not limited to any claim for malicious prosecution, which arises out of, relates to, or in any way concerns the Action, the allegations contained in the Action, or any defenses or counterclaims which could have been brought in the Action.

In entering into the Settlement Agreement, and the mutual releases provided herein, it is the intent of Coupons and Stottlemire, on behalf of themselves, on behalf of their respective present or former parent, subsidiary or affiliated companies, if any, and on behalf of all of their respective present or former agents, partners, spouses, owners, principals, shareholders, joint venturers, officers, directors, servants, employees, predecessors, successors, heirs and assigns, to waive all rights and benefits which any of them may have had under California Civil Code §1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Coupons and Stottlemire each acknowledge that there is a risk that the damages, injuries, costs, expenses or losses which they believe they may have suffered or will suffer, with respect to the foregoing matters, may later turn out to be other than, of a different character from, or greater than, those now known, suspected or believed to be true. Further, other facts upon which Coupons and Stottlemire may be relying in entering into the Settlement Agreement may later turn out to be other than, or different from, those now known, suspected or believed to be true.

Coupons and Stottlemire each acknowledge that in entering into the Settlement Agreement, and the mutual releases provided for herein, they have expressly agreed to assume the risk of such possible

unknown damages, claims, demands, actions, or causes of action, or such possible changes or differences in material fact. Coupons and Stottlemire each further represent, warrant and agree that the Settlement Agreement shall remain in full force, and in effect, notwithstanding the occurrence of any possible changes or differences in material fact.

Coupons and Stottlemire further represent and warrant that they have not sold, assigned, conveyed or transferred to any other person or entity any of the claims, demands, actions or causes of action which each of them are releasing, or purport to be releasing, pursuant to the provisions of this Agreement.


DATED: _____          COUPONS, INC.


                                        By:_____
                                           Lauren Segal, General Counsel




DATED: _____

                                        _____
                                           John Stottlemire

22675\1766955.1

John A. Stottlemire
4509 Wayland Court
High Point, NC 27265
Telephone: (614) 358-4185
Email: johna@stottlemire.com
Defendant, *pro se*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| COUPONS, INC., a California corporation, | Case No. 5:07-CV-03457 HRL |
| Plaintiff, | **DECLARATION OF JOHN STOTTLEMIRE IN SUPPORT OF DEFENDANT'S MOTION TO SUMMARILY ENFORCE SETTLEMENT AGREEMENT** |
| v. | |
| JOHN STOTTLEMIRE | |
| Defendant | Date:       February 24, 2009 |
| | Time:       10:00 AM |
| | Courtroom:  2, 5th Floor |
| | Judge:      Hon. Howard R. Lloyd |

I, John Stottlemire, hereby declare:

1.      I am the Defendant in this action.  I state all facts herein of my own firsthand knowledge, and if called as a witness, I could and would competently testify thereto.

2.      Dennis Cusack is an attorney of record representing Coupons, Inc. in this matter.

3.      On November 17, 2008 I received an email from Dennis Cusack.  Attached to the email were two documents.  The documents attached were entitled "Mutual Release of Claims" and "Stipulation for Dismissal with Prejudice Pursuant to Settlement Agreement".  In the email, Dennis Cusack stated that once we had agreed upon final wording of the documents an exchange of signatures would take place on the Mutual Release of Claims and then the Stipulation for Dismissal would be filed.  A true and exact copy of the email I received from Dennis Cusack is attached to this declaration as Exhibit A.

4. Seventeen minutes after receiving the email attached as Exhibit A to this declaration I replied to Dennis Cusacks' email. In my reply I requested Coupons, Inc. include two additional clauses to the Mutual Release of Claims. The two additional clauses I asked Coupons, Inc. to include are 1) that neither party had assigned the claims to any third party, and 2) that Coupons, Inc. defend, indemnify and hold me harmless from all claims which were subject to this lawsuit. A true and exact copy of the email I sent Dennis Cusack is attached to this declaration as Exhibit B.

5. On November 19, 2008, I posted an entry to my personal blog which stated "As long as Coupons, Inc. complies with the confidential settlement agreement, the action against me will be dismissed with prejudice. Dismissal with prejudice means that Coupons, Inc. will be unable to file this action again. The letter Coupons, Inc. sent the Court to confirm the above can be viewed here: Link (PDF)." Any person who clicked on the words "Link (PDF)" would have seen the letter Coupons, Inc. filed with the Court on November 14, 2008. This letter is Document number 110 on the Court docket.

6. On November 19, 2008, I received an email from Dennis Cusack which stated that Coupons, Inc. would not agree to the defend, indemnify and hold harmless clause I had requested be added to the Mutual Release of Claims. A true and exact copy of the email I received from Dennis Cusack is attached to this declaration as Exhibit C.

7. Later that same evening, I received an email from Dennis Cusack that included a revised copy of the Mutual Release of Claims and Dennis Cusack stated that he would file the Stipulation for Dismissal as soon as I signed and returned the Mutual Release of Claims. I emailed a signed copy of the Mutual Release of Claims within 40 minutes of receiving the email from Dennis Cusack. A true and exact copy of the email I received from Dennis Cusack is attached to this declaration as Exhibit D.

8. On November 20, 2008, I was interviewed by David Kravets. David Kravets is a journalist who publishes articles for wired.com. During the interview I told David Kravets that I could not discuss the terms of the settlement since they were confidential, that the Court did not

1  rule on the issues surrounding the litigation and that Coupons, Inc. upgraded their coupon printer

2  software and that because of Coupons, Inc.'s upgrades the instructions central to the litigation no

3  longer had any effect on the number of coupons consumers could print through Coupons, Inc.'s

4  website. As a result of this interview, David Kravets published a blog entry at wire.com. The blog

5  entry by David Kravets makes certain to report each of the facts I provided David Kravets during

6  the interview. A true and exact copy of the blog entry published by David Kravets is attached to

7  this declaration as Exhibit E.

8      9.      During the interview, David Kravets also asked me to provide an overview of the

9  litigation. I provided David Kravets the following statement as a result of his request: "Without

10  being represented by an attorney, I defended myself in federal court against a company who

11  solicited the services of two separate law firms, and in my opinion, I kicked their ass. By refusing

12  to succumb to their bullying tactics, I continued to assert my innocence and fought the claims

13  Coupons, Inc. filed against me." David Kravets published the exact statement I released in his

14  blog entry.

15      10.     On November 21, 2008, Wendy Davis, a journalist from mediapost.com contacted

16  me and asked if I would comment on the litigation. Wendy Davis told me she learned of the

17  litigation by reading the blog entry posted by David Kravets. All of Wendy Davis' questions were

18  limited to my being a pro se litigant and she did not ask any questions about the settlement. A true

19  and exact copy of the blog entry posted by Wendy Davis as a result of my interview with her is

20  attached to this declaration as Exhibit F.

21      11.     On November 21, 2008, I sent an email to Dennis Cusack asking when he intended

22  to file the Stipulation for Dismissal.

23      12.     Neil Goteiner is an attorney of record for Coupons, Inc.

24      13.     On November 21, 2008, Neil Goteiner emailed me and stated that they had no

25  intention of filing the Stipulation for Dismissal. The email further claimed that I had breached the

26  settlement agreement executed on November 13, 2008. A true and exact copy of the email I

27  received from Neil Goteiner is attached to this declaration as Exhibit G.

28

14.     On November 23, 2008, Neil Goteiner emailed me and explained in detail his interpretation of the "Non-Severability" clause of the Mutual Release of Claims.  A true and exact copy of the email I received from Neil Goteiner is attached to this declaration as Exhibit H.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 20th day of January 2009 at High Point, North Carolina.


Dated:  January 20, 2009                                         _____/s/_____
                                                                John A Stottlemire
                                                                Defendant, *pro se*

# EXHIBIT A

**John Stottlemire**

| | |
|---|---|
| **From:** | DCusack@fbm.com |
| **Sent:** | Monday, November 17, 2008 7:42 PM |
| **To:** | jstottl@comcast.net |
| **Cc:** | lsegal@couponsinc.com |
| **Subject:** | mutual release and stip for dismissal |
| **Attachments:** | Mutual releases.DOC; Stip for dismissal.DOC |

John:

Attached are two documents called for by the Settlement Agreement:  a Mutual Release; and a Stipulation for Dismissal. Please let me know if you have any questions or concerns.  Once we're agreed on final wording, we can arrange for an exchange of signatures on the Mutual Release, and then file the Stipulation.

Dennis


**Dennis M. Cusack**
Attorney at Law

_____

**Farella Braun + Martel LLP**
RUSS BUILDING
235 MONTGOMERY STREET
SAN FRANCISCO / CA 94104


_____


**T** 415.954.4400
**D** 415.954.4475
**F** 415.954.4480
www.fbm.com

<<Mutual releases.DOC>> <<Stip for dismissal.DOC>>

_____

This e-mail message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

Farella Braun + Martel LLP

# EXHIBIT B

**John Stottlemire**

| | |
|---|---|
| **From:** | John Stottlemire [jstottl@comcast.net] |
| **Sent:** | Monday, November 17, 2008 7:59 PM |
| **To:** | 'DCusack@fbm.com' |
| **Subject:** | RE: mutual release and stip for dismissal |

A "mutual general release in standard form" normally contains three sections pertaining to the release.
1) Release from claims.
2) Assignment of claims.
3) Defend, indemnify and hold harmless.

While the document you provide contains a release of claims, there is no assignment or defend, indemnify and hold harmless sections. I will sign the document as soon as those sections are added.

-john

**From:** DCusack@fbm.com [mailto:DCusack@fbm.com]
**Sent:** Monday, November 17, 2008 4:42 PM
**To:** jstottl@comcast.net
**Cc:** lsegal@couponsinc.com
**Subject:** mutual release and stip for dismissal

John:

Attached are two documents called for by the Settlement Agreement: a Mutual Release; and a Stipulation for Dismissal. Please let me know if you have any questions or concerns. Once we're agreed on final wording, we can arrange for an exchange of signatures on the Mutual Release, and then file the Stipulation.

Dennis

**Dennis M. Cusack**
Attorney at Law
⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

**Farella Braun + Martel LLP**
RUSS BUILDING
235 MONTGOMERY STREET
SAN FRANCISCO / CA 94104

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

**T** 415.954.4400
**D** 415.954.4475
**F** 415.954.4480
www.fbm.com

<<Mutual releases.DOC>> <<Stip for dismissal.DOC>>

---

This e-mail message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

Farella Braun + Martel LLP

# EXHIBIT C

# John Stottlemire

**From:** DCusack@fbm.com
**Sent:** Wednesday, November 19, 2008 9:19 PM
**To:** jstottl@comcast.net
**Cc:** NGoteiner@fbm.com
**Subject:** Settlement

John:

While we're willing to acknowledge that we've not assigned any claim being released, Coupons is not willing to indemnify you against claims by third parties. Such a provision would be highly unusual in a case such as this and is not part of a standard mutual release. We'll add the acknowledgment of non-assignment and forward a revised release.

Dennis

Dennis Cusack
Farella Braun + Martel LLP
415-954-4475

_____

This e-mail message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

Farella Braun + Martel LLP

# EXHIBIT D

**John Stottlemire**

| | |
|---|---|
| **From:** | DCusack@fbm.com |
| **Sent:** | Wednesday, November 19, 2008 11:32 PM |
| **To:** | jstottl@comcast.net |
| **Cc:** | lsegal@couponsinc.com |
| **Subject:** | Revised Mutual release |
| **Attachments:** | 1766955_1.DOC |

John:

Per our exchange of emails today, I'm attaching a revised Mutual Release, which adds at the end an acknowledgement that claims each of us is purporting to release have not been assigned.  Please sign and PDF/mail to me.  When we receive your signature, we'll file the Stipulation for Dismissal.  Thank you.

Dennis

<<1766955_1.DOC>>

---

This e-mail message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

Farella Braun + Martel LLP

# EXHIBIT E



Drive Blue. Live Green.
Introducing Mercedes-Benz BlueTEC Clean Diesel.

All Wired  •  GO

« Bush Admin Rejects NYPD Spying Proposals as Illegal | Main | State Can Ban Prescription Data Mining, Appeals Court Rules »

# Coupon Hacker Defeats DMCA Suit

By David Kravets    November 20, 2008 | 7:00:50 PM

A California online coupon generating company is dropping its Digital Millennium Copyright Act lawsuit against a man sued for posting commands allowing users to print an unlimited number of valid coupons.



John Stottlemire was sued last year after posting the commands to his tenbucks.net and other websites. He was accused of posting code and instructions allowing shoppers to circumvent copy protection on downloadable, printable coupons from Colgate, General Foods and others for everything from cereal to soap.

Mountain View, Calif.-based Coupons Inc. argued Stottlemire was no different from cracks like "DVD Jon" Johansen's program, DeCSS, which allowed the duplication of encrypted DVDs.

"Without being represented by an attorney, I defended myself in federal court against a company who solicited the services of two separate law firms," Stottlemire said. "And in my opinion, I kicked their ass. By refusing to succumb to their bullying tactics, I continued to assert my innocence and fought the claims Coupons Inc. filed against me. "

The 43-year-old Fremont, Calif., man insisted he did not circumvent any technology and instead found a weakness in Coupons Inc.'s software. Removing the key to the software's program limiting coupon production allowed users to acquire an unlimited number of coupons with unique, functioning serial codes.

Coupons Inc. declined comment. Terms of the dismissal were not made public. They do not require Stottlemire to remove the workaround, which is still published here.

Despite the settlement, the legal question at issue remains unsettled – whether Stottlemire's actions were unlawful under the DMCA. The 10-year-old law prohibits circumventing technology to work around measures to prevent the duplication of what Coupons Inc. claimed were copyrighted materials.

The question may be a moot point, at least for now. Coupons Inc. has countered Stottlemire's workaround, which no longer works.

*Photo:* JasonJT's Photostream

**See Also:**

- The Digital Millennium Copyright Act of 1998
- 10 Years Later, Misunderstood DMCA is the Law That Saved the Web ...
- DMCA Abuser Apologizes, Will Take Copyright Law Course
- Universal Says DMCA Takedown Notices Can Ignore 'Fair Use ...
- Stifled by Copyright, McCain Asks YouTube to Consider Fair Use ...
- Congress Moves to Reshape DMCA
- Air Force Cyber Command's New Weapon: DMCA Notices
- Google, EFF Applaud Veoh DMCA Ruling
- Judge Who Signed 'Torture Memo' Blasts DMCA Sentence
- EFF and U.C. Berkeley Defend Accused Coupon Hacker in DMCA Suit ...
- Universities Baffled By Massive Surge In RIAA Copyright Notices ...
- DMCA Abuser Retracts
- Ethan Ackerman Clarifies Copyright Takedown Stories

✉ SEND US A TIP!



Drive Blue. Live Green.
Introducing Mercedes-Benz BlueTEC Clean Diesel.

Enter to Win the Wired Wish List Bag! ›



Subscribe now for

**TEAM**

**Kevin Poulsen** | e-mail
**David Kravets** | e-mail
**Kim Zetter** | e-mail
**Ryan Singel** | e-mail

2008 Winner
Knight-Batten Awards for Innovations in Journalism

**MOST THREATENING ENTRIES**

Yahoo! Buzz     Stumble    ShareThis



This post's pheedo code is causing its feed to be invalid.

line 335, column 82: XML parsing error: :335:82: not well-formed (invalid token) [help]

... hdo?s=d4d892e6d6d809c0e6752be3967d01a1&p=1">

**Posted by: Tom | Nov 20, 2008 11:18:19 PM**

OUtstanding. Nice to see the "little guy" come out on top every now and then.

jess
http://www.anonymity.at.tc

**Posted by: John Davis | Nov 21, 2008 4:59:23 PM**

Hello

Here is a new brand website for social bookmarking which is very fast updating in google, yahoo, msn. so use this website for your bookmarks.

http://www.yuppmarks.com

**Posted by: viz | Nov 21, 2008 11:57:47 PM**

## POST A COMMENT

**Name:**

**Email Address: (Not Required, Not Published)**

**Comments:**

Post

### Obama to Defend Telco Spy Immunity

### Child Porn Laws Used Against Kids Who Photograph Themselves

### High Court OKs Illegal Searches Based on Computer Errors

### Hardware Hacker Charged With Selling Cable Modems That Get Free Broadband -- Update

### Despite RIAA Loss, File Sharers Face Hefty Fines

**MOST RECENT ENTRIES**

### January 2009

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|-----|-----|-----|-----|-----|-----|-----|
|     |     |     |     | 1   | 2   | 3   |
| 4   | 5   | 6   | 7   | 8   | 9   | 10  |
| 11  | 12  | 13  | 14  | 15  | 16  | 17  |
| 18  | 19  | 20  | 21  | 22  | 23  | 24  |
| 25  | 26  | 27  | 28  | 29  | 30  | 31  |

RIAA Appealing Decision Allowing Internet Broadcast of File Sharing Court Hearing

Bullies Worse than Predators On Social Networks

Despite RIAA Loss, File Sharers Face Hefty Fines

Terror at 37,000 Feet

Obama to Defend Telco Spy Immunity

Child Porn Laws Used Against Kids Who Photograph Themselves

High Court OKs Illegal Searches Based on Computer Errors

Online Burger Promotion Pulled After Going Too Viral

In Internet First, RIAA File Sharing Hearing to Be Webcast

State Department Passport Snoop Faces Little or No Jail Time

See more Threat Level

**CATEGORIES**

2008 Republican National Convention (3)

AM-FM Royalties (1)

Announcements (15)

Apple, iPhone (2)

BitTorrent (23)

Black Friday (1)

Black Hat (6)

Breaches (36)

California Fires (6)

CCC (20)

Censorship (53)

Citibank (7)

Connectivity and Broadband (2)

Copyright Czar (1)

Copyrights and Patents (67)

Cover-Ups (45)

Crime (173)

Crypto (12)

Cybarmageddon! (29)

Cyberbullying (1)

Cybersecurity (21)

Darkmarket (7)

DefCon (23)

Digital Millennium Copyright Act (4)

Disasters (3)

DNC 2008 (14)

E-Voting (97)

Early Termination Fees (1)

Election '08 (566)

Fed Blotter (9)

Forensics (6)

Gists (3)

Glitches and Bugs (49)

Hacks and Cracks (192)

Hamburger Helper (1)

Hans Reiser Trial (117)

Hot Planet (25)

Identification (52)

Identity Theft (1)

Information Sharing (5)

Intellectual Property (52)

ISP Privacy Survey (10)

Kickbacks (8)

Lori Drew Trial (23)

Mobile Phone Unlocking (2)

MPAA Litigation (3)

Network Neutrality (33)

NSA (175)

Online Pharmacies (1)

Online Political Campaigns (19)

Patents (2)

Phreaky Phriday (3)

Politics (84)

Porn (19)

Privacy (146)

Propaganda (2)

Revolving Door (3)

RFID (5)

RIAA Litigation (81)

RNC08 (3)

RSA Conference (8)

Spam and Phishing (8)

Spooks Gone Wild (63)

Sunshine and Secrecy (98)

Surveillance (171)

**Tech Companies in China** (10)

**The Courts** (80)

**The Ridiculous** (21)

**Threats** (52)

**ToorCon** (8)

**Virginia Tech shootings** (32)

**Watchlists** (33)

**Wikiwatch** (3)

**Yo Ho Ho** (2)

**Stay connected with Wired Mobile**: Tech News, Gadget Reviews, and Special Offers - all delivered to your mobile device.

Add **Threat Level** to your favorite feed reader. Find more **Wired.com** feeds, including web-based news reader feeds, **here**.

**California Noncompete**
Experienced Los Angeles-based Specializing in Non Compete Laws. - www.gindylaw.com

**Free Grocery Coupons**
Free Coupons for 1,000s top brands! Save money free printable coupons. - www.ShopAtHome.com

**Christian Mom Makes 5k/mn**
How a Christian Mom makes $5000 a month with Free Government Grants. - Grants247.com

**Coupons & Coupon Codes**
Free Online Coupons, Coupon Codes Printable Grocery Coupons and more. - www.CouponWinner.com/Coupons

Ads by Google



Corrections | Sitemap | FAQ | Contact Us | Wired Staff | Advertising | Press Center | Subscription Services | Newsletter | RSS Feeds

CondéNet web sites:
Webmonkey.com | Reddit.com | ArsTechnica.com | Epicurious.com | NutritionData.com | Concierge.com | HotelChatter.com | Jaunted.com | Style.com | Men.Style.com | Flip.com

Subscribe to a magazine: | Condé Nast web sites:

© 2008 CondéNet, Inc. All rights reserved.
Use of this site constitutes acceptance of our User Agreement and Privacy Policy

# EXHIBIT F



MY FRNDS KNOW HOW 2 CONNECT WITH ME.

MOBILE   DISPLAY ADS   WEBSITE   E-MAIL   DIRECT MAIL   CALL CENTER   POINT OF SALE

GLOBAL INTERACTIVE MARKETING SERVICES                              ACXIOM

Publications ▾   Events ▾   Directories ▾   Classifieds ▾   Research ▾   Community ▾

Welcome John Stottlemire | My Account | Sign Out

HOME • MANAGE SUBSCRIPTIONS • MEDIA KIT

ADVANCED SEARCH

Home > Search > Online Media Daily > Monday, Nov 24, 2008

# Coupons Inc. Settles Case Against Hacker

by Wendy Davis, Monday, November 24, 2008, 7:00 AM

Increase your financial IQ

An online coupon distributor has settled a closely watched case against a programmer who told Web users how to get around code designed to limit the number of times that coupons could be printed.

The details of the settlement between the company, Coupons Inc., and the programmer, John Stottlemire, are confidential. But Stottlemire said that the lawsuit against him will be withdrawn with prejudice (meaning that it can't ever be filed again) as long as he complies with the agreement.

Coupons Inc. did not respond to a request for comment.

The Mountain View, Calif.-based Coupons Inc. provides technology that enables companies to deliver coupons directly to consumers at corporate Web sites, through banner ads and in e-mail messages. Coupons Inc. bundles its programs with software that aims to restrict users' ability to print multiple copies of the vouchers.

The dispute between the company and Stottlemire began last July, after the Fremont, Calif. resident posted instructions for expunging the code that restricted the number of copies that could be printed. He also allegedly offered downloadable software that would remove Coupons' code.

Coupons Inc. then filed suit against Stottlemire in federal district court in San Jose, for allegedly distributing tools that circumvented the company's digital rights management program.

Because the lawsuit was resolved, the court did not decide whether Stottlemire's work-around violated the Digital Millennium Copyright Act. That law prohibits trafficking in technology that circumvents software that restricts access to copyrighted material. But digital rights advocates say that the law does not ban mere discussions about the software.

Stottlemire took the position that Coupons Inc. had hidden its restrictive files on users' computers, and that he was just offering instruction on how to delete those files. "Through the use of hiding files and registry keys on a computer, in areas normally reserved for the Windows operating system ... Coupons, Inc. attempts to control access to coupons it offers to the public," he wrote on his blog tenbucks.net in July of 2007. He added that no special software was needed to purge those keys. "The only tool required is the delete button on your keyboard ... and knowledge of where these unprotected files lie."

Coupons Inc. eventually changed its methods to defeat Stottlemire's work-around.

Stottlemire, who is not a lawyer, said he decided to represent himself after learning that lawyers' fees could quickly total in the six figures. "I knew I was right, and I couldn't afford an attorney," he said. "I spent many nights in front of the computer researching case law and writing briefs and rewriting briefs."

## TOOLS

EMAIL   SUBSCRIBE
PRINT   RSS
REPLY   SHARE ▾

### RELATED ARTICLES

1. Managing ROI On A Shrinking Budget
2. Survey: Web Video Beats TV Among Respondents Ages 18-24
3. House Approves Funds For Broadband Expansion
4. Motionbox Raises $6 Million, Gets New CEO
5. BrightRoll: Video Ad Rates Fell 25% In Q4

TAGS: Legal, Online

### MOST READ

1. Incident Sends Airline's Social Media Index Soaring
2. Clear Channel Revamps, Cuts
3. Kraft Fast-Forwards Functional Foods
4. Hyundai Likely To Tout Assurance Program In Bowl
5. TCA: ABC Notes Poor Fall Performance, Rethinks Late Night

### AUTHORS

» Mark Walsh
» Wendy Davis
» Gavin O'Malley
» Laurie Sullivan
» Tameka Kee
» Joe Mandese
» Tanya Irwin
» David Goetzl
» Karlene Lukovitz
» Erik Sass

### ARCHIVES

» January 2009
» December 2008
» November 2008
» October 2008
» September 2008
» August 2008
» All Archives

## Recent Online Media Daily Articles

**Expert: Big Brands Have Big Search Challenges**  Jan 16, 7:00 AM
Large brands have unique challenges managing paid search advertising campaigns, according to Chris Sherman, executive editor...

**BrightRoll: Video Ad Rates Fell 25% In Q4**  Jan 16, 7:00 AM

Average pre-roll ad rates for online video in the fourth quarter dropped 25% from the year-earlier...

**Motionbox Raises $6 Million, Gets New CEO**   Jan 16, 7:00 AM
Video-sharing site Motionbox has raised an additional $6 million in Series C funding, the company said...

**House Approves Funds For Broadband Expansion**   Jan 16, 7:00 AM
In hopes of boosting broadband access, the House Appropriations Committee approved awarding $6 billion to build...

**Survey: Web Video Beats TV Among Respondents Ages 18-24**   Jan 16, 7:00 AM
Coveted 18- to-24-year-old consumers now spend more time watching Web-distributed video than broadcast television, according to...

**Startup To Promote Product Placements In Online Video**   Jan 15, 7:31 AM
Product placement ads have long been the province of Hollywood movies and hit TV shows. Startup...

**Google, SpotMixer Launch Self-Service Video Ads**   Jan 15, 7:31 AM
Google and One True Media--the parent company of online video ad creator SpotMixer--today are expected to...

**Epperson Out At Havas Digital, CEO Role Split Across London, Madrid**   Jan 15, 7:31 AM
In a move that centralizes more of the power for its digital media operations on the...

**VoloMedia Supports Ads To Monetize G4's Podcasts**   Jan 15, 7:31 AM
Comcast's G4 cable television network and Web site G4tv.com have begun working with VoloMedia to insert...

**Web Networks Thrive With Help From Consumer Packaged Goods**   Jan 15, 7:31 AM
As TV broadcasting networks continue to struggle, a new breed of Web-based broadcasting networks appear to...

**>> Online Media Daily Archives**

ABOUT MEDIAPOST • MEDIA KIT • RSS FEEDS • PRIVACY/TERMS & CONDITIONS

  ©2009 MediaPost Communications. All rights reserved.
1140 Broadway, 4th Floor, New York, NY 10001
tel. 212-204-2000, fax 212-204-2038, feedback@mediapost.com

  

# EXHIBIT G

**John Stottlemire**

| | |
|---|---|
| **From:** | NGoteiner@fbm.com |
| **Sent:** | Friday, November 21, 2008 10:29 PM |
| **To:** | johna@stottlemire.com |
| **Cc:** | DCusack@fbm.com; CAlameda@fbm.com |
| **Subject:** | your breach of the Settlement |

John:

Your web site comments, including "kicking ass" and that the case was dismissed with prejudice, as well as your communications (either direct or through your web site) with various bloggers including, Dan Morril and David Kravits, breached the wording and intent of the confidentiality term of the settlement agreement. The agreement specifically states that "The terms of the settlement will remain confidential." This was included as a material term of the agreement at your request. Your blatant violation of your commitment, and the consequences of that abuse have damaged Coupons' reputation and continue to do so.

We are not filing the notice of dismissal unless you repair the breach. Coupons now insists that the only way for you to repair your breach would be to publish prominently on your web site and distribute to each blogger who referred to the settlement (or does so in the near future) a full narrative of the following facts leading to the settlement. The statement must contain the following elements (Coupons will draft the precise language), and we must receive proof that you've satisfactorily circulated the statement.

1.    Refer to the inaccurate statements on your web site and to the statements on the relevant blogs and correct the blog's mischaracterization of the case and of the settlement terms;

2.    Specifically state that while you asked for the confidentiality agreement, you breached it, and also that your web site and the blogs discussing the case contain misleading information about the settlement and the litigation.

3.    Attach to your statement the entire recent court decision and accurately characterize in layman's language the Court's denial of your motion for sanctions and motion to dismiss, as well as the court's reasoning and holding. Your statement would also point out that the Court ultimately came to its ruling notwithstanding vigorous amicus briefing from the Electronic Frontier Foundation. Your statement would of course specifically explain the court's of how and why both sections 1201(a) and section 1201(b) are applicable, over your strong objections.

4.    Accurately state the sequencing of settlement events, namely that: (a) prior to the recent hearing, you demanded that Coupons pay you $2 million for your various claims based on your position that Coupons case was without merit and vexatious, and that you had always demanded money from Coupons to settle your asserted claims; (b) you breached confidential settlement discussions previously by publishing on your web site your earlier demand for over $1 million; (c) after the hearing in which the court denied your motion to dismiss, you withdrew those settlement demands; (d) at the ENE session after the Court issued the attached ruling, you dropped your demands for even a penny and then asked for the confidentiality agreement that you breached; (e) after you signed the settlement term sheet you requested that Coupons indemnify you against claims by Coupons' customers for intentionally interfering with their business and by stealing coupons via your software; and (f) that after Coupons objected to your settlement breach, you agreed to correct the record. You are welcome to explain that it was your integrity that made you retract your misleading statements and breaching conduct, but you must truthfully state that by the time of your settlement you had not bested Coupons, but had in fact lost

your motion to dismiss and explain that Coupons was about to proceed against you with discovery, including your deposition, and with significant potential for damages against you if you had not settled.

Further, you will not object to any additional press releases or stories that result from Coupons' sharing with the press the accurate facts of the case and of the settlement events.

If you don't agree to the above, you will leave Coupons no choice but either to sue to enforce the settlement agreement and seek the relief outlined above, looking to you for the costs of such a law suit, or to withdraw from the settlement and proceed with the case.

If we do not hear from you within 48 hours, we will assume you refuse to agree to the above and will proceed accordingly.


**Neil A. Goteiner**
Attorney at Law
_____

**Farella Braun + Martel LLP**
RUSS BUILDING
235 MONTGOMERY STREET
SAN FRANCISCO / CA 94104


_____

**Office** 415.954.4485
**Fax**    415.954.4480
**Cell**   415.279.6783
www.fbm.com

_____

This e-mail message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

Farella Braun + Martel LLP

# EXHIBIT H

| | |
|---|---|
| **From:** | NGoteiner@fbm.com |
| **Sent:** | Sunday, November 23, 2008 3:17 PM |
| **To:** | johna@stottlemire.com |
| **Cc:** | DCusack@fbm.com; CAlameda@fbm.com |
| **Subject:** | RE: your breach of the Settlement |

In your Friday email you protested that you had not publicly disclosed the terms of the settlement. Now you admit, as you must, that you did disclose the settlement terms, particularly you disclosed the dismissal with prejudice, claimed you bested us and that you paid nothing. You attempt to justify your breech by asserting, without basis, that the dismissal was not going to be filed under seal, and that the parties therefore implicitly "revised" the settlement agreement.

Your argument has no merit. Whether the press would have picked up the dismissal from pacer is irrelevant to your unilateral breach. Irrespective of what happened with anyone learning of the dismissal, you signed a mutual release which provided that, "Coupons and Stottlemire each further represent, warrant and agree that the Settlement Agreement shall remain in full force, and in effect, **notwithstanding the occurrence of any possible changes or differences in material fact**." You represented and warranted that you would maintain the confidentiality, regardless of what happens in the future. But as you signed that release, you already were breaching it and the Settlement Agreement by your self-aggrandizing statements on your own blog and to the press.

Further, your argument attempting to excuse your breach as essentially an early disclosure of information that would eventually be in the public, also fails. Your argument essentially eviscerates the confidentiality term. Further, there is nothing in the stipulation that says it would not be filed under seal. The settlement did not require a specific provision obligating the parties to do so, in order to bind (or to permit) the parties to do so. To the contrary, it was the parties' obligation to do everything reasonably necessary to comply with the terms of the settlement stipulation including that it would "remain confidential, " including filing the dismissal under seal, as well as not speaking to the press, as you did. Are you suggesting that although you represented and warranted that the settlement terms would remain confidential, that you would not agree to file the stipulation under seal once we suggested doing that to effectuate the confidentiality term?

Moreover, even if the settlement agreement had not been filed under seal, there was no certainty, or even probability, that the press would have picked up a publicly filed dismissal, had you not brought it to their attention (based on your distortion of events leading to settlement, which we aim to correct in the public record).

Similarly, your assertion of an implicit agreement "revision," flies in the face of the confidentiality term and your additional representation and warranty. You should have articulated your intent to revise the settlement with Dennis, Coupons, Inc. and Mr. McElhinny. Your post-breach "revision" spin will not play well in San Jose. All it does is underline your bad faith as you negotiated and signed the Settlement Agreement, contrary to your protests about your integrity.

Finally, given your victory lap brandishing your ass kicking exploits and disclosure of settlement terms, we're assuming that you have no objections to us publicizing facts 4(a)-(e) of my Friday 7:29 email to you. But please let me know today if you disagree, and the basis for your objection.

Coupons will not be filing the stipulation of dismissal, but will continue to prosecute the case, short of your agreement to attempt to correct and repair the breach as we have proposed. Your email makes

clear that you would rather spin than do the right thing. And so it's become clear that Coupons and the market require a judgment and verdict to stop your injurious mischaracterizations and conduct. I presume that you know that you will be wasting your time in this continued law suit. For, I'm sure that Mr. McKilhenny told you that you would lose the case, which only confirmed what you already knew when you reviewed Judge Lloyd's ruling against you and against EFF's arguments. Coupons is willing to invest the money to end its relationship with you and to clear up the confusion that you have caused through your settlement breaches.

We'll alert Mr. McKilhenny Monday of these unfortunate developments.

-----Original Message-----
**From:** John Stottlemire [mailto:johna@stottlemire.com]
**Sent:** Saturday, November 22, 2008 4:23 PM
**To:** Goteiner, Neil (24) x4485
**Subject:** RE: your breach of the Settlement

Dennis promised to file the stipulation to dismiss with prejudice as soon as he had my signature on the accompanying document. I gave Dennis my signature on the document on November 19, 2008. There has been no request nor any stipulations provided that the stipulation be filed under seal. The stipulation would have become a public document for any person who has access to the PACER system, the Court docket or any websites which display the Court docket (i.e. justia).

While both parties have agreed that the terms of the settlement would remain confidential, that confidentiality obviously does not extend to a document which would be filed publicly by your office. You and Dennis drafted the stipulation and you were going to file it publicly. If you have forgotten what the stipulations says, go read it. Since I have signed that stipulation with full knowledge that the stipulation would be filed as soon as you have my signature on the accompanying document and the stipulation holds no provisions to be kept under seal or redacted in any form, both sides have agreed to a revision on that particular term.

If the stipulation is not filed with the Court by Sunday, November 23, 2008 at 5:00 PM, I will have no choice but to seek a status conference with Judge Lloyd on Monday to address this matter.

-john stottlemire

**From:** NGoteiner@fbm.com [mailto:NGoteiner@fbm.com]
**Sent:** Saturday, November 22, 2008 12:11 PM
**To:** johna@stottlemire.com
**Cc:** DCusack@fbm.com; CAlameda@fbm.com
**Subject:** RE: your breach of the Settlement

It's best that all communications be in writing so that no one can be misquoted and that the record remains clear. Short of anything else from you, we have your final response.

-----Original Message-----
**From:** John Stottlemire [mailto:johna@stottlemire.com]
**Sent:** Saturday, November 22, 2008 11:05 AM
**To:** Goteiner, Neil (24) x4485
**Subject:** RE: your breach of the Settlement

You have my phone number.  I'm not going to discuss this through email.

**From:** NGoteiner@fbm.com [mailto:NGoteiner@fbm.com]
**Sent:** Saturday, November 22, 2008 10:59 AM
**To:** NGoteiner@fbm.com; johna@stottlemire.com
**Cc:** DCusack@fbm.com; CAlameda@fbm.com
**Subject:** RE: your breach of the Settlement

Your breach could not have been clearer. Dismissal with prejudice was settlement "term," No. 1.  Term No. 5, was that "the terms of the settlement will remain confidential." You specifically disclosed that Coupons dismissed the case with prejudice. End of case.

Let me know if I have misstated any facts in my email of last night.

In refusing our offer to attempt to remedy your breach, you are proceeding at your peril. But this is apparently what you want.


-----Original Message-----
**From:** Goteiner, Neil (24) x4485
**Sent:** Friday, November 21, 2008 9:47 PM
**To:** 'johna@stottlemire.com'
**Cc:** Cusack, Dennis (27) x4475; Alameda, Carly (20) x4981
**Subject:** Re: your breach of the Settlement

We will treat that as your final response.

**From**: John Stottlemire
**To**: Goteiner, Neil (24) x4485
**Sent**: Fri Nov 21 20:33:29 2008
**Subject**: RE: your breach of the Settlement
There has been no breach.  The terms of the settlement agreement have not been disclosed.

**From:** NGoteiner@fbm.com [mailto:NGoteiner@fbm.com]
**Sent:** Friday, November 21, 2008 7:29 PM
**To:** johna@stottlemire.com
**Cc:** DCusack@fbm.com; CAlameda@fbm.com
**Subject:** your breach of the Settlement


John:

Your web site comments, including "kicking ass" and that the case was dismissed with prejudice, as well as your communications (either direct or through your web site) with various bloggers including, Dan Morril and David Kravits, breached the wording and intent of the confidentiality term of the settlement agreement.  The agreement specifically states that "The terms of the settlement will remain confidential."  This was included as a material term of the agreement at your request.  Your blatant violation of your commitment, and the consequences of that abuse have damaged Coupons' reputation and continue to do so.

3

We are not filing the notice of dismissal unless you repair the breach. Coupons now insists that the only way for you to repair your breach would be to publish prominently on your web site and distribute to each blogger who referred to the settlement (or does so in the near future) a full narrative of the following facts leading to the settlement. The statement must contain the following elements (Coupons will draft the precise language), and we must receive proof that you've satisfactorily circulated the statement.

1.  Refer to the inaccurate statements on your web site and to the statements on the relevant blogs and correct the blog's mischaracterization of the case and of the settlement terms;

2.  Specifically state that while you asked for the confidentiality agreement, you breached it, and also that your web site and the blogs discussing the case contain misleading information about the settlement and the litigation.

3.  Attach to your statement the entire recent court decision and accurately characterize in layman's language the Court's denial of your motion for sanctions and motion to dismiss, as well as the court's reasoning and holding. Your statement would also point out that the Court ultimately came to its ruling notwithstanding vigorous amicus briefing from the Electronic Frontier Foundation. Your statement would of course specifically explain the court's of how and why both sections 1201(a) and section 1201(b) are applicable, over your strong objections.

4.  Accurately state the sequencing of settlement events, namely that: (a) prior to the recent hearing, you demanded that Coupons pay you $2 million for your various claims based on your position that Coupons case was without merit and vexatious, and that you had always demanded money from Coupons to settle your asserted claims; (b) you breached confidential settlement discussions previously by publishing on your web site your earlier demand for over $1 million; (c) after the hearing in which the court denied your motion to dismiss, you withdrew those settlement demands; (d) at the ENE session after the Court issued the attached ruling, you dropped your demands for even a penny and then asked for the confidentiality agreement that you breached; (e) after you signed the settlement term sheet you requested that Coupons indemnify you against claims by Coupons' customers for intentionally interfering with their business and by stealing coupons via your software; and (f) that after Coupons objected to your settlement breach, you agreed to correct the record. You are welcome to explain that it was your integrity that made you retract your misleading statements and breaching conduct, but you must truthfully state that by the time of your settlement you had not bested Coupons, but had in fact lost your motion to dismiss and explain that Coupons was about to proceed against you with discovery, including your deposition, and with significant potential for damages against you if you had not settled.

Further, you will not object to any additional press releases or stories that result from Coupons' sharing with the press the accurate facts of the case and of the settlement events.

If you don't agree to the above, you will leave Coupons no choice but either to sue to enforce the settlement agreement and seek the relief outlined above,

looking to you for the costs of such a law suit, or to withdraw from the settlement and proceed with the case.

If we do not hear from you within 48 hours, we will assume you refuse to agree to the above and will proceed accordingly.

**Neil A. Goteiner**
Attorney at Law
_____

**Farella Braun + Martel LLP**
RUSS BUILDING
235 MONTGOMERY STREET
SAN FRANCISCO / CA 94104

_____

**Office** 415.954.4485
**Fax** 415.954.4480
**Cell** 415.279.6783
www.fbm.com

_____

_

This e-mail message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply e-mail and destroy all copies of the original message. Thank you.

Farella Braun + Martel LLP